1   SONYA Z. MEHTA, SBN 294411
2   SIEGEL, YEE, BRUNNER & MEHTA
    475 14th Street, Suite 500
3   Oakland, California 94612
    Telephone: (510) 839-1200
4   Facsimile: (510) 444-6698
    sonyamehta@siegelyee.com
5
6   Attorneys for Defendant
    TRADER JOE'S UNITED
7
8             UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
9
10  TRADER JOE'S COMPANY, a California        )   Case No. 2:23-cv-05664-HDV-MAR
11  corporation,                             )
                                             )   **TRADER JOE'S UNITED NOTICE OF**
12                                           )   **MOTION AND MOTION TO DISMISS**
                                             )   **PLAINTIFF'S COMPLAINT**
13              Plaintiff,                   )   **PURSUANT TO FRCP RULE 12(B)(6)**
                                             )
14                                           )   Filed Concurrently with Request for
15  vs.                                      )   Judicial Notice, and [Proposed] Order
                                             )
16                                           )   Hon. Hernán D. Vera
17  TRADER JOE'S UNITED,                     )   Date: September 21, 2023
                                             )   Ctrm: 5B
18                                           )   Time: 10:00 a.m.
                Defendant.                   )
19                                           )   Complaint Filed: July 13, 2023
                                             )
20
21
22
23
24
25
26
27
28

---

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Notice of Motion and Motion to Dismiss – i

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 21, 2023, at 10:00 a.m. in the courtroom of the Honorable Hernán D. Vera, United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 5B, 5th Floor, Los Angeles, California 90012, Defendant Trader Joe's United will, and hereby does, move to dismiss Plaintiff Trader Joe's Company entire complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 15, 2023.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the documents on file with the Court, and such further evidence and argument as the Court may permit.

Dated: August 21, 2023    SIEGEL, YEE, BRUNNER & MEHTA


By: ___/s/ Sonya Z. Mehta_____
  Sonya Z. Mehta

Attorneys for Defendant
TRADER JOE'S UNITED

# TABLE OF CONTENTS

INTRODUCTION...................................................................................... 1

PRELIMINARY STATEMENT.............................................................. 1

ALLEGATIONS OF THE COMPLAINT.............................................. 4

ARGUMENT............................................................................................ 6

I.   Trader Joe's fails to plausibly allege a violation of the Lanham Act    6
     UCL as there is no plausible likelihood of confusion and the materials
     are not commercial. ..........................................................................

     A.  The Complaint fails to plausibly allege that a reasonable           6
         consumer is likely to be confused that the Trader Joe's company is
         the origin of the Union's materials...................................................

         1.  Plaintiff fails to allege critical *Sleekcraft* factors........................    7

     B.  Plaintiff's common law and statutory UCL claims fail as there is     9
         no competitor relationship or intent alleged. ...................................

     C.  There is no plausible confusion where the alleged use of the mark   10
         is in the context of a labor organizing campaign and labor dispute.

     D.  There is no plausible allegation of use in commerce or claim for    12
         dilution because the material is not purely commercial and is
         noncommercial. ..................................................................................

II.  The Norris-LaGuardia Act deprives this Court of                        13
     jurisdiction to provide the requested injunctive relief..........................

CONCLUSION......................................................................................... 16

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*American Federation of Musicians v. Carroll*, 391 U.S. 99 (1968)................. 14

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)........................... 7, 9

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036 (9th Cir. 1999) ........................................................................................ 2, 6

*Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001)...................... 12

*Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (2nd Cir. 2009)................... 10, 11

*Deckers Outdoor Corp. v. Team Footwear, Inc.*, WL 12131287 (C.D. Cal. 2013) ........................................................................................ 9

*Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998)........................................................................................ 6

*E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992).......... 8

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 100 v. E. Airlines Inc.*, 826 F.2d 1141 (1st Cir. 1987)....................................... 13

*Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196 (1st Cir. 1996) ................................................ 10, 11

*Internet Specialties West v. Milon-DiGiorgio Enterprises*, 559 F.3d 985 (9th Cir. 2009) ........................................................................... 8

*Lucky Stores, Inc. v. Int'l Bhd. of Teamsters Local Nos. 70, 78, 150, 409*, 812 F. Supp. 162 (N.D. Cal. 1992) ........................................... 14

*Marriott Corp. v. Great America Services Trades Council, AFL-CIO*, 552 F.2d 176 (7th Cir. 1976) ................................................................ 13-15

*Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858 (9th Cir. 1996)...................... 6

*Rider Clothing LLC v. Boardriders, Inc.*, WL 8163813 (C.D. Cal. 2019)......... 9

*SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1188 (S.D. Cal. 2012) ........................................................................................ 9

14, 15

*Senco Prod., Inc. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 592 (S.D. Ohio 1970) ....................................................

*Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, WL 5840766 (E.D. Wis. 2018) ........................................................ 10, 11, 15

*Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1339-40 (N.D. Ga. 2008). ............................................................................................................. 13

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)............................ 6

*WHS Ent. Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 952 (M.D. Tenn. 1998) ........................................................................................ 11

**FEDERAL STATUTES**

15 U.S.C. § 1114-1118.................................................................................... 4, 6

15 U.S.C. § 1125(a)........................................................................................ 4, 6

15 U.S.C. § 1125(c). ...................................................................................... 4, 6, 13

Federal Rule of Civil Procedure 12(b)(6)..................................................... 1

NLRA.............................................................................................................. 1-3

Norris-LaGuardia Act.................................................................................... 4, 13-15

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200..................................................................... 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Trader Joe's United ("TJU" or "the Union"), an independent labor organization, submits this memorandum of points and authorities in support of its motion to dismiss Plaintiff Trader Joe's Company's ("Plaintiff" or "Trader Joe's") Complaint under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

By filing this trademark lawsuit, Plaintiff Trader Joe's seeks to weaponize the federal courts in retaliation against workers who have unionized and against the labor union that assisted those workers' efforts.

On June 8, 2022, TJU filed a representation petition with the National Labor Relations Board ("NLRB") seeking to represent workers at the Trader Joe's store in Hadley, Massachusetts. The NLRB subsequently conducted a secret ballot election on July 28, 2022, at which the workers selected TJU as their exclusive collective bargaining representative, and TJU was certified as such by the NLRB on August 5, 2022.

On July 7, 2023, the NLRB issued a consolidated complaint[1] against Trader Joe's for its unlawful conduct during the election in violation of the National Labor Relations Act ("NLRA" or "the Act"), including discriminatory enforcement, threats, overbroad rules, retaliation against and interrogations of employees who supported the union, and providing false and misleading information about the union. *See* Request for Judicial Notice, Exhibit 1. It charged Trader Joe's with "interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act" and "discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act." (*Id.* at ¶ 9, 10.)

---

[1] A "court may take judicial notice of public filings when adjudicating a motion to dismiss a complaint for failure to state a claim upon which relief can be granted." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1241 (N.D. Cal. 2008).

Plaintiff Trader Joe's filed the instant Complaint six days after NLRB issued the consolidated complaint against Trader Joe's for unlawful labor practices.

On June 28, 2022, TJU filed another representation petition seeking to represent workers at a Minneapolis, Minnesota Trader Joe's store. The NLRB subsequently conducted a secret ballot election on August 12, 2022, at which the workers selected TJU as their exclusive collective bargaining representative. TJU was certified as such by the NLRB on August 12, 2022. On May 25, 2023, the NLRB issued another complaint against Trader Joe's for its unlawful conduct of "interfering with, restraining, and coercing employees in the exercise of the rights guaranteed" by the NLRA. *See* Request for Judicial Notice, Exhibit 2.

On September 23, 2022, TJU filed another representation petition with the NLRB seeking to represent workers at a Brooklyn, New York, Trader Joe's store. The NLRB subsequently conducted a secret ballot election on January 26, 2023, at which the workers did not select TJU as their exclusive collective bargaining representative.

On December 20, 2022, TJU filed another representation petition seeking to represent workers at a Louisville, Kentucky, Trader Joe's store. The NLRB subsequently conducted a secret ballot election on January 26, 2023, at which the workers selected TJU as their exclusive collective bargaining representative. Plaintiff filed objections to the certification of the election results, which was won by a margin of 48 to 36 votes.

Despite an NLRB ruling on May 26, 2023, that all of Trader Joe's objections to the conduct of the election were denied and overruled, Trader Joe's continues to contest the election results. Plaintiff has thus stalled bargaining over a collective bargaining agreement stemming from the decisive election results of TJU being named the exclusive bargaining representative for employees in Louisville, Kentucky.

On March 23, 2023, TJU filed another representation petition with the NLRB seeking to represent workers at a New York, New York, Trader Joe's store. The NLRB subsequently conducted a secret ballot election on April 20, 2023, at which the workers did not select TJU.

