SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Tel: 510-839-1200
Fax: 510-444-6698
sonyamehta@siegelyee.com

DAT HOANG PHAN, SBN 316813
HENNIG, KRAMER, RUIZ AND SINGH, LLP
3600 Wilshire Boulevard
Suite 1908
Los Angeles, CA 90010
Tel: 213-310-8301
Fax: 213-310-8302
dat@employmentattorneyla.com

RETU R. SINGLA, SBN 4162822
Tel: 646-228-4719
rsingla@workingpeopleslaw.com
SETH L. GOLDSTEIN, SBN 2160182
Tel: 646-460-1309
Fax: 251-319-2955
sgoldstein@workingpeopleslaw.com
JULIEN MIRER SINGLA AND GOLDSTEIN PLLC
One Whitehall Street, 16th Floor
New York, NY 10004
ADMITTED PRO HAC VICE

Attorneys for Defendant
TRADER JOE'S UNITED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRADER JOE'S UNITED,<br><br>Defendant. | Case No. 2:23-cv-05664-HDV-MAR<br><br>**TRADER JOE'S UNITED NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Hon. Hernán D. Vera<br>Date: November 9, 2023<br>Ctrm: 5B<br>Time: 10:00 a.m.<br><br>Complaint Filed: July 13, 2023 |

---

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Defendant Trader Joe's United Notice of Supplemental Authority – 1

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Trader Joe's United submits the recent district court decision *Medieval Times U.S.A., Inc. v. Medieval Times Performers United, and American Guild of Variety Artists*, No. 2:22-cv-6050 (D.N.J. September 28, 2023), as supplemental authority in support of its Motion to Dismiss Plaintiff Trader Joe's Company's Complaint. (Docket 1; 20-21.) A true and correct copy of the decision is attached hereto as **Exhibit 1**.

*Medieval Times* is relevant to the arguments raised in Defendant Trader Joe's United's Motion to Dismiss. In *Medieval Times*, the court dismissed the employer and plaintiff Medieval Times' trademark infringement claims against the Medieval Times Performers United labor union under Federal Rule of Civil Procedure 12(b)(6). The court held that "[l]ikelihood of confusion is an issue well-suited for screening at the motion to dismiss stage … because it requires a showing that the public is likely to be deceived … ." (*Medieval Times* at 9-10.)

Defendant in the instant case argued that Plaintiff failed to allege any intent to confuse, the Union context showed no likelihood of confusion, and there was no allegation of actual confusion.

*Medieval Times* dismissed the Complaint there for the same reasons. The Plaintiff and employer failed to allege any facts showing Medieval Times Performers United "intended to cause confusion." (*Id.*, 7.) Rather, the Union adopted the name to "identify" the employer as that of the employees it is campaigning to unionize. (*Id.*)

Indeed, "[g]iven the union context, customers are also not likely to be confused as to similarity of function." (*Id.*, 8.) The court references the Union's express statements on its website as "communications about the employer's labor practices [which] courts have often held [are] unlikely to cause confusion." (*Id.*) The court held there was no Lanham Act violation "even where website sold union merchandise such as t-shirts, pins and other sundry items." (*Id.*)

---

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Defendant Trader Joe's United Notice of Supplemental Authority – 2

|   |   |
|---|---|
| 1 | In addition, *Medieval Times* dismissed the Complaint because "Plaintiff has not alleged any actual confusion." (*Id.*, 9.) Actual confusion is a factor in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir.1983), which governs the Third Circuit, and *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), which governs the Ninth Circuit. |

Finally, the complaints in *Medieval Times* and the instant case fail to allege facts "that could lead to the mistaken impression that Defendants are affiliated with or endorsed by" the employers here that are suing their employees who are organizing for better conditions. As in *Medieval Times*, any such allegations are "entirely conclusory." (*Medival Times* at 8; Dkt. 1, Complaint, at ¶¶ 4,6, 40 ,49, 62, 68.)

