DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

SCOTT W. PINK (S.B. #122383)
spink@omm.com
2765 Sand Hill Road
Menlo Park, California 94025-7019
Telephone: +1 650 473 2600
Facsimile: +1 650 473 2601

*Attorneys for Plaintiff Trader Joe's Company*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S UNITED,<br><br>Defendant. | Case No. 2:23-cv-05664<br><br>**PLAINTIFF TRADER JOE'S COMPANY'S OPPOSITION TO MOTION TO DISMISS, REQUEST FOR JUDICIAL NOTICE, AND NOTICE OF SUPPLEMENTAL AUTHORITY** |

1

**TABLE OF CONTENTS**

2

**Page**

I.   INTRODUCTION ...................................................................................... 7

II.  FACTUAL BACKGROUND ..................................................................... 7

III. LEGAL STANDARD ................................................................................ 8

IV.  ARGUMENT ............................................................................................. 9

A.   Trader Joe's Has Sufficiently Pled Its Lanham Act, UCL, and
      Common Law Claims ..................................................................... 10

      1.   Trader Joe's Sufficiently Alleged Likelihood of
            Confusion ............................................................................... 11

            a.   Trader Joe's Adequately Pled Likelihood of
                  Confusion Under *Sleekcraft* and the "Internet
                  Troika" .......................................................................... 11

            b.   A Likelihood of Confusion Determination Is
                  Disfavored at the Motion to Dismiss Stage .................. 15

            c.   Defendant's Authorities Are Unpersuasive Because
                  They Do Not Involve the Sale of Goods ....................... 17

      2.   Defendant Misstates the Requirements of an Unfair
            Competition Claim .................................................................. 18

      3.   Trader Joe's Sufficiently Alleged Defendant's Use of the
            Infringing Mark in Commerce ................................................. 19

B.   The Norris-LaGuardia Act Is Inapplicable Because This Case
      Does Not Involve a Labor Dispute ................................................ 21

      1.   This Action Is Not a Labor Dispute ....................................... 21

      2.   Trader Joe's Requested Injunction Is Not Contrary to
            Public Policy ........................................................................... 25

V.   CONCLUSION ........................................................................................ 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S OPP'N TO MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**

2

Page

3

<u>CASES</u>

4

*Acad. of Motion Picture Arts & Scis. v. Creative House
        Promotions, Inc.*,

5

    944 F.2d 1446 (9th Cir. 1991) ............................................................. 10

6

*Acasio v. San Mateo County*,
    2015 WL 5568345 (N.D. Cal. Sept. 22, 2015) ....................................... 9

7

*Akahoshi v. Bank of Am., N.A.*,

8

    2015 WL 13917116 (C.D. Cal. Aug. 5, 2015) ....................................... 9

9

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds* ................................ 11

10

*Ashcroft v. Iqbal*,

11

    556 U.S. 662 (2009) ............................................................................. 8

12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 8

13

*Blumenthal Distrib., Inc. v. Comoch Inc.*,

14

    2023 WL 2356713 (C.D. Cal. Jan. 24, 2023) ....................................... 19

15

*Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi.*,

16

    856 F. Supp. 472 (N.D. Ill. 1994) ....................................................... 20

17

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................. 14

18

*Cintas Corp. v. United Here*,

19

    601 F. Supp. 2d 571 (S.D.N.Y. 2009) ................................................. 18

20

*City of Carlsbad v. Shah*,
    850 F. Supp. 2d 1087 (S.D. Cal. 2012) ............................................... 18

21

22

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994) ....................................................... 10, 19

23

*Dita, Inc. v. Mendez*,

24

    2010 WL 5140855 (C.D. Cal. Dec. 14, 2010) ..................................... 15

25

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) ............................................................. 11

26

27

*Fierce, Inc. v. Franklin Covey Co.*,
    2019 WL 1453573 (W.D. Wash. Apr. 2, 2019) ................................... 13

28

3

**TABLE OF AUTHORITIES**
(continued)

Page

*GoTo.com v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000)................................................................11, 12

*Grey v. Campbell Soup Co.*,
  650 F. Supp. 1166 (C.D. Cal. 1986).............................................................10

*In re Dell Inc.*,
  71 U.S.P.Q. 2d (BNA) 1725 (T.T.A.B. 2004) ..............................................20

*Int'l Ass'n of Machinists v. Winship Green Nursing Ctr.*,
  103 F.3d 196 (1st Cir. 1996) .........................................................................18

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2008).........................................................................14

*Klarfeld v. United States*,
  944 F.2d 583 (9th Cir. 1991) ..........................................................................9

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
  998 F. Supp. 2d 890 (C.D. Cal. 2014)..........................................................8, 9

*Lanard Toys Ltd. v. Anker Play Prods., LLC*,
  2020 WL 6873647 (C.D. Cal. Nov. 12, 2020) ..............................................13

*Lucent Techs., Inc. v. Johnson*,
  2000 WL 1604055 (C.D. Cal. Sept. 12, 2000).........................................11, 16

*Lucky Stores, Inc. v. Int'l Bhd. of Teamsters Local Nos. 70, 80, 150, 409*,
  812 F. Supp. 162 (N.D. Cal. 1992)................................................................23

*Marketquest Grp., Inc. v. BIC Corp.*,
  316 F. Supp. 3d 1234 (S.D. Cal. 2018) .........................................................20

*Marriott Corp. v. Great Am. Serv. Trades Council, AFL-CIO*,
  552 F.2d 176 (7th Cir. 1976)......................................................................22, 23

*Medieval Times U.S.A., Inc. v. Medieval Times Performers United*,
  2023 WL 6307464 (D.N.J. Sept. 28, 2023)....................................................17

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
  2023 WL 5061945 (N.D. Cal. Aug. 8, 2023)...................................................9

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011)........................................................................10

*Neveu v. City of Fresno*,
  392 F. Supp.2d 1159 (E.D. Cal. 2005)............................................................8

PL.'S OPP'N TO MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page

*Playmakers, LLC v. ESPN, Inc.*,
297 F. Supp. 2d 1277 (W.D. Wash. 2003) ...........................................13

*RCRV, Inc. v. Gracing Inc.*,
2016 WL 11000048 (C.D. Cal. July 20, 2016) ...................................15

*RVCA Platform, LLC v. Nudie Jeans Co AB*,
2008 WL 11337820 (C.D. Cal. Aug. 29, 2008) ..................................17

*Senco Prods., Inc. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*,
311 F. Supp. 590 (S.D. Ohio 1970) .....................................................24

*Silgan Containers LLC v. Int'l Ass'n of Machinists*,
2018 WL 5840766 (E.D. Wis. Nov. 8, 2018) .....................................18

*Smith v. Wal-Mart Stores, Inc.*,
537 F. Supp. 2d 1302 (N.D. Ga. 2008) ...............................................21

*Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*,
2023 WL 4042582 (S.D. Cal. June 15, 2023) ...............................14, 15

*Upper Deck Co. v. Flores*,
569 F. Supp. 3d 1050 (S.D. Cal. 2021) ...............................................11

*Vapor Spot, LLC v. Breathe Vape Spot, Inc.*,
2015 WL 12839123 (C.D. Cal. Sept. 15, 2015) .................................16

*Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*,
2008 WL 4723603, at *3 (E.D. Cal. Oct. 24, 2008) ...............9, 14, 15

*WHS Ent. Ventures v. United Paperworkers Int'l Union*,
997 F. Supp. 946 (M.D. Tenn. 1998) ..................................................18

*Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*,
2023 WL 3237505 (N.D. Cal. May 3, 2023) ......................................14

## STATUTES

15 U.S.C. § 1127.......................................................................................19

29 U.S.C. § 101.........................................................................................21

29 U.S.C. § 102.........................................................................................25

29 U.S.C. § 113(c) ....................................................................................21

PL.'S OPP'N TO MOTION TO DISMISS

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 8

Fed. R. Evid. 201(b) ................................................................................. 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL.'S OPP'N TO MOTION TO DISMISS

Plaintiff Trader Joe's Company ("Trader Joe's") submits this opposition to Defendant Trader Joe's United's ("Defendant") Motion to Dismiss the Complaint, Request for Judicial Notice, and Notice of Supplemental Authority.

## I.   **INTRODUCTION**

This case concerns a narrow and straightforward application of trademark and related law to the sale of goods bearing infringing marks and stylizations. It does not concern Defendant's ability to use the mark TRADER JOE'S to refer to the union or its organizing efforts. And it does not concern all merchandise sold by Defendants. Indeed, Trader Joe's has disclaimed seeking any such remedies. Rather, Trader Joe's seeks remedies solely for the sale of certain goods that make use of Trader Joe's trademarks and stylizations that are likely to confuse consumers. Put simply, this is a case about commerce, not about any labor dispute.

Defendant's motion first argues that Trader Joe's has failed to plead selected elements of certain claims. But, as discussed below, Trader Joe's has sufficiently pled each required element. Defendant then argues that the Norris-LaGuardia Act precludes the injunctive relief sought by Trader Joe's. But this argument is misplaced, because this lawsuit is not a "labor dispute" within the meaning of that Act. In a purely commercial case, as present here, a union's trademark infringement justifies relief pursuant to the Lanham Act. The motion should be denied.

## II.   **FACTUAL BACKGROUND**

Trader Joe's has continuously used for the last 56 years its distinctive TRADER JOE'S name and trademarks (the "TRADER JOE'S Family of Marks") on its TRADER JOE'S-branded products. Compl. ¶ 19. During that time, Trader Joe's has achieved great business success, such that the TRADER JOE'S Family of Marks symbolizes extraordinary goodwill. *Id.* ¶ 23. The TRADER JOE'S mark also has achieved fame throughout the United States. *Id.* Products bearing the TRADER JOE'S Family of Marks are sold exclusively by Trader Joe's, because Trader Joe's does not franchise or license the TRADER JOE'S Family of Marks. *Id.* ¶ 25.

1    Defendant is now wrongfully, and without authorization, using the TRADER

2    JOE'S Family of Marks on certain merchandise it markets and sells online to the

3    general public. *Id.* ¶¶ 26-31. The infringing merchandise, including reusable tote

4    bags, apparel, and home goods, contains branding that incorporates the unique

5    attributes of the TRADER JOE'S Family of Marks. *Id.* ¶¶ 4, 28-29. Defendant's use

6    of the TRADER JOE'S Family of Marks on these products is likely to cause

7    confusion among consumers. *Id.* ¶ 40. But as the Complaint makes abundantly

8    clear, Trader Joe's does not allege that *all* of Defendant's merchandise is infringing.

9    *Id.* ¶ 37. Nor does Trader Joe's seek to restrain the use of "Trader Joe's" for the

10   purpose of identifying the union or discussing the union's cause. *Id.* ¶¶ 35-36. The

11   case seeks only a limited remedy, contrary to the sweeping claims in the motion to

12   dismiss.

13   **III.   LEGAL STANDARD**

14       A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is

15   disfavored and rarely granted. *Neveu v. City of Fresno*, 392 F. Supp.2d 1159, 1168

16   (E.D. Cal. 2005). To survive a motion, Trader Joe's' complaint need only "contain

17   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

18   on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

19   *Twombly*, 550 U.S. 544, 570 (2007)). "[S]pecific facts are not necessary" so long as

20   the "complaint gives the defendant fair notice of the claim and the grounds upon

21   which the claim rests." *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F.

22   Supp. 2d 890, 896 (C.D. Cal. 2014). As the Court explained in *Twombly*, "asking

23   for plausible grounds does not impose a probability requirement at the pleading

24   stage; it simply calls for enough fact to raise a reasonable expectation that discovery

25   will reveal evidence of" unlawful conduct. *Twombly*, 550 U.S. at 545. In

26   conducting this evaluation, courts "must presume all factual allegations of the

27   complaint to be true and draw all reasonable inferences in favor of the non-moving

28   party." *Kythera*, 998 F. Supp. 2d at 896 (citing *Klarfeld v. United States*, 944 F.2d

1    583, 585 (9th Cir. 1991)).

2         Generally, when evaluating a motion to dismiss, district courts are bound by

3    the four corners of the pleadings. *Visual Changes Skin Care Int'l, Inc. v. Neways,*

4    *Inc.*, 2008 WL 4723603, at *3 (E.D. Cal. Oct. 24, 2008). Federal Rule of Evidence

5    201 provides a narrow exception, allowing a court to take judicial notice of facts

6    that are "not subject to reasonable dispute."  Fed. R. Evid. 201(b). It is well

7    established in this Circuit that a court "may take judicial notice of records from

8    other proceedings not to credit the truth of the allegations or facts set forth therein,

9    but rather for purposes of noticing the existence of" the dispute. *Acasio v. San*

10   *Mateo County*, 2015 WL 5568345, at *1 n.1 (N.D. Cal. Sept. 22, 2015).

11   Consequently, the Court may take judicial notice of the July 7, 2023 and May 25,

12   2023 consolidated complaints issued by the National Labor Relations Board, as

13   attached to Defendant's Motion, but "may not take judicial notice of disputed facts

14   contained in" those complaints. *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 2023

15   WL 5061945, at *4 (N.D. Cal. Aug. 8, 2023); *see also Akahoshi v. Bank of Am.,*

16   *N.A.*, 2015 WL 13917116, at *2 (C.D. Cal. Aug. 5, 2015) ("it would be improper

17   for the Court to judicially notice reasonably disputed facts, even if those facts are

18   stated within publicly recorded documents").

19   **IV.   <u>ARGUMENT</u>**

20        Defendant's Motion and Notice of Supplemental Authority fundamentally

21   overstate what Trader Joe's must plead at this juncture. Contrary to Defendant's

22   suggestion, Trader Joe's is not required to allege every element of the eight-factor

23   test for likelihood of confusion, nor is it required to prove an actual likelihood of

24   confusion at this stage. *Visual Changes*, 2008 WL 4723603, at *6. The question is

25   whether Trader Joe's has stated a claim to relief that is plausible on its face, and

26   Trader Joe's has done so. Further, Defendant's Norris-LaGuardia Act argument is a

27   red herring. This action is not a labor dispute, and Defendant cannot show

28   otherwise. Because Trader Joe's has sufficiently pled its claims under the

applicable standards, and the Norris-LaGuardia Act is irrelevant here, this Court should deny Defendant's Motion.

**A.     Trader Joe's Has Sufficiently Pled Its Lanham Act, UCL, and Common Law Claims**

Trader Joe's has sufficiently pled each of its claims under the Lanham Act, California Unfair Competition Law ("UCL"), and common law. To state a claim for trademark infringement under the Lanham Act, Trader Joe's is required to plead "(1) that it has a protectible ownership interest in the mark; and (2) that [Defendant's] use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011). The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (internal citations omitted). Under both the first and second causes of action under the Lanham Act and the unfair competition claims under state law, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks."[1] *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc*., 944 F.2d 1446, 1457 (9th Cir. 1991) (citations omitted). To plead a dilution claim, a plaintiff must allege that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1065 (S.D. Cal. 2021).

---

[1] "The tests for infringement of a federally registered mark under [the Lanham Act], infringement of a common law trademark, unfair competition under [the Lanham Act], . . . and common law unfair competition involving trademarks are the same: whether confusion is likely." *Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986).

1   Defendant makes scattershot attacks on a handful of the elements at issue.

2   Each of those attacks fails.

3   **1.   Trader Joe's Sufficiently Alleged Likelihood of Confusion**

4   Trader Joe's has sufficiently pled likelihood of confusion under both the

5   *Sleekcraft* test and the "internet troika" factors. *See AMF Inc. v. Sleekcraft Boats*,

6   599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds*; *GoTo.com v.*

7   *Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). This conclusion is

8   particularly obvious in light of in-circuit authority that disfavors motions to dismiss

9   on likelihood of confusion grounds, because "the likelihood of confusion inquiry is

10  a fact-intensive evaluation ill-suited for disposition on a motion to dismiss." *Lucent*

11  *Techs., Inc. v. Johnson*, 2000 WL 1604055, at *2 (C.D. Cal. Sept. 12, 2000). Nor

12  do the out-of-circuit decision in *Medieval Times* or other cases cited by Defendant

13  support dismissal.

14  **a.   Trader Joe's Adequately Pled Likelihood of Confusion Under**

15  ***Sleekcraft* and the "Internet Troika"**

16  The "test for likelihood of confusion is whether a reasonably prudent

17  consumer in the marketplace is likely to be confused as to the origin of the good or

18  service bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d

19  1135, 1140 (9th Cir. 2002). This analysis is conducted via an eight factor test,

20  including: (1) the strength of the plaintiff's mark; (2) the proximity or relatedness of

21  the parties' goods; (3) the marks' similarity in appearance, sound, and meaning; (4)

22  evidence of actual confusion; (5) evidence of the defendant's intention in selecting

23  and using the allegedly infringing name; (6) the degree to which the parties'

24  marketing channels converge; (7) the type of goods and the degree of care

25  customers are likely to exercise in purchasing them; and (8) the likelihood that the

26  parties will expand their product lines. *Sleekcraft Boats*, 599 F.2d at 348-49. In the

27  context of the internet, courts have deemed that the three most important *Sleekcraft*

28  factors—the internet troika—are (1) the similarity of the marks; (2) the relatedness

of the goods or services; and (3) the "simultaneous use of the Web as a marketing channel." *GoTo.com*, 202 F.3d at 1205.

Trader Joe's' 71-paragraph Complaint is replete with factual allegations and visual examples plausibly stating a likelihood of confusion. Trader Joe's alleges numerous facts supporting the strength of its mark (Factor 1), including use of the TRADER JOE'S Family of Marks since 1967, which has generated "substantial fame, commercial goodwill, and customer recognition." Compl. ¶ 20. The Complaint alleges that both Trader Joe's and Defendant sell related goods, including, at a minimum, reusable tote bags (Factor 2). *Id.* ¶¶ 18, 26, 29. Trader Joe's illustrates the visual similarities of the infringing marks with the TRADER JOE'S Family of Marks by including side-by-side comparisons of an infringing product with Trader Joe's' product (Factor 3). *Id.* ¶¶ 21, 28-29.



| Trader Joe's Product | Defendant's Infringing Product |
|---|---|

Trader Joe's specifically alleges that Defendant's infringing products use the TRADER JOE'S typed word and stylized mark, Trader Joe's unique red coloring, typeface, concentric circle designs, and/or a similar general composition to the

TRADER JOE'S logo[2] (Factor 3). *Id.* ¶¶ 5, 27-28. Trader Joe's' complaint alleges that Defendant's infringing products are available for sale on Defendant's commercial website, where it markets and sells various products exhibiting the Trader Joe's trademarks in a way that is likely to cause consumer confusion because Trader Joe's also markets its products online (Factor 6).[3] *Id.* ¶¶ 4, 16, 40. Customers are unlikely to exercise a high degree of care in purchasing the infringing products because "reusable tote bags, apparel, mugs, and buttons" are inherently inexpensive (Factor 7)*. Id.* ¶ 26; *Lanard Toys Ltd. v. Anker Play Prods., LLC*, 2020 WL 6873647, at *14 (C.D. Cal. Nov. 12, 2020) ("Unlike purchasers of expensive goods—whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods are likely to exercise less care, thus making confusion more likely.").  Finally, Trader Joe's alleges that "Defendant will continue and expand" its infringing activity if not enjoined. Compl. ¶ 41 (Factor 8). The foregoing allegations alone are sufficient to plead likelihood of confusion.

Defendant nevertheless argues that "Plaintiff fails to allege critical *Sleekcraft* factors." Mot. at 7; *see also* Dkt. No. 23 at 2 ("Plaintiff failed to allege any intent to confuse . . . [and] actual confusion."). But this misapprehends the law. The Ninth Circuit assesses likelihood of confusion based on "those factors that are of the most relative importance in any particular case" and, as Defendant argues, "the Ninth

---

[2] Defendant's conclusory claim that Trader Joe's' "Complaint shows no similarity of marks" is demonstrably false. Mot. at 8. In evaluating similarity of two marks, courts can consider "color of lettering and/or background, font or typeface, and the overall style or appearance of the marks." *Fierce, Inc. v. Franklin Covey Co.*, 2019 WL 1453573, at *5 (W.D. Wash. Apr. 2, 2019) (internal citations omitted).

[3] In its Motion, Defendant claims that the Parties' simultaneous use of the internet as a marketing channel is "next to nil" because Trader Joe's does not sell its products online. Mot. at 8-9. Defendant's suggestion that marketing channels equate to point of sale is incorrect. Marketing channels can include "the type of market (retail or wholesale), point of sale, type of retail establishment, ***and methods of advertising***"). *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003) (emphasis added). As Trader Joe's pled, it advertises its products on its website, which "receives over 4.6 million visitors monthly." Compl. ¶ 16.

PL.'S OPP'N TO MOTION TO DISMISS

Circuit places 'greater import' on the 'internet troika.'" *Visual Changes*, 2008 WL 4723603, at *6 (citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008)); Mot. at 8. As explained above, Trader Joe's has pled facts sufficient to allege all three parts of that troika: the similarity of the marks, the relatedness of the goods, and use of the internet as a marketing channel by both parties.

Contrary to Defendant's claim, Trader Joe's need not plead facts regarding every *Sleekcraft* factor. The *Sleekcraft* test is "pliant" and "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). The absence of allegations regarding actual confusion and Defendant's intent does not warrant dismissal as Defendant urges. Courts in this Circuit have denied motions to dismiss with similar pleading "deficiencies." *See, e.g.*, *Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*, 2023 WL 3237505, at *2-3 (N.D. Cal. May 3, 2023) (denying motion to dismiss federal and state trademark infringement claims despite plaintiff "not alleg[ing] a single instance of actual confusion," and "fail[ing] to plead facts supporting its allegations that Defendant had a bad faith intent"). In denying the motion to dismiss in *Zero Motorcycles*, the court explained that the "[a]nalysis of the *Sleekcraft* factors most typically occurs in the context of a summary judgment motion, or at trial," and "the party moving to dismiss faces a significant challenge to show that the non-existence of such a likelihood can be determined as a matter of law at the pleading stage." *Id.* at *5; *see also Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*, 2023 WL 4042582, at *4 (S.D. Cal. June 15, 2023) (denying motion to dismiss where actual confusion and bad faith intent were implausible).

Defendant asks the Court to consider matters outside the four corners of the complaint and analyze the content of Defendant's website for a likelihood of confusion analysis. Mot. at 6-7. Putting aside that this request is improper, Defendant's description of its website is misleading. By Defendant's own

admission, the quoted language and video appear on the homepage: www.traderjoesunited.org. *Id.* Defendant does not argue—because it cannot—that the statements or videos located on the homepage appear at the location where the store offers the goods at issue: store.traderjoesunited.org. Compl. ¶ 4 n.1. Rather, Defendant argues that "[t]he 'store' page requires navigation through the homepage." Mot. at 12. But this is false: nothing prevents a user from navigating directly to the store page or being directed there by a search engine.

Defendant's Motion should be denied because Trader Joe's has alleged facts supporting the relevant factors of the *Sleekcraft* test, particularly the "internet troika."

**b.    A Likelihood of Confusion Determination Is Disfavored at the Motion to Dismiss Stage**

Courts in this Circuit routinely hold that it is inappropriate to dismiss a complaint based on an alleged failure to plead likelihood of confusion. For example:

- Arguments for determination of likelihood of confusion are "premature on a motion to dismiss" and granting dismissal on that basis would be "highly unusual." *Dita, Inc. v. Mendez*, 2010 WL 5140855, at *5 (C.D. Cal. Dec. 14, 2010) (internal citations and quotations omitted);

- The *Sleekcraft* test is a "fact extensive inquiry [that] is often not appropriate at the motion to dismiss stage." *Universal Prot.*, 2023 WL 4042582, at *4;

- "Many courts have held that the likelihood of consumer confusion is not appropriate to determine at the motion to dismiss stage." *RCRV, Inc. v. Gracing Inc.*, 2016 WL 11000048, at *2 (C.D. Cal. July 20, 2016);

- "A plaintiff is not required to prove the likelihood of confusion at the pleading stage." *Visual Changes*, 2008 WL 4723603, at *4 (internal citations and quotations omitted));

- Plaintiff is "not required to prove the likelihood of confusion at the pleading stage." *Vapor Spot, LLC v. Breathe Vape Spot, Inc.*, 2015 WL 12839123, at *5 (C.D. Cal. Sept. 15, 2015) (internal citations and quotations omitted));

- "[T]he likelihood of confusion inquiry is a fact-intensive evaluation ill-suited for disposition on a motion to dismiss." *Lucent Techs.*, 2000 WL 1604055, at *2 (15 U.S.C. § 1125(d)(1)(A) claim).

In the limited instances where courts in this Circuit have granted a motion to dismiss based on lack of confusion, those cases involved parties who did not sell similar goods and who did not use the entirety of the plaintiff's trademark. As one court put it:

> Case law demonstrates that dismissal at the pleadings stage tends to be appropriate when it is clear both that the goods or services in question are not related and that confusion is not likely. *See, e.g., Id.* at 861(affirming district court's dismissal where "America Speaks" service mark was used by consumer survey group to sell its survey results to business clients and allegedly infringing "America's Talking" service mark was used by television network that distributed poll results to the news media); *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981) (affirming dismissal based on a determination that the use of "BAGZILLA" on garbage bags was unrelated as a matter of law to the use of "GODZILLA" on literary works and toys); *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264–65 (9th Cir. 2001) (reversing grant of summary judgment and explaining that the likelihood of confusion presents a question of fact and that "trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual.... Additionally, the question of likelihood of

PL.'S OPP'N TO MOTION TO DISMISS

confusion is routinely submitted for jury determination as a question of
fact" (quoting *Levi Strauss*, 778 F.2d at 1356 n.5 (9th Cir.1985)
(internal citations omitted))).

*RVCA Platform, LLC v. Nudie Jeans Co AB*, 2008 WL 11337820, at *3 (C.D. Cal.
Aug. 29, 2008). But here, Defendant has used the entirety of the mark TRADER
JOE'S and both parties sell, at least, tote bags.

Rather than address this in-circuit authority, Defendant directs this Court to
an out-of-circuit district court decision for the proposition that "[l]ikelihood of
confusion is an issue well-suited for screening at the motion to dismiss stage."  Dkt.
No. 23 at 2; *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*,
2023 WL 6307464, at *6 (D.N.J. Sept. 28, 2023). That case cannot overcome the
great weight of in-circuit authority to the contrary. In any event, that case and
Defendant's other authorities are distinguishable, as discussed below.

**c.      Defendant's Authorities Are Unpersuasive Because They Do Not
Involve the Sale of Goods**

Defendant's authorities all fail to support dismissal because none of them
concern *the sale of goods* bearing the plaintiffs' trademarks; rather, those
authorities concern confusion as to whether the trademark holder sponsored *the
union* or was the source or sponsor of *communications* relating to the union. In
*Medieval Times*, the alleged confusion was that consumers would conclude that the
union was "sponsored or endorsed by plaintiff and that Union membership is
required." *Medieval Times*, 2023 WL 6307464, at *4. The court concluded that
plaintiff failed to plead allegations to support the theory that defendants' name
"could lead to the mistaken impression that Defendants are affiliated with or
endorsed by [plaintiff] or that [plaintiffs'] employees are required to become
members of the Union." *Id.* at *5.

Defendant's other cases are all similar. *International Ass'n of Machinists v.
Winship Green Nursing Center* concerned fliers sent by the employer that used the

name of the union, and the alleged confusion was a belief "that the service-marked campaign literature was produced, sent, or authorized by" the union. 103 F.3d 196, 201 (1st Cir. 1996). In *Silgan*, the activity concerned social media posts and the alleged confusion was "confusion regarding Silgan's affiliation, endorsement, or approval of [the union's] attempt to unionize its employees." *Silgan Containers LLC v. Int'l Ass'n of Machinists*, 2018 WL 5840766, at *3 (E.D. Wis. Nov. 8, 2018). In *Cintas*, the union used the employer's trademark on a website ("Cintas Exposed") that criticized the employer, and the employer claimed initial interest confusion regarding its relationship to that website. *Cintas Corp. v. United Here*, 601 F. Supp. 2d 571, 576 (S.D.N.Y. 2009). And *WHS Entertainment* concerned fliers distributed by the union that were critical of the employer's business practices; the alleged confusion was that the employer sponsored or was affiliated with those fliers. *WHS Ent. Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 948, 951 (M.D. Tenn. 1998).

None of these cases has any bearing on the dispute here: the sale by Defendant of goods bearing Trader Joe's marks. The motion should be denied.

## 2.     Defendant Misstates the Requirements of an Unfair Competition Claim

Defendant argues that Trader Joe's' common law and statutory UCL claims must fail because Trader Joe's did not allege ill-intent or "that Trader Joe's Union is a competitor of Trader Joe's." Mot. at 9. Defendant misstates the law. In general, common law unfair competition in California has four elements: (1) the plaintiff invested substantial time, skill, or money in developing its property; (2) the defendant appropriated and used the property at little or no cost; (3) the plaintiff did not authorize or consent to the property's appropriation and use; and (4) the plaintiff was injured by the appropriation and use. *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1110-11 (S.D. Cal. 2012). But as applied to trademark infringement claims, the Ninth Circuit "has consistently held that state common law claims of

unfair competition and actions pursuant to California [UCL] are 'substantially congruent' to claims made under the Lanham Act" and may be analyzed under the same legal framework. *Cleary*, 30 F.3d at 1262-63 (internal citations omitted); *Blumenthal Distrib., Inc. v. Comoch Inc.*, 2023 WL 2356713, at *5 (C.D. Cal. Jan. 24, 2023). As explained above, the test is whether the public is likely to be deceived or confused by the similarity of the marks, which Trader Joe's sufficiently pleads in its complaint. *See* above at 5-7. The law does not require, nor does Defendant cite to any case suggesting, that ill-intent and a competitor relationship be pled to support these claims.

### 3.    Trader Joe's Sufficiently Alleged Defendant's Use of the Infringing Mark in Commerce

Contrary to Defendant's claim, Trader Joe's pled facts sufficient to allege Defendant's use of the TRADER JOE'S Family of Marks in commerce. The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade such that a mark is "deemed to be use[d] in commerce" when it is "place[d] in any manner on [ ] goods" and "the goods are sold or transported in commerce."  15 U.S.C. § 1127. The Complaint alleges that "Defendant operates a commercial website where it markets and sells various products, including apparel, home goods, and reusable tote bags, for profit"; and "Defendant commenced use of the TRADER JOE'S Family of Marks in commerce in connection with Defendant's commercial website and the merchandise sold thereon in late June 2023."  Compl. ¶¶ 4, 30. Standing alone, these allegations sufficiently plead use in commerce.

Defendant's primary argument to the contrary is that Trader Joe's only offers "repetitive conclusory allegations that Defendant's website is 'commercial,' merchandise is 'commercial,' [and] the trademarks are used 'in a purely commercial fashion.'" Mot. at 12. But Defendant's online sale of merchandise bearing an infringing mark is a textbook example of infringing use in commerce. *See* 15 U.S.C. § 1127 (use in commerce means "placed on any manner on goods"

and "the goods are sold or transported in commerce"). If Defendant's argument were accepted, that would mean that Defendant would be free to sell a full range of counterfeit Trader Joe's products on its website, because those sales would also not be "use in commerce." Defendant's position defies common sense and is unsupported by the law. Indeed, a website's use of a mark constitutes "use in commerce" for goods when the use "in some way evince[s] that the mark is 'associated' with the goods." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1288 (S.D. Cal. 2018); *see also In re Dell Inc*., 71 U.S.P.Q. 2d (BNA) 1725, 1727 (T.T.A.B. 2004) (recognizing that "[i]n today's commercial environment," "[w]eb pages which display goods and their trademarks and provide for the on-line ordering of such goods are, in fact, electronic displays which are associated with the goods").

At least one court has specifically determined that a union's adoption of an employer's trademark was "use in commerce" in violation of the Lanham Act. *See Brach Van Houten Holding, Inc. v. Save Brach's Coal. for Chi.*, 856 F. Supp. 472, 475-76 (N.D. Ill. 1994). There, a coalition including the union used the employer's logo in communications regarding the union's efforts to keep a factory open. *Id.* at 474. The defendant argued that this use was not subject to the Lanham Act, because it did not "sell, distribute, or advertise goods or services." *Id.* at 475. The court disagreed and held that the Lanham Act applied, because the defendant was "soliciting donations, preparing press releases, holding public meetings and press conferences, propounding proposals for the reorganization of Brach's ownership and/or management, and other activities designed to bring about change in Brach's organization and enhance the stability of workers' jobs." *Id.* The facts regarding use in commerce are far stronger here, because Defendant has used the TRADER JOE'S Family of Marks on physical goods that it sells to the public.

Defendant cites *Smith v. Wal-Mart Stores, Inc.* for the proposition that Defendant's "union organizing shows the material was noncommercial speech" and

PL.'S OPP'N TO MOTION TO DISMISS

1   thus not subject to Trader Joe's dilution claim. 537 F. Supp. 2d 1302 (N.D. Ga.

2   2008); Mot. at 13. Nowhere in the complaint does Trader Joe's allege that

3   Defendant's infringing products are related to "union organizing." In fact, Trader

4   Joe's has made the opposite allegation—it has taken no "issue with Defendant's

5   reference to Trader Joe's for the purpose of identifying the union or discussing the

6   union's cause." Compl. ¶ 35. But even if the infringing products were related to

7   "union organizing," *Smith* does not hold that such materials are noncommercial

8   speech. *Smith* concerns parody and nowhere addresses union organizing efforts.

9       **B.**   **The Norris-LaGuardia Act Is Inapplicable Because This Case**

10            **Does Not Involve a Labor Dispute**

11       Defendant's reliance on the Norris-LaGuardia Act is misplaced. The Norris-

12  LaGuardia Act ("NLGA") prevents courts from issuing injunctions in cases

13  "involving or growing out of a labor dispute" or which are "contrary to the public

14  policy declared" within the NLGA. 29 U.S.C. § 101. Because the infringing

15  conduct Trader Joe's seeks to enjoin does not meet these criteria, the NLGA is

16  inapplicable to this action.

17           **1.**    **This Action Is Not a Labor Dispute**

18       This lawsuit is not a labor dispute. The NLGA defines "labor dispute" as

19  "any controversy concerning terms or conditions of employment, or concerning the

20  association or representation of persons in negotiating, fixing, maintaining,

21  changing, or seeking to arrange terms or conditions of employment, regardless of

22  whether or not the disputants stand in the proximate relation of employer and

23  employee." 29 U.S.C. § 113(c). Trader Joe's brings this action for reasons wholly

24  unrelated to those described in the NLGA. Specifically, Trader Joe's seeks only to

25  prevent Defendant from marketing and selling certain merchandise bearing the

26  TRADER JOE'S Family of Marks. Compl. ¶ 35. Trader Joe's makes clear, and

27  Defendant concedes, that Trader Joe's does not seek to prevent Defendant from

28  using the phrase "Trader Joe's" for the purpose of identifying Trader Joe's, the

1    union, or in communicating Defendant's messages. *Id.* ¶¶ 35-36; Mot. at 3.

2    Labeling this action a "labor dispute" is simply incorrect.

3         Defendant baselessly asserts that "this case is deeply intertwined with several

4    concurrent and ongoing labor disputes between the parties within the meaning of

5    the Norris-LaGuardia Act." Mot. at 15. Absent from the Motion, however, is any

6    explanation of how enjoining Defendant's sale of a limited category of infringing

7    merchandise meets the definition of labor dispute under the NLGA. Nor does

8    Defendant explain how this action has any bearing on the legitimate interests of the

9    union in any labor dispute. Defendant likewise baselessly asserts that this lawsuit is

10   "a transparent effort" of "retaliation against the unionization efforts" and "to chill

11   workers at other Trader Joe's locations from exercising their rights under federal

12   labor law to organize a union." *Id.* at 3. But Defendant's conclusory allegations fail

13   to explain how Trader Joe's' requested relief affects Defendant's unionization

14   efforts or chills workers in any way. Nor do the cases cited by Defendant support its

15   position.

16        *First*, Defendant erroneously relies on *Marriott Corp. v. Great America

17   Service Trades Council, AFL-CIO*, 552 F.2d 176 (7th Cir. 1976), which Defendant

18   claims shares a "nearly identical" factual background. Not so. There, plaintiff

19   Marriott Corporation was constructing an amusement park marketed as "Marriott's

20   Great America." *Id.* at 178. Several labor organizations joined together for the

21   purpose of organizing the approximately 1,500 employees expected to be hired by

22   Marriott and, in doing so, adopted the name, "Great America Service Trades

23   Counsel, AFL-CIO." *Id.* As part of their organizational efforts, the union ran an

24   advertisement in a local newspaper addressed to "Applicants for Positions with

25   Marriott's Great America," and printed authorization cards to distribute to

26   prospective employees of the amusement park. *Id.* Marriott sued, alleging that the

27   union's use of the words "Great America" *in its name* violated Marriott's rights

28   under the Lanham Act on the grounds that the union's "use of 'Great America'

1    *created a likelihood of confusion that the [union] was affiliated with Marriot* and

2    that this conduct caused 'serious injury to Marriott's business and reputation.'" *Id.*

3    (emphasis added). In finding that the NLGA prevented the requested injunctive

4    relief, the court explained that Marriott's relief "was directed against the [union]'s

5    choice of name," which was "intertwined with" the "organizational efforts of the

6    union to achieve representation of Marriott's workers." *Id.* at 179.

7         *Marriott* is easily distinguishable from the facts here, because Trader Joe's

8    does not seek to enjoin Defendant from using "Trader Joe's" in its name or any of

9    its union communications. The *Marriott* plaintiff alleged confusion as to

10   "affiliation" or "relationship" between *itself and the union*, "not as to source of

11   products or services." *Id.* at 180. The opposite is true here. As Defendant concedes,

12   Trader Joe's does not demand "that Defendants stop using the phrase 'Trader Joe's'

13   for the purpose of identifying Trader Joe's or communicating Defendant's message

14   or using the phrase 'Trader Joe's United' for the purpose of identifying Defendant

15   or communicating its message." Mot. at 15, Compl. ¶ 36. Instead, Trader Joe's

16   only seeks to stop Defendant from selling certain products that bear the TRADER

17   JOE'S Family of Marks. Compl. ¶ 7. Because the concerns expressed in *Marriott*

18   are not applicable here, Defendant's reliance on *Marriott* is misplaced.

19        *Second*, Defendant cites *Lucky Stores, Inc. v. International Brotherhood of*

20   *Teamsters Local Nos. 70, 80, 150, 409*, 812 F. Supp. 162 (N.D. Cal. 1992), for the

21   proposition that "a boycott [is] inextricably linked with [an] underlying labor

22   dispute." Mot. at 14. But this litigation has no similarity to the facts in *Lucky*

23   *Stores*. There, the "allegedly infringing materials"—printed documents

24   incorporating the service mark and a parody of plaintiff's slogan—"were produced

25   to generate support for Defendants' boycott efforts" and were distributed in

26   plaintiff's store parking lots and entrances. *Lucky*, 812 F. Supp. at 163. Here,

27   however, (1) there is no boycott and (2) the infringing products are not being used

28   to generate support for any boycott-like efforts. The reasoning in *Lucky* cannot have

1  any bearing on this case, because the factual circumstances of the claims are
2  entirely different.

3      *Third*, Defendant directs the Court to *Senco Products, Inc. v. International*
4  *Union of Electrical, Radio & Machine Workers, AFL-CIO-CLC*, 311 F. Supp. 590,
5  592 (S.D. Ohio. 1970). There, the union circulated to its employees "handbills or
6  dodgers" containing plaintiff's mark. *Id.* at 591. The printed materials were
7  distributed in connection with a contest to determine whether the union could
8  qualify in an election as the bargaining representative. *Id.* In determining there was
9  clearly a labor dispute between the parties, the court stated:

10      [T]he evidence clearly indicates that there is a labor dispute in fact
11      between parties to this case. ***This is not a case in which the defendant***
12      ***Union is selling a product or thing or process in the ordinary***
13      ***commercial sense and using the plaintiff's name***. It is a case which
14      arises in the context, not of competition over commercial matters, but
15      in a labor dispute.

16  *Id.* at 592 (emphasis added). The court in *Senco* makes the important distinction
17  between true labor disputes and cases involving the commercial sale of infringing
18  products—the same distinction this Court should make. In so doing, the *Senco* court
19  explained: "in a pure 'commercial case' a union is, of course, subject to a Lanham
20  injunction." *Id.* at 592 n.2. The present action is just such a pure commercial case.
21  As made clear in the complaint, "Trader Joe's demand is directed solely at
22  Defendant's *commercial use* of Trader Joe's trademarks on *merchandise sold* to
23  consumers on Defendant's *commercial website*." Compl. ¶ 35 (emphasis added).
24  *Senco* supports Trader Joe's position and reflects common sense: as with
25  Defendant's argument regarding use in commerce, Defendant's argument regarding
26  the NLGA leads to absurd results—that is, under Defendant's view, the NLGA
27  permits Defendant to sell any and all goods that it pleases, even those that outright
28  counterfeit the TRADER JOE'S Family of Marks. This is not the law.

### 2.      Trader Joe's Requested Injunction Is Not Contrary to Public Policy

As to the second possibility considered by the NLGA, Defendant does not make any argument that Trader Joe's' requested injunction is contrary to the public policy declared in the NLGA, nor can it. The NLGA describes its public policy concerns as requiring that workers "have full freedom of association" and "shall be free from the interference, restraint, or coercion of employers" in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 102. As discussed herein, Trader Joe's' requested injunction merely requires Defendant to stop marketing and selling certain merchandise that unlawfully uses the TRADER JOE'S Family of Marks. Defendant offers no explanation of how the commercial sale of the infringing merchandise will affect any of the public policy concerns covered under the NLGA. To ensure clarity on this point, Trader Joe's specified in the complaint that it neither intended to (1) stop Defendant from using "Trader Joe's" to identify the union or to discuss the union's causes, or (2) stop Defendant from selling non-infringing merchandise. Compl. ¶¶ 36-37.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Trader Joe's respectfully requests that the Court deny in its entirety Defendant's Motion to Dismiss, or in the alternative, grant leave for Trader Joe's to amend its complaint.

PL.'S OPP'N TO MOTION TO DISMISS

Dated: October 19, 2023                    O'MELVENY & MYERS LLP


By: */s/ David R. Eberhart*
    David R. Eberhart
    Two Embarcadero Center, 28th Floor
    San Francisco, California 94111-3823
    Telephone: 1-415-984-8700

    Scott W. Pink
    2765 Sand Hill Road
    Menlo Park, California 94025-7019
    Telephone:1-650-473-2600

    *Attorneys for Plaintiff*
    *Trader Joe's Company*


## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Trade Joe's Company, certifies that this brief contains 6,080 words, which complies with the word limit of L.R. 11-6.1.

By: */s/David R Eberhart*
    David R. Eberhart
    October 19, 2023