UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| TRADER JOES COMPANY, | ) | CASE NO: 2:23-cv-05664-HDV-MAR |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| TRADER JOES UNITED, | ) | Thursday, November 9, 2023 |
| | ) | |
| Defendant. | ) | (10:25 a.m. to 10:40 a.m.) |

HEARING RE:

TRADER JOES' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FRCP RULE 12(B)(6) [ECF.NO.20]

BEFORE THE HONORABLE HERNÁN D. VERA,
UNITED STATES DISTRICT JUDGE

**APPEARANCES**:           SEE PAGE 2


Court Reporter:         Recorded; CourtSmart


Courtroom Deputy:       Wendy Melgar


Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

**APPEARANCES:**

| | |
|---|---|
| For Plaintiff: | DAVID R. EBERHART, ESQ.<br>O'Melveny & Myers<br>Two Embarcadero Center<br>28th Floor<br>San Francisco, CA 94111<br>415-984-8700 |
| For Defendant: | RETU R. SINGLA, ESQ.<br>Julien Mirer Singla & Goldstein<br>One Whitehall St.<br>16th Floor<br>New York, NY 10004<br>646-228-4719 |
| | SONYA MEHTA, ESQ.<br>Siegel Yee Brunner & Mehta<br>475 14th Street<br>Suite 500<br>Oakland, CA 94612<br>510-839-1200 |

```
 1     Los Angeles, California; Thursday, November 9, 2023; 10:25 a.m.
 2                                --oOo--
 3              THE CLERK:  CV 23-5664, Trader Joes Company versus
 4     Trader Joes United.
 5              Counsel, please state your appearances.
 6              MR. EBERHART:  Good morning, Your Honor.  David
 7     Eberhart on behalf of Plaintiff Trader Joes Company.
 8              MS. SINGLA:  Good morning, Your Honor.  Retu Singla
 9     on behalf of Trader Joes United Defendant.
10              MS. MEHTA:  Good morning, Your Honor.  Sonya Mehta on
11     behalf of Trader Joes United Defendant.
12              THE COURT:  All right.  Very good.  Good morning,
13     counsel.  Let me make sure I have everyone here.
14              I'm sorry.  Ms. Singla, you are with Trader Joes
15     United?
16              MS. SINGLA:  Yes, that's correct, Defendant.
17              THE COURT:  Okay.  All right.  Very good. So we're
18     here for a Motion to Dismiss brought by Defendant Trader Joes
19     United.  Let me give you some thoughts and then I'll let you
20     respond and argue any points that you'd like as well.  Let me
21     start with kind of a broader point.
22              I just can't imagine that Trader Joes really cares
23     about buttons or mugs so I have a hard time thinking that this
24     is a true, good-faith commercial dispute.  So there's issues
25     with the Norris-Laguardia Act that I want to hear about but
```

1   there's also the issue of whether there's really going to be
2   any likelihood of confusion.  I mean I've looked at the photos,
3   the products.  It's a different font, there are different icons
4   without the fruit basket, circles are different.  And I think
5   Plaintiff Trader Joes concedes that it's not the use of the
6   term "Trader Joes" itself which can refer to the union so I
7   don't see it.
8           I know that these aren't usually done on a motion to
9   dismiss, although it can be done, it just needs to be plausible
10  but the Court doesn't need to completely close its eyes to this
11  so those are the concerns that I have.
12          So let me hear instead of Defendant, let me hear from
13  the Plaintiff.  Mr. Eberhart, if you want to address those
14  issues.
15          **MR. EBERHART**:  Certainly, Your Honor.
16          First of all, the concern is with the infringing
17  designs.  We've called out the specific infringing designs.
18  They are used on multiple types of goods that are being sold to
19  the public.  Those include tote bags, which of course Trader
20  Joes sells as well.  I see that the Court is focused on buttons
21  and mugs but the issue here Your Honor is the designs
22  themselves.  So the goods are being sold to the public, we're
23  concerned about the designs.
24          There are other designs, as pointed out in our
25  complaint, that we're not challenging because we don't think

1 there's a likelihood of confusion but as to these designs we
2 think there is a likelihood of confusion.
3      And all of the cases, as our brief points out, where
4 the court has decided at the motion to dismiss stage that there
5 was no likelihood of confusion, have a combination of two
6 elements.  The first is that the defendant was not using the
7 entirety of the plaintiff's mark.  The second is that there was
8 no overlap between the kinds of goods or services being offered
9 by the plaintiff and defendant.  Both of those factors are
10 missing here.
11      Here, we are both selling -- they're using the
12 entirety of the Trader Joes' mark.  There's no argument that
13 they're not; and they're using -- they're selling goods that
14 overlap with the goods we're selling.  So the cases where the
15 courts have dismissed at the motion to dismiss stage simply
16 don't support a dismissal here, Your Honor.
17      **THE COURT:**  You're talking about the tote bags.
18 That's really the only overlap, right?  You concede you don't
19 sell buttons and mugs, right?
20      **MR. EBERHART:**  I concede we don't sell buttons and
21 mugs at this moment, Your Honor, yes.
22      **THE COURT:**  So your position today is really that
23 Trader Joes is concerned about these sales of these tote bags
24 that it doesn't sell even on the Internet, right?  It sells
25 these in the store but that the customers really are going to

1  be confused into thinking that what?  That it's Trader Joes'
2  products or that it's somehow going to take away sales from
3  Trader Joes of its tote bags itself?  What exactly is the
4  theory?
5       **MR. EBERHART:**  That these are sponsored or affiliated
6  with Trader Joes.  In other words, that this is a legitimate
7  product that was sponsored or affiliated or sponsored or
8  offered by Trader Joes and it is not.  It is something that is
9  being offered by the union, not by Trader Joes.
10      **THE COURT:**  All right.  Let me hear from Trader Joes
11 United.  I'm not sure who's arguing.
12      **MS. SINGLA:**  It will be me, Your Honor.
13      **THE COURT:**  Okay, go ahead.
14      **MS. SINGLA:**  I mean, Your Honor, I think you've
15 pretty much summed up our argument perfectly.  The fact that
16 Trader Joes thinks that these Trader Joes United tote bags
17 would any way be confused to be sponsored or affiliated by
18 Trader Joes just does not appear in the pleadings.
19      Trader Joes has pled in its complaint, you know, both
20 parties have agreed on the provisions of the law that are most
21 relevant here and that there is an eight-factor test under
22 Sleekcraft.  And I -- it's our position that under those eight
23 factors, the Plaintiff has failed on seven out of the eight
24 factors.
25      The fact that these tote bags that the union is

1 selling is only available on the Internet also makes Plaintiff
2 fail in their pleadings under the internet tracheid (phonetic)
3 elements.  It looks like the Plaintiff has already conceded the
4 fact that the only real issue are these tote bags and in their
5 complaint they state that the tote bags are collector's items.
6 I think that any collector would know that these tote bags are
7 only sold in the store.  Trader Joes does not sell these on the
8 Internet.  And looking at Plaintiff's complaint --
9           **THE COURT**:  Let me stop you -- let me stop you.
10           I'm somewhat torn on that because they're pretty
11 famous tote bags.  I have a lot of them myself, I'm sure many
12 of us do and they're pretty well known for those tote bags.  So
13 to put your -- put that mark on tote bag can create some
14 confusion, at least it's plausible at least at this stage even
15 if there are some clear differences.
16           Why would they go -- why would Trader Joes United put
17 it on a tote bag?  There's a million other things it could have
18 done, like it does, but why tote bags?  I'm torn about that.
19           **MS. SINGLA**:  Sure.  You know, the union has chosen to
20 use tote bags as a way to communicate its labor dispute with
21 the Plaintiff.  Tote bags by -- used by consumers when they're
22 shopping at Trader Joes stores that are in support of the union
23 are a way for the union to be able to not only communicate its
24 labor dispute but elicit support for its labor dispute with the
25 Plaintiff.

1    **THE COURT:** All right. Let me come back then to
2 Mr. Eberhart about let's drill down on the similarities or the
3 differences. Why do you believe that they're similar? I look
4 at them and they look pretty darn different to me.
5    **MR. EBERHART:** Certainly, Your Honor. They're using
6 the same -- they're using the same color and font.
7    **THE COURT:** They're not using the same font. Why do
8 you say that? I look at them and the T's are different, the
9 J's are different.
10    **MR. EBERHART:** You're focused exclusively on the tote
11 bag, Your Honor?
12    **THE COURT:** Yeah.
13    **MR. EBERHART:** Apologies. I didn't understand your
14 question that way.
15    **THE COURT:** Yeah.
16    **MR. EBERHART:** So the color is the same, the circular
17 design is the same, the use of Trader Joes is the same. I will
18 concede that's not the identical font on the tote bag. It is
19 the identical font on some of the other goods.
20    **THE COURT:** Okay.
21    **MR. EBERHART:** So -- so yes, we think the overall
22 impression there is likely to lead to consumer confusion.
23    And I would point out to the Court, there's not a
24 single case cited by Defendants where the sale of goods was
25 involved. Not one. That is a fundamental distinction between

1 every case before the Court and between the case before the

2 Court in every case cited in the papers.

3     I would also point out, Your Honor, that the

4 Defendant's position would mean that they could make literal

5 counterfeit copies of Trader Joes' goods because their position

6 is, number one, this is not use in commerce.  If it's sold on

7 their website, it's about their union and it's not use in

8 commerce; therefore it is not -- it is not subject to the

9 Lanham Act.  If that were true, they could make a literal

10 counterfeit of any Trader Joes' product that they wanted to.

11     **THE COURT:**  But they didn't do that though.  They --

12 it's a very different looking product.  It may cause some

13 confusion -- I'm not deciding that from the bench here but so

14 you're taking it to an extreme.  They're not counterfeiting

15 anything, they've used Trader Joes because they're called

16 Trader Joes United.  So you're saying that they can't sell

17 anything with their name on it.

18     **MR. EBERHART:**  It is our position, Your Honor, that

19 the designs that are at issue should not be sold.

20     **THE COURT:**  So it's the similarity.  If they had used

21 a square and they had put Trader Joe -- Trader Joes United in a

22 square, a blue square let's say.  You say that that would be

23 fine.

24     **MR. EBERHART:**  It might be, Your Honor.  If there is

25 some other design.  There may be a design that uses Trader Joes

1  United that is not confusing.  That design is not before the

2  Court.  I have not seen such a design.  The designs that we do

3  not challenge don't use Trader Joes United.  The designs we've

4  challenged do use Trader Joes United.

5          **THE COURT:**  But if you abstract the name, you're

6  really down to two circles and the color red.  And the circles

7  aren't even sort of in the same concentric pattern.  I mean

8  they are both concentric but they're different so that in

9  itself -- that's the argument you're saying.

10          **MR. EBERHART:**  It is, Your Honor, it is.  And again,

11  none of the cases that dismissed a case at the motion to

12  dismiss stage involved the complete use of the plaintiff's

13  mark.  This case does.

14          **THE COURT:**  Okay.  Can you -- can you address the

15  Norris-Laguardia Act for me please.

16          **MR. EBERHART:**  Certainly, Your Honor.  There is no

17  Norris-Laguardia Act case that involves the sale of goods.  And

18  in fact, one of the cases that the Defendant cites, the *Senko*

19  case, points out that if the sale of goods were involved, then

20  an injunction would be appropriate.  That's Senko Products, 311

21  F.Supp 590.  The Court explicitly says:

22          "This is not a case in which the defendant union is

23          selling a product or thing or process in the ordinary

24          commercial sense and using plaintiff's name."

25          The Court goes on to write:

1        "In a commercial case, a union is of course subject

2        to a *Lanham* injunction."

3        So it's our position, Your Honor, that the cases

4  under the Norris- Laguardia Act that recognizes an injunction

5  would be inappropriate are cases that do not involve the sale

6  of goods.  And the sale of goods that's occurring here

7  distinguishes those cases or distinguishes us from the cases

8  that are cited.

9        **THE COURT:**  And so that hinges again on whether it's

10 commercial.  And you're saying any time it's put into the

11 stream of commerce that that qualifies it.  If they had a bake

12 sale, if they put out a table at the front of a store with

13 their signs and they were selling them for a dollar, a button

14 that had anything like that, that that would take it out of

15 Norris-Laguardia because of the fact that it's being sold.

16       **MR. EBERHART:**  I think, Your Honor, that it's very

17 clear that what the Lanham Act -- and we've quoted the language

18 from the Lanham Act -- that a sale into commerce -- which is

19 what is going on here -- makes these goods subject to the

20 Lanham Act.  I don't know that a bake sale is -- your bake sale

21 hypothetical gets us there but I think if the goods are being

22 sold, if they're out and they're selling these T-shirts or tote

23 bags, that is a sale in commerce.  And none of the cases

24 involve sales of goods.

25       And I would note, Your Honor, that this idea that --

1 the fact that Trader Joes markets on the Internet but does not
2 sell and that Defendant markets and sells on the Internet does
3 not remove Defendants from the reach of the Lanham Act or take
4 them outside of the Sleekcraft confusion factors.  The question
5 is marketing, it is not sales.  The question is the marketing
6 channels used by the parties and both parties use the Internet
7 as a marketing channel.
8          **THE COURT:**  All right, thank you.
9          Ms. Singla, any final rebuttal?  And if you'd like to
10 make any other points as well, please go ahead.
11          **MS. SINGLA:**  I would just like to bring to this
12 Court's attention that although the Plaintiffs have brought
13 this case couched in terms of trademark infringement, we would
14 ask the Court to see this as Plaintiff's attempt at impacting
15 on the interests of union members, on the interests of the
16 general public in fact to show support for the union's cause,
17 and to be able to communicate its labor cause with both
18 employees and the general public.  And we would ask that Your
19 Honor dismiss the complaint.
20          **THE COURT:**  All right.  Thank you for the very good
21 briefs and the matter will be taken under submission.  I will
22 get an order out promptly.
23          **MR. EBERHART:**  Thank you, Your Honor.
24          **THE COURT:**  All right.  thank you.
25          **MS. SINGLA:**  Thank you.

**(Proceeding adjourned at 10:40 a.m.)**

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____        <u>December 17, 2023</u>
         Signed                              Dated


*TONI HUDSON, TRANSCRIBER*