On March 23, 2023, TJU filed another representation petition with the NLRB seeking to represent workers at an Oakland, California, Trader Joe's store. The NLRB subsequently conducted a secret ballot election on April 20, 2023, at which the workers selected TJU as their exclusive collective bargaining representative, and TJU was certified as such by the NLRB on April 28, 2023. Despite having successfully won a fourth election, TJU has been forced to file multiple unfair labor practice charges with the NLRB regarding Trader Joe's retaliatory conduct.

Since November 2022, Trader Joe's and TJU have been negotiating collective bargaining agreements for the Hadley, Massachusetts and Minneapolis, Minnesota bargaining units. The parties' relationship during collective bargaining has been adversarial and both sides have filed a number of unfair labor practice charges including bad faith bargaining charges under 8(a)(5) of the NLRA with the respective NLRB Regional Offices.

Since the end of April 2023, Trader Joe's has refused to continue negotiating a collective bargaining agreement in both the Hadley and Minneapolis bargaining units despite the fact that the Union has repeatedly demanded bargaining. By filing an Exception to the Hearing Officer's Recommendation, after a four-day hearing and briefing, that the Region certify the election results in Louisville, Kentucky, Trader Joe's has successfully stalled collective bargaining for that store's bargaining unit.

As the parties are in a dispute over whether hybrid negotiations can take place through the hybrid use of virtual technology, Trader Joe's has refused to meet to bargain with the Oakland bargaining unit. As Plaintiff admits, TJU has been undertaking active union organizing activities in California, but before another representation petition was filed with the NLRB, Plaintiff filed this trademark action in a transparent effort to continue its retaliation against the unionization efforts and to chill workers at other Trader Joe's locations from exercising their rights under federal labor law to organize a union. (Docket 1, Complaint, ¶ 12, "Defendant and its agents have engaged in systematic

1    and continuous contacts with this District, including by undertaking union organizing
2    activities … .")
3         Plaintiff is not the first company to attempt to abuse federal trademark law in
4    response to union activity. Courts around the country have routinely dismissed
5    complaints by other companies that have alleged that a labor union's use of the
6    company's trademark in connection with an organizing effort or other labor dispute ran
7    afoul of trademark law. Typically, courts have held that employers have failed to state a
8    claim because a union's use of an employer's mark in a labor dispute is not "use in
9    commerce" and/or the union's use of the mark is not likely to cause confusion. The
10   Court should dismiss the Complaint here for the same reasons.
11        Further, Plaintiff's request to enjoin the alleged use of its mark necessarily fails
12   because the Norris-LaGuardia Act deprives this Court of subject matter jurisdiction to
13   grant such relief. The Norris-LaGuardia Act provides that a federal court does not
14   possess jurisdiction to issue injunctions in cases involving or growing out of a labor
15   dispute. Here, this case plainly involves and grows out of an active, national effort to
16   organize workers who work at Trader Joe's stores into a union, and as such, Plaintiff's
17   request for injunctive relief must be denied.

18                          **ALLEGATIONS OF THE COMPLAINT**
19        Plaintiff alleges two counts of Lanham Act trademark infringement against TJU,
20   under 15 U.S.C. § 1114-1118 and 15 U.S.C. § 1125(a). The third claim is for trademark
21   dilution by blurring under 15 U.S.C. § 1125(c). (*Id.*, ¶¶ 38-59.) Plaintiff alleges a fourth
22   count under Cal. Bus. & Prof. Code § 17200 for unfair competition based on
23   infringement and dilution. (*Id.*, ¶¶ 60-63.) Plaintiff also alleges a fifth count for unfair
24   competition for infringement in violation of the common law.  (*Id.*, ¶¶ 64-71.)
25        Plaintiff alleges that it is the owner of several United States federal trademark
26   registrations for the mark TRADER JOE'S for retail grocery services and for a range of
27   food and beverage products and associated merchandise. (Dkt. 1, Complaint, ¶ 1.)
28   Plaintiff alleges that it advertises "through carefully curated channels" that include its

---

*Trader Joes Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Notice of Motion and Motion to Dismiss – 4

website, www.traderjoes.com but admits customers cannot purchase products through the website. (*Id.,* ¶ 16.)

Plaintiff alleges that TJU has a website logo that "wholly encompasses the trademark TRADER JOE'S, which is presented in Trader Joe's distinctive red typeface and the concentric circle design of the TRADER JOE'S logo." (*Id.,* ¶ 27.)

Plaintiff alleges that "Defendant Trader Joe's United is an independent labor union comprised of Trader Joe's employees." (*Id.*, ¶ 10.) It alleges that TJU "operates a commercial website where it markets and sells various products, including apparel, home goods, and reusable tote bags, for profit," and has "started using the TRADER JOE'S Family of Marks on merchandise that it sells for profit, including reusable tote bags, apparel, mugs, and buttons." (*Id.*, ¶¶ 4, 26.) "Specifically, certain of Defendant's products use the TRADER JOE'S typed word mark and stylized word mark, the unique Trader Joe's typeface and red coloring, and/or the concentric circle design and general composition of the registered TRADER JOE'S logo." (*Id.,* ¶ 5.)

Plaintiff speculates that its mark on some of these items is "likely to cause consumer confusion," "mistake," "or deception" as to "the source, sponsorship, affiliation, or approval of Defendant's goods." (*Id.,* ¶¶ 4, 6, 40, 49.) Continuing its chain of speculation, Plaintiff alleges that the public "with an appreciable number of reasonable customers" is likely deceived "into believing that Defendant's goods are sponsored, endorsed, or approved by Trader Joe's, or are otherwise associated with Trader Joe's." (*Id.*, ¶¶ 62, 68.) It alleges no evidence of actual confusion.

As remedies, Plaintiff seeks injunctive relief, that Defendants be required to file a written report with the Court setting forth its manner of compliance with any such injunctive relief, that Defendants be required to "deliver up for destruction all commercial merchandise in its possession or control," "to recall from any distributors, retailers, vendors, or others all commercial merchandise … for impoundment and eventual destruction," statutory damages, punitive damages, any profits, cost of suit, prejudgment interest, and attorney's fees and costs.  (*Id.*, Prayer for Relief.)

**ARGUMENT**

**I.   Trader Joe's fails to plausibly allege a violation of the Lanham Act or UCL as there is no plausible likelihood of confusion and the materials are not commercial.**

**A.  The Complaint fails to plausibly allege that a reasonable consumer is likely to be confused that the Trader Joe's company is the origin of the Union's materials.**

The Ninth Circuit holds that likelihood of confusion is the central element of a trademark infringement action. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999). This test applies to 15 U.S.C. §§ 1114 and 1125(a) and California unfair competition law. *Murray v. Cable Nat. Broad. Co.,* 86 F.3d 858, 860 (9th Cir. 1996). "The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

It is unlikely that any consumer who visits Defendant's website would be confused as to the origin of the goods sold by the Union as it clearly states on the homepage, located at http://www.traderjoesunited.org/[2]:

"OUR UNION: FOR THE CREW, BY THE CREW

Trader Joe's United is an independent labor union 100% founded and powered by us, Trader Joe's workers. All of TJU's leadership roles are filled by Trader Joe's crew members. We are bagging groceries and stocking shelves while building a movement, writing contract proposals, and helping other stores organize.

It's not just a catchphrase—we literally are the union.

Trader Joe's Crew Members, Join Our Movement!

---

[2] "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the basis for Plaintiff's complaint is the TJU website.

Are you ready to organize your store? In the last decade we've seen Trader Joe's shift from a workplace with incredible pay, benefits, and a welcoming atmosphere–to a company with increasing turnover, declining benefits, and stagnating wages. It doesn't have to be this way.

As worker organizers, we are building a movement to bring Trader Joe's back into alignment with its own core values, which made it a great place to work and shop in the first place. Join us!

This form is intended for Trader Joe's crew members who are interested in organizing their stores and joining our union. If you don't work at Trader Joe's but would like to show your support, please sign our petition. Together, we have the power to improve our stores for workers and for customers."

Moreover, there is an embedded video on the homepage featuring several worker organizers across the country supporting the unionization efforts of Defendant Union. Defendant's website is intended only to communicate its message as stated on the homepage that "[i]n the last decade we've seen Trader Joe's shift from a workplace with incredible pay, benefits, and a welcoming atmosphere – to a company with increasing turnover, declining benefits, and stagnating wages."

Not only does Defendant's website contain a ".org" extension used primarily to identify nonprofit organizations on the internet, but there is no mention of any commercial sale of retail grocery services, food or beverage products, nor any associated grocery related merchandise. There is no plausible likelihood of confusion.

### 1. Plaintiff fails to allege critical *Sleekcraft* factors.

In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds*, the Ninth Circuit identified eight factors that should be considered in determining whether there is a likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the proximity or relatedness of the parties' goods; (3) the marks' similarity in appearance, sound, and meaning; (4) evidence of actual confusion; (5) evidence of the defendants' intention in selecting and using the allegedly infringing name; (6) the degree to which the parties' marketing channels converge; (7) the type of goods and the

1   degree of care customers are likely to exercise in purchasing them; and (8) the

2   likelihood that the parties will expand their product lines.

3       "This list of factors, while perhaps exhausting, is neither exhaustive nor exclusive.

4   Rather, the factors are intended to guide the court in assessing the basic question of

5   likelihood of confusion. The presence or absence of a particular factor does not

6   necessarily drive the determination of a likelihood of confusion." *E & J Gallo Winery v.*

7   *Gallo Cattle Co.*, 967 F.2d 1280, 1290-91 (9th Cir. 1992).

8       In addition, in cases involving claims of trademark infringement on the internet,

9   the Ninth Circuit places "greater import" on the "internet troika" of (1) similarity of

10  marks; (2) relatedness of goods or services; and (3) simultaneous use of the internet as a

11  marketing channel. *Internet Specialties West v. Milon-DiGorgio Enterprises*, 559 F.3d

12  985, 989 (9th Cir. 2009).

13      A reasonably prudent consumer on the internet marketplace would not be

14  confused as to the origin of the goods sold on Defendant's website as there is no

15  similarity of marks, no relatedness of goods or services, and no simultaneous use of the

16  internet as a marketing channel. *Id.*

17      The face of the Complaint shows no similarity of marks. Plaintiff complains of a

18  concentric circle design that is unlike that of registration number 5,221,626. Plaintiff's

19  logo image contains concentric circles made up of a bold thick circle directly followed by

20  a thin inner circle that encompasses a wine bottle, cheese wedge, sliced bread, cutting

21  board, and grapes. (Dkt. 1, ¶ 21.) Defendant's logo contains concentric circles made up of

22  a thin-lined circle followed by a spaced out second thin-lined inner circle that

23  encompasses a black fist holding a neon green box cutter. (*Id.* at ¶ 27.)

24      Plaintiff also fails to allege that it sells any of the complained of trademark

25  protected merchandise on its website, and in fact admits it does not use the Internet for

26  any sales at paragraph 16 of its Complaint. The "Trader Joe's-branded tote bags," its

27  "vast tote bag offerings" and tote bag "Trader Joe's enthusiasts are known to collect" are

28  not alleged to be offered for sale on Plaintiff's commercial website. (Dkt. 1, ¶ 18.) Thus,

"the degree to which the parties' marketing channels converge" and the "simultaneous use of the internet as a marketing channel" are next to nil. Indeed, Plaintiff fails to allege that its "concentric circle design and general composition of the registered TRADER JOE'S logo" under USPTO trademark registration number 5,221,626, exists anywhere on its commercial website: www.traderjoes.com. (Dkt. 1, ¶¶ 4, 16, 21, 27, 28.)

Likewise, Trader Joe's fails to allege it sells apparel, mugs, home goods, or buttons. It thus fails to allege any relatedness of goods. There is no relation in services alleged, and there is none. As per the Complaint, Trader Joe's offers groceries while TJU offers labor union services. (Dkt. 1, ¶¶ 1, 4.)

As to the *Sleekcraft* factors, Plaintiff fails to allege evidence of actual confusion. It fails to allege that TJU will expand the supposed product line, while acknowledging the material at issue is not TJU's service in any case.

### B. Plaintiff's common law and statutory UCL claims fail as there is no competitor relationship or intent alleged.

"Plaintiff alleges a violation of the California common law tort of unfair competition. Unfair competition prohibits the passing off of ones goods as those of another. One 'passes off' a product when they use confusingly similar products to exploit a competitor's reputation in the marketplace." *Deckers Outdoor Corp. v. Team Footwear, Inc.*, WL 12131287 at *2 (C.D. Cal. 2013); *see also SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1188 (S.D. Cal. 2012), "[T]he common law tort of unfair competition … is rooted in preventing conduct that harms competitors by deceiving customers." Here, there is no allegation that Trader Joe's Union is a competitor of Trader Joe's.

Plaintiff also fails to allege the intent element of the unfair competition claim or the fifth *Sleekcraft* factor. The "crux of a common law unfair competition claim" is "that Defendants have deliberately misled consumers into believing that the[ir] goods are Plaintiff's." *Rider Clothing LLC v. Boardriders, Inc.*, WL 8163813, at *5 (C.D. Cal. 2019). Plaintiff makes only one conclusory allegation in partial support of its claim that Defendants' alleged use of Plaintiff's mark "is likely to deceive the public into believing

1  that Defendant's goods are sponsored, endorsed, or approved by Trader Joe's, or are

2  otherwise associated with Trader Joe's." (Dkt. 1, ¶ 62.) There is no allegation that

3  Defendant had the requisite intent under this tort claim.  As such, any claim under the

4  California Unfair Competition Law or common law must be dismissed.

5  **C. There is no plausible confusion where the alleged use of the mark**
6  **is in the context of a labor organizing campaign or labor dispute.**

7         An employer's use of a union's mark in a labor dispute is unlikely to cause

8  confusion. See *Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing*

9  *Ctr.*, 103 F.3d 196, 206 (1st Cir. 1996), finding "no colorable basis for a likelihood of

10 confusion" where employer used union's mark on leaflets distributed during labor

11 campaign.  Courts have relied on numerous factors that are present in this case to

12 determine that there is no likelihood of confusion.

13        As a starting point, courts have noted that a union's use of an employer's mark to

14 simply identify the employer it is trying to organize or with which it has a labor dispute

15 is not confusing. *Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace*

16 *Workers, AFL-CIO*, WL 5840766 at *3 (E.D. Wis. 2018), "IAM is not using the SILGAN

17 trademark as a source identifier for its services or to sow confusion as to whether Silgan

18 approves or is affiliated with IAM's efforts, but rather to identify Silgan as the employer

19 of the employees IAM is attempting to unionize."

20        Courts have also recognized that there is little likelihood of confusion where an

21 employer or union uses the other party's mark during a unionization campaign because

22 unions do not offer a product or service that competes with the employer that is being

23 organized. *See Winship Green*, 103 F.3d at 204, "Because the parties do not offer

24 competing services, there is no similitude." *See also Silgan* at *3, "IAM is not offering a

25 competing product or service … . "; *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579

26 (2nd Cir. 2009), "[T]here is no proximity between the parties' goods or services." Here,

27 Plaintiff does not allege that there is any proximity between the parties' goods or

28 services. This further demonstrates that there is no plausible likelihood of confusion.

The alleged use of Plaintiff's mark is, on its face, being used to identify the workplace of the organizing employees.

Courts have commonly examined the content surrounding a union's use of an employer's mark and determined that there is no likelihood of confusion where the communications are critical of the employer. See *Silgan* at *4, "[I]t is not plausible that the relevant consumers— Silgan employees—are likely to confuse IAM's use of Silgan as a sign that Silgan endorses IAM's efforts given the content and other indentifying [sic] information on the Facebook page and Twitter account."

*See also Cintas* at 579, "Defendants' entire effort is directed at attacking Cintas ... Defendants are not using the 'CINTAS' mark as a 'source identifier,' but rather solely to criticize Cintas's corporate practices." *See also WHS Ent. Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 952 (M.D. Tenn. 1998), "[N]o reasonable person would believe that one would purposefully distribute a flyer containing a listing of its health food violations." Courts have applied the same approach when analyzing an employer's use of a union's mark. *See Winship Green* at 207, "[T]he documents, when received, were affixed to clearly identifiable management propaganda."

Here, even from the selectively chosen excerpts from TJU's website that Plaintiff included with its Complaint, it is plain that TJU's alleged use of Plaintiff's mark is part of a labor dispute. The website header logo that allegedly "wholly encompasses the trademark TRADER JOE'S, which is presented in Trader Joe's distinctive red typeface and the concentric circle design of the TRADER JOE'S logo" reads: "TRADER JOE'S UNITED" and includes a black fist holding a neon green colored boxcutter. (Dkt. 1, ¶ 27.) The complained of TJU buttons read: "TRADER JOE'S UNITED, A UNION LIFTS US ALL" and are illustrated with cartoon organizers holding a bullhorn, collectively working to lift a pallet jack, "UNION, TRADER JOE'S UNITED, NATURALLY SWEET NO ADDED NONSENSE," and "TRADER JOE'S UNITED" again with the boxcutter and a pride flag in the background. (*Id.* at ¶ 28.) The images all contain a union bug.

Moreover, when an individual first navigates to Defendant's website they are greeted by a Homepage that communicates the Union's labor dispute with Trader Joe's. *Supra* at pp. 1-2, homepage text. This is not a commercial website as alleged by Plaintiff but rather a website set up to communicate the Union's message and to encourage visitors to spread information about the ongoing nationwide labor dispute with Plaintiff. (*Id.* at ¶¶ 4, 30, 31, 33, 35.) The "store" page requires navigation through the homepage.

**D. There is no plausible allegation of use in commerce or dilution because the material is not purely commercial and is noncommercial.**

The Lanham Act explicitly requires the mark to be used "in commerce," and proof of its use "in commerce" is critical to the success of any such action. "The totality of the circumstances must be employed to determine whether a service mark has been adequately used in commerce so as to gain the protection of the Lanham Act." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001).

"In applying this approach, the district courts should be guided in their consideration of non-sales activities by factors ... such as the genuineness and commercial character of the activity, the determination of whether the mark was sufficiently public to identify or distinguish the marked service in an appropriate segment of the public mind as those of the holder of the mark, the scope of the non-sales activity relative to what would be a commercially reasonable attempt to market the service, the degree of ongoing activity of the holder to conduct the business using the mark, the amount of business transacted, and other similar factors which might distinguish whether a service has actually been rendered in commerce." *Id.*

In this case, the complained of merchandise is not being used in commerce. There is no allegation in the complaint that Defendant has been marketing its goods containing the Union message in any commercial manner. Rather there are simply repetitive conclusory allegations that Defendant's website is "commercial," merchandise is "commercial," or the trademarks are used "in a purely commercial fashion." (*Id.*, ¶¶ 4, 27, 30, 31, 33, 35, 37.)

1   The Complaint acknowledging TJU's union organizing shows the material was

2   noncommercial speech and therefore not subject to trademark dilution claims under

3   1125(c). *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1339-40 (N.D. Ga. 2008).

4   **II.    The Norris-LaGuardia Act deprives this Court of jurisdiction to
         provide the requested injunctive relief.**

6   Plaintiff's request to enjoin the alleged use of its mark necessarily fails because

7   the Norris-LaGuardia Act deprives this Court of subject matter jurisdiction to grant such

8   relief. The Norris-LaGuardia Act provides that a federal court does not possess

9   "jurisdiction to issue any restraining order or temporary or permanent injunction in a

10  case involving or growing out of a labor dispute," and shall not issue an injunction that

11  is "contrary to the public policy declared in this chapter." 29 U.S.C. § 101.

12  The instant case plainly involves and grows out of an effort to organize workers

13  who work at Plaintiff, Trader Joe's stores, and as such, this request must be denied.

14  The Norris-LaGuardia Act broadly defines labor disputes to include "any controversy …

15  concerning the association or representation of persons in negotiating, fixing,

16  maintaining, changing, or seeking to arrange terms or conditions of employment,

17  regardless of whether or not the disputants stand in the proximate relation of employer

18  and employee." 29 U.S.C. § 113(c).

19  The Norris-LaGuardia Act's policy against judicial intervention in labor disputes

20  is so strong that "not even the specter of a national paralysis … [is] considered sufficient

21  to overcome Congress' withdrawal of jurisdiction." *Int'l Ass'n of Machinists & Aerospace

22  Workers, Dist. Lodge No. 100 v. E. Airlines Inc.*, 826 F.2d 1141, 1145 (1st Cir. 1987).

23  A labor organization's use of an employer's mark in an organizational campaign

24  is a clear example of a "labor dispute" within the meaning of the Norris-LaGuardia Act.

25  In *Marriott Corp. v. Great America Services Trades Council*, *AFL-CIO,* 552 F.2d 176

26  (7th Cir. 1976), several labor organizations were attempting to organize workers at

27  Marriott's Great America amusement park, using the name "Great America Service

28  Trades Council" in their promotional efforts. *Id*. at 178. After Marriott filed suit under
    the Lanham Act over the labor organizations' use of the marks "Great America" and

---

1  "Marriott Great America," the Seventh Circuit held that issuance of an injunction was

2  barred by the Norris-LaGuardia Act. *Id.* at 177.

3       The *Marriott* court began by taking direction from *American Federation of*

4  *Musicians v. Carroll*, 391 U.S. 99 (1968), an antitrust case in which the Supreme Court

5  instructed that in determining whether the Norris-LaGuardia Act bars an injunction, it

6  is "necessary to inquire beyond the form or appearance of a dispute to its 'relative

7  impact on ... the interests of union members.'" *Marriott* at 179. The court noted that

8  "the controversy in the instant case, although couched in terms of trademark

9  infringement by Marriott, does, in fact, concern the 'association or representation' of its

10  employees and prospective employees with respect to 'conditions of employment.'" *Id.*

11 The Seventh Circuit continued:

12       "[I]t can readily be perceived that, whatever the merits of plaintiff's
         Lanham Act and other trademark claims, this dispute has a great impact
13       on the interests of the unions, their members, and potential members.

14       The organizational efforts of the unions to achieve representation of
15       Marriott's workers are the foundation of this dispute. The request for
         injunctive relief was directed against the Council's choice of name, which
16       is intertwined with those efforts, legitimate labor objectives. The choice of
         a particular name by a labor organization may very well facilitate its
17       organizational drive to represent the employees of a particular employer.
         The name may serve to identify and publicize the employer which is the
18       target of the campaign and to instill a measure of collective identity among
         employees. Such aims are legitimate union objectives in seeking the right
19       to self-organization of employees under section 7 of the Labor-
20       Management Relations Act." *Id. at 179-80.*

21       Other federal courts have reached the same conclusion. *See Lucky Stores, Inc. v.*

22 *Int'l Bhd. of Teamsters Local Nos. 70, 78, 150, 409*, 812 F. Supp. 162, 163 (N.D. Cal.

23 1992), finding labor unions' use of the employer's mark in the context of a boycott to be

24 "inextricably linked with the underlying labor dispute," thereby depriving the court of

25 jurisdiction to consider motion for preliminary injunction. *Senco Prod., Inc. v. Int'l*

26 *Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 592 (S.D.

27 Ohio 1970), "So long as the employer's name is used in such a way that the casual reader

28 would clearly understand that it was the Union and not the employer issuing the

---

*Trader Joes Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Notice of Motion and Motion to Dismiss – 14

1  publicity, it would seem clear that the Norris-LaGuardia Act would prohibit this Court
2  from issuing an injunction in the present context of this [labor organizing] dispute."

3       The material facts in the instant case are nearly identical to those in *Marriott,*
4  *Silgan,* and *Senco*. The alleged use of Plaintiff's mark is rooted in a labor organizing
5  drive. Plaintiff alleges that in response to its June 30, 2023, letter to Defendant to cease
6  and desist, Defendant responded that such a cease-and-desist letter was viewed by
7  Defendant Union as retaliation for union organizing efforts at Plaintiff's Trader Joe's
8  stores.  (Dkt. 1, ¶ 34.)

9       Plaintiff states that it "has not taken issue with Defendant's reference to Trader
10  Joe's for the purpose of identifying the union or discussing the union's cause." (*Id.*, ¶
11  35.) Plaintiff states that it does not demand "that Defendant stop using the phrase
12  'Trader Joe's' for the purpose of identifying Trader Joe's or communicating Defendant's
13  message or using the phrase 'Trader Joe's United' for the purpose of identifying
14  Defendant or communicating its message." (*Id.*, ¶ 36.) But the Complaint
15  simultaneously asserts that Plaintiff's chief concern is that Defendants' alleged use of
16  Plaintiff's mark "is likely to deceive the public into believing that Defendant's goods are
17  sponsored, endorsed, or approved by Trader Joe's, or are otherwise associated with
18  Trader Joe's." (*Id.*, ¶ 62.)

19       A union incorporating an employer's mark in the union's own name and in its
20  promotional materials as part of an organizing campaign,

21       "may serve to identify and publicize the employer which is the target of the
22       campaign and to instill a measure of collective identity among employees. Such
23       aims are legitimate union objectives in seeking the right to self-organization of
24       employees under section 7 of the Labor-Management Relations Act." *Marriott* at
         179-80.

25       As this case is deeply intertwined with several concurrent and ongoing labor
26  disputes between the parties within the meaning of the Norris-LaGuardia Act, this Court
27  has no jurisdiction to issue the injunctive relief requested, and Plaintiff's request for
28  injunctive relief must be denied.

---

*Trader Joes Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Notice of Motion and Motion to Dismiss – 15

1

**CONCLUSION**

2    For the foregoing reasons, the Complaint should be dismissed and the request for

3    injunctive relief should be denied.

4

5

6    Dated: August 21, 2023                SIEGEL, YEE, BRUNNER & MEHTA

7

8                                          By: ___/s/ Sonya Z. Mehta_____

9                                              Sonya Z. Mehta

10                                         Attorneys for Defendant

11                                         TRADER JOE'S UNITED

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28