Dated: October 6, 2023         SIEGEL, YEE, BRUNNER & MEHTA

By: ___/s/ Sonya Z. Mehta_____
Sonya Z. Mehta

Attorneys for Defendant
TRADER JOE'S UNITED

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MEDIEVAL TIMES U.S.A., INC., <br><br> Plaintiff, <br><br> v. <br><br> MEDIEVAL TIMES PERFORMERS UNITED, and AMERICAN GUILD OF VARIETY ARTISTS, <br><br> Defendants. | Civ. No. 2:22-cv-6050 (WJM) <br><br><br> OPINION |

In this action for federal trademark infringement, Defendants Medieval Times Performers United and American Guild of Variety Artists (jointly "Defendants") move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF No. 38. The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants' motion to dismiss is **granted.**

I. BACKGROUND

Medieval Times U.S.A., Inc. ("Medieval Times" or "Plaintiff") is the owner of the entertainment brand MEDIEVAL TIMES® mark that has hosted medieval-themed dinner theater performances since the 1980s at its 11th century-style castle structures that feature exteriors with ramparts displaying crests and coats of arms, drawbridge and portico gated entryways, and interiors adorned with medieval décor, crests, coats of arms, suits of armor, and genuine medieval artifacts. Compl., ¶¶ 14, 17; ECF No. 1. The dinner performance features jousting on horseback and bouts of hand-to-hand combat between knights and other combatants. *Id.* at ¶ 16. Dinner is a medieval-style feast served in the stands by staff in period dress during the staged competitive tournament. *Id.* Each location also sells concessions, including other food and beverage, and features a gift shop where consumers can purchase commemorative Medieval Times branded or themed merchandise. *Id.* at ¶¶19-20. Medieval Times castles are located in: (1) Lyndhurst, New Jersey; (2) Buena Park, California 90620; (3) Myrtle Beach, South Carolina; (4) Dallas, Texas; (5) Schaumburg, Illinois; (6) Kissimmee, Florida; and (7) Scottsdale, Arizona 85258. *Id.* at ¶ 4.

1

Plaintiff's mark ("Medieval Times Mark") is the subject of U.S. trademark registration No. 1,515,854 for "Entertainment services, namely a dinner served in medieval style with an accompanying medieval tournament performance" and "Dinner served in medieval style preceding and accompanying a medieval tournament performance." *Id.* at ¶ 23. The Medieval Times Mark is most often displayed in a stylized font in either red or yellow meant to evoke the Middle Ages:

*Medieval Times*

*Id.* at ¶ 25; *see* https://www.medievaltimes.com/.

Defendant Medieval Times Performers United ("MTPU" or "Union") is an unincorporated association formed on or about June 28, 2022, headquartered at or near the Medieval Times castle location in Lyndhurst, New Jersey. *Id.* at ¶¶ 2, 31. In exchange for dues from its members, MTPU, represented by and in conjunction with Defendant American Guild of Variety Artists ("AGVA"), provides organizational services on behalf of its members including engaging in collective bargaining. *Id.* at ¶ 32. Plaintiff alleges that each Defendant "was the agent, principal, alter ego, joint venturer, partner, and/or co-conspirator of each other Defendant in this action and, at all relevant times mentioned herein, was acting within the course and scope of such capacities and with the consent of the other Defendant" in committing the alleged wrongful acts. *Id.* at ¶ 9.

MTPU promotes its goods and services through a website, Medieval Times Union | Medieval Times Performers United (mtunited.org). The logo displayed on the MTPU website homepage is:



**Medieval Times Performers United**

Medieval Times actors, stunt performers, and stable hands are joining together in union.
Represented by the American Guild of Variety Artists (AGVA).

*Id.* at ¶ 34. Plaintiff alleges that the elements featured in the MPTU logo (*i.e.,* castle, swords, old script style text) all resemble elements of Medieval Times's branding and

2

Middle Ages-themed décor. *Id.* at ¶ 35. The MPTU webpage includes a picture of show actors and performers, some in costume.



*Id.* at ¶ 38. Also listed on the MPTU website is an email address for those seeking to get in touch with "our union at the castle in Lyndhurst, NJ" as well as an email address for those seeking to contact "our union at the castle in Buena Park, CA." *Id.* at ¶ 37.

On various social media sites, such as Facebook, Twitter, and Instagram, MTPU's logo is displayed within a red and yellow banner that purportedly resembles the Medieval Times Mark's color scheme, castle image, and a scalloped border evocative of a crest or coat of arms:



*Id.* at ¶¶ 40-43. MTPU's Instagram page advertises the sale of merchandise bearing MTPU's logo:



*Id.* at ¶ 44.

On October 13, 2022, Medieval Times filed suit against Defendants MTPU and AGVA seeking monetary and injunctive relief for violations of the Lanham Act,

specifically trademark infringement under 15 U.S.C. § 1114 (Count I) and trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A) (Count II). Plaintiff contends that Defendants' appropriation of Medieval Times's "themes, colors, imagery, private-property, and addresses" as well as use of the Medieval Times Mark in MTPU's name is likely to cause confusion and "could lead to the mistaken impression" that MTPU is sponsored or endorsed by Plaintiff and that Union membership is required. *Id.* at ¶¶ 51-53. Defendants move to dismiss the Complaint for failure to state a claim and also argue that the Court lacks jurisdiction to grant injunctive relief under the Norris-LaGuardia Act.

## II. DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss Standard

Fed. R. Civ. P. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). Dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. A court must take well-pleaded allegations as true but need not credit "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

### B. Trademark Claims

To prevail on trademark infringement, false designation of origin, and unfair competition claims, a plaintiff must establish that: (1) their marks are valid and legally

4

protectable; (2) they own the marks; and (3) defendants' use of their marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. *See Checkpoint Sys., Inc. v. Check Point Software Tech., Inc.*, 269 F.3d 270, 279–80 (3d Cir. 2001) (setting forth elements of trademark infringement and unfair competition). Factors relevant to unfair competition and false designation claims under 15 U.S.C. § 1125 are "essentially the same" as those relevant to trademark infringement claim under 15 U.S.C. § 1114. *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472–73 (3d Cir. 1994); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (noting trademark infringement and false designation claims analyzed under identical standards). Both sections of the Lanham Act, 15 U.S.C. § 1114[1] and 15 U.S.C. § 1125(a)(1)(A),[2] also explicitly require that use of the mark be "in commerce." *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754 (8th Cir. 2010). Currently, Defendants do not dispute that Plaintiff has a valid and legally protectable mark or that Plaintiff owns the Medieval Times Mark. Thus, at issue is whether Defendant's use of Plaintiff's Mark is likely to create confusion and is "in commerce."

"To prove likelihood of confusion, plaintiffs must show that consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Checkpoint Sys., Inc.*, 269 F.3d at 280 (internal quotes and citation omitted). In noncompeting goods cases, no single factor is determinative, but the factors to be weighed, commonly known as the *Lapp* factors, include:

> (1) [The] degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion;

---

[1] 15 U.S.C. § 1114(1)(a) provides that any person who, without consent of the trademark holder, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" is liable for trademark infringement.

[2] 15 U.S.C. § 1125(a)(1)(A) makes liable "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

(5) the intent of the defendant in adopting the mark;
(6) the evidence of actual confusion;
(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;
(8) the extent to which the targets of the parties' sales efforts are the same;
(9) the relationship of the goods in the minds of consumers because of the similarity of functions; and
(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

*Id.* at 280 (citing *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir.1983)). In evaluating likelihood of confusion, not all of these factors are applicable. *See WHS Entertainment Ventures v. United Paperworkers Int.'l Union*, 997 F. Supp. 946, 951 (M.D. Tenn. 1998).

Upon assessing the relevant *Lapp* factors, the Court concludes there is no plausible likelihood of confusion. First, apart from the strength of the Medieval Times Mark, which Defendant does not dispute, Plaintiff claims that features of the MTPU logo, such as the use of red and yellow, the stylized text, and use of castle and swords, highly resemble its Mark as follows:



*Similar font styles*



*Castle in logo is similar to Medieval Times's castles*



*Crossed swords and crest-style symbol are similar to décor and souvenirs at Medieval Times*



*Photo of Medieval Times employees in red uniforms and Medieval Times souvenir shield with red and yellow design and font*

6

Compl., ¶ 35. However, the similarity of the marks, which is the "single most important factor in determining likelihood of confusion, *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 712-713 (3d Cir. 2004), is not compelling in this case. Although both employ red and yellow in some fashion (in the logos and costumes), "Medieval Times" is written in different stylized fonts and colors. The Medieval Times Mark is written in yellow or red lettering in contrast to the MPTU logo which is in black font. The arched doorway, rectangular shaped parapets or merlons, and swords that the Medieval Times Mark and MPTU logo share often appear in medieval themes and castles. Such features certainly are not unique to Medieval Times. Finally, the scalloped border used by MTPU is not similar to or sufficiently evocative of the crest-like symbols that Medieval Times employs. In sum, neither a side-by-side comparison nor the overall impression is confusingly similar. *See e.g., Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chicago*, 856 F. Supp. 472, 475 (N.D. Ill. 1994) (finding defendant's logo - "SAVE" written above and "Coalition for Chicago" below "Brach's" with pink and purple stripe background and star-shaped apostrophe – to be substantially similar to federally registered "Brach's" with pink and purple stripe background and star-shaped apostrophe).

Regarding the fifth *Lapp* factor, Plaintiff has not plead any facts to show that Defendant, in adopting the Mark, intended to cause confusion. Rather, MPTU's use of Plaintiff's brand name as part of its own name[3] as well as the colors, castle, and swords in its logo serve to identify the Union as employees of Medieval Times.[4] "The choice of a particular name by a labor organization may very well facilitate its organizational drive to represent the employees of a particular employer. The name may serve to identify and publicize the employer which is the target of the campaign and to instill a measure of collective identity among employees." *Marriott Corp. v. Great Am. Serv. Trades Council, AFL-CIO*, 552 F.2d 176, 179–80 (7th Cir. 1977). *See also Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO,* No. 18-213, 2018 WL 5840766, at *3 (E.D. Wis. Nov. 8, 2018) (finding no plausible likelihood of confusion as "IAM is not using the SILGAN trademark as a source identifier for its services or to sow confusion as to whether Silgan approves or is affiliated with IAM's efforts, but rather to identify Silgan as the employer of the employees IAM is attempting to unionize."); *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92–93 (2d Cir. 1997) (noting no trademark infringement if defendants use "plaintiff's mark not in a manner that would

---

[3] Plaintiff accuses Defendant of avoiding the word "union" but cites no caselaw to support its suggestion that the absence of "union" in MTPU's name is a relevant factor in determining likelihood of confusion. MTPU is certainly not the only union to not include "union" in its name. *See e.g.,* Starbucks Workers United (sbworkersunited.org).

[4] The Court need not examine whether Plaintiff is correct that "fair use" cannot be a basis for dismissal under Rule 12(b)(6). The "nominative fair use test," which replaces the likelihood of confusion test in the Ninth Circuit, is an affirmative defense that in the Third Circuit, must be proven by defendant "*after* likelihood of confusion has been demonstrated by the plaintiff." *Century 21 Real Est. Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 228 (3d Cir. 2005) (emphasis added). As discussed herein, Plaintiff does not sufficiently plead likelihood of confusion.

create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiff's product").

Moreover, Plaintiff has pled no factual allegations that support its theory that Defendants' use of the MTPU name could lead to the mistaken impression that Defendants are affiliated with or endorsed by Medieval Times or that Medieval Times' employees are required to become members of the Union. Plaintiff's assertion is entirely conclusory. In fact, consumers are not likely to believe that Defendants are endorsed by Medieval Times or to be confused as to source because the MTPU logo, as discussed above, is not confusingly similar to the Medieval Times Mark and instead clearly states: "Medieval Times actors, stunt performers, and stable hands are joining together in union. Represented by the American Guild of Variety Artists (AGVA)" and "United for a fairer, safer, and more enjoyable workplace at Medieval Times." *See Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.,* 103 F.3d 196, 204 (1st Cir. 1996) ("in certain circumstances otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer.").

Given the union context, consumers are also not likely to be confused as to similarity of function. In fact, MTPU expressly states on its website that members are on strike due to "Medieval Times management's anti-union and anti-worker behavior." Where, as here, a labor union uses an employer's trademark as part of communications about the employer's labor practices, courts have often held that that is unlikely to cause confusion. *See e.g., Silgan Containers LLC*, 2018 WL 5840766, at *3-4 (dismissing trademark claim against union for use of employer's trademarked name in social media platforms recognizing that "[c]onfusion is even less likely to occur [] in the context of an attempt to unionize laborers given the inherent adversarial relationship"); *Circle Grp. v. Se. Carpenters Reg'l Council,* No. 09-3039, 2010 WL 11549830, at *6 (N.D. Ga. May 5, 2010) (dismissing trademark infringement claim where union's use of Circle's mark as part of "negative publicity campaign" against labor practices rather than as "source identifier" made likelihood of confusion remote); *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y. 2009) ("Defendants' entire effort is directed at attacking Cintas. … Defendants are not using the "CINTAS" mark as a "source identifier", but rather solely to criticize Cintas's corporate practices."), *aff'd*, 355 F. App'x 508 (2d Cir. 2009) (agreeing that union's use of employer's mark to criticize employer was not likely to cause confusion and did not violate Lanham Act even where website sold union merchandise such as "t-shirts, pins and other sundry items"); *Cellco P'ship v. Commc'n Workers of Am.*, No. 02-5542, 2003 WL 25888375, at *1 (D.N.J. Dec. 11, 2003) (granting motion to dismiss where labor organization's parody of Verizon Wireless slogan, "Can You Hear Me Now? Good" was pro-labor commentary in labor dispute against company associated with Verizon); *WHS Entertainment Ventures*, 997 F. Supp.

8

946 (finding no likelihood of confusion for Lanham Act violation where flyers bearing parody of trademarked Wildhorse Saloon logo and listing series of health violations was used to further union's position in labor dispute); *see also Giant Food LLC,* 2012 NLRB LEXIS 896, at * 25 (NLRB G.C. March 21, 2012) (noting use of protected mark "while engaging in Section 7 activity[5] would not infringe on [the employer's proprietary trademark] interest." (footnote added)). *Cf. Brach Van Houten Holding, Inc.*, 856 F. Supp. 472 (enjoining use of substantially similar logo, but not Brach's name, where defendant coalition failed to establish that its activities to prevent closing of candy factory met definition of labor dispute under Norris-LaGuardia Act); *United We Stand America, Inc.*, 128 F.3d at 92, 93 (finding political group's appropriation of another organization's protected mark to raise money in support of presidential candidacy was not commentary on owner but use as source identifier that would cause "significant consumer confusion").

Next, Plaintiff alleges that MTPU has shown bad faith in adopting the Medieval Times Mark. Specifically, Plaintiff accuses MTPU of claiming the Lyndhurst and Buena Park castle locations as its own by listing in its website an email address to reach "our union at the castle in Lyndhurst, NJ" and another to reach "our union at the castle in Buena Park, CA," Compl., ¶ 37. However, reference to the two locations accurately reflect that there are two unions - one for those who work at the castle in CA and another for those who work at the castle in NJ. Affording Plaintiff every favorable inference, the Court cannot conclude that information on how to contact the Union for those locations exhibits bad faith.

Finally, while Plaintiff correctly posits that "[e]vidence of actual confusion is not required to prove likelihood of confusion," under the sixth *Lapp* factor, actual confusion "may be highly probative of the likelihood of confusion." *Checkpoint Sys., Inc.*, 269 F.3d at 291. As Plaintiff has not alleged any actual confusion, this factor does not favor finding a likelihood of confusion.

In sum, Plaintiff has not sufficiently pled facts to show that there is a plausible likelihood that consumers would reasonably confuse Plaintiff's "Medieval Times" Dinner and Entertainment experience with Defendants' use of the MTPU logo in publicly challenging and trying to reform Plaintiff's labor practices. Although Plaintiff insists that dismissal is inappropriate because the likelihood of confusion is a fact-bound inquiry, not "every infringement case involving a source-identifying use requires full-scale litigation. …[I]f, in a given case, a plaintiff fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under Federal Rule of Civil Procedure

---

[5] 29 U.S.C. § 157 provides for the right of employees to organize and to bargain collectively.

12(b)(6)." *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 157, n.2 (2023); *Food Scis. Corp. v. Nagler*, No. 09-1798, 2010 WL 4226531, at *3 (D.N.J. Oct. 20, 2010) ("Likelihood of confusion is an issue well-suited for screening at the motion to dismiss stage. This is not an area of law in which plaintiffs face information asymmetries such that even viable claims will be lacking in critical information before discovery. On the contrary, by its nature, a trademark claim turns on facts known to a plaintiff because it requires a showing that the public is likely to be deceived by the public conduct of the defendant toward the plaintiff's own mark.").

Because Plaintiff has failed to allege facts sufficient to show plausible likelihood of consumer confusion, which a necessary element for both counts of its trademark claims, the Court need not address the Lanham Act's "in use" requirement. Defendants' motion to dismiss is **granted**. The Complaint is **dismissed** against MTPU and AGVA.

C. Norris-LaGuardia Act

The Norris-LaGuardia Act provides deprives the Court of jurisdiction "to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter," and cannot be "contrary to the public policy declared in this chapter." 29 U.S.C. § 101. Because Plaintiffs' Complaint is dismissed for failure to allege violation of the Lanham Act, there is no basis for *any* relief. Thus, the Court does not reach the question whether the Norris La-Guardia Act deprives this Court of jurisdiction to grant injunctive relief.

III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **granted**. The Complaint, including the request for injunctive relief, is **dismissed**.

WILLIAM J. MARTINI, U.S.D.J.

Date: September 28, 2023

10