SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Tel: 510-839-1200
Fax: 510-444-6698
sonyamehta@siegelyee.com

DAT HOANG PHAN, SBN 316813
HENNIG, KRAMER, RUIZ AND SINGH, LLP
3600 Wilshire Boulevard
Suite 1908
Los Angeles, CA 90010
Tel: 213-310-8301
Fax: 213-310-8302
dat@employmentattorneyla.com

RETU R. SINGLA, SBN 4162822
Tel: 646-228-4719
rsingla@workingpeopleslaw.com
SETH L. GOLDSTEIN, SBN 2160182
Tel: 646-460-1309
Fax: 251-319-2955
sgoldstein@workingpeopleslaw.com
JULIEN MIRER SINGLA AND GOLDSTEIN PLLC
One Whitehall Street, 16th Floor
New York, NY 10004
ADMITTED PRO HAC VICE

Attorneys for Defendant
TRADER JOE'S UNITED

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

TRADER JOE'S COMPANY, a California corporation,

Plaintiff,

vs.

TRADER JOE'S UNITED,

Defendant.

Case No. 2:23-cv-05664-HDV-MAR

**DEFENDANT TRADER JOE'S UNITED'S MOTION FOR ATTORNEYS' FEES**

Filed Concurrently with Declarations of Sonya Z. Mehta, Retu R. Singla, and Seth L. Goldstein; [Proposed] Order

Hon. Hernán D. Vera
Date: February 29, 2024
Ctrm: 5B
Time: 10:00 a.m.

Complaint Filed: July 13, 2023
Complaint Dismissed: January 12, 2024

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on February 29, 2024, at 10:00 a.m. in the courtroom of the Honorable Hernán D. Vera, United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 5B, 5th Floor, Los Angeles, California 90012, Defendant Trader Joe's United ("the Union") will, and hereby does, move for attorneys' fees pursuant to the Lanham Act and intertwined claims because Plaintiff Trader Joe's Company's trademark suit against the Union was exceptional due to its lack of factual or reasonable grounds and improper motivation.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on January 25, 2024.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the documents on file with the Court, and such further evidence and argument as the Court may permit.

Dated: January 26, 2024

SIEGEL, YEE, BRUNNER & MEHTA

By: *<u>/s/ Sonya Z. Mehta</u>*
Sonya Z. Mehta

Attorneys for Defendant
TRADER JOE'S UNITED

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Trader Joe's Company ("the Company") brought this groundless trademark infringement suit against defendant Trader Joe's United ("the Union" or "TJU") in "an attempt to weaponize the legal system to gain advantage in an ongoing labor dispute between Trader Joe's and the Union representing its workers." Docket 45, Order Granting Defendant's Motion to Dismiss Plaintiff's Complaint, 8:4-6.

On January 12, 2024, this Court completely dismissed Plaintiff's complaint for trademark infringement and related claims because Plaintiff "obvious[ly]" filed it to interfere with the Union's successful organizing efforts in multiple locations across the country. Dkt. 45, 2:8-12. This Court noted the Complaint "itself" was "dangerously close to the line of Rule 11." *Id., see also* FN 12, leave to amend would be futile because "there is no plausible likelihood of confusion."

As the prevailing party here, Defendant the Union respectfully requests that this Court award attorneys' fees under the Lanham Act. This was an exceptional case where it was not only frivolous but brought with an improper motivation to weaken the Union. Such activity by yet another corporation seeking to unlawfully destabilize union organizing should be deterred. The Union's attorneys seek reasonable fees.

## RELIEF SOUGHT

Defendant seeks a total award of attorneys' fees in the amount of $150,162.83.

## PROCEDURAL HISTORY

Defendant the Union is composed of Trader Joe's grocery store workers who are bravely organizing for the union to secure fair working conditions. Dkt. 45, 2:25-3:5. Over the last two years, they have succeeded in unionizing several stores. *Id*. Meanwhile, the National Labor Relations Board has issued multiple complaints against Plaintiff because it has spread false information to workers, as well as threatened, interrogated, and retaliated against workers who support the Union, amongst other unfair labor

practices. *Id.*, *see also* FN 2. Only six days after the NLRB issued a consolidated complaint against the Company, it filed the instant trademark lawsuit. Dkt. 45, 2:25-3:5.

The Complaint alleged the Union infringed on the Company's trademarks which includes a cutting board with wine, cheese, and grapes in a circle, by selling buttons, apparel, and tote bags bearing designs including a canned food item and a fist with a box cutter in a circle. Dkt. 45, 3:6-4:28, *see also images below from Order*. At hearing, the Company's counsel conceded that the tote bags were the only product sold by both parties, and the fonts thereon were different. *Id.*, 10:19-20, FN 8.










The Union repeatedly informed the Company on that the Complaint was frivolous and propounded for improper reasons. Declaration of Retu Singla ISO Motion for Attorneys' Fees, ¶¶ 17-19. In summer 2023, Plaintiff's General Counsel Kathryn Cahan sent two letters to the Union demanding it cease selling the items at issue or it would file the instant lawsuit. Singla Decl., ¶ 17. On June 28, 2023, the Union responded advising the Company that the threatened lawsuit was frivolous and in bad faith. *Id.* at ¶ 18. Nevertheless, on July 13, 2023, and six days after the NLRB issued a consolidated complaint against the Company, it filed the instant Complaint. Dkt. 1, Dkt. 45, 2:24-3:5.

Plaintiff's lawsuit alleged that Defendant violated two counts of the Lanham Act by engaging in trademark infringement. The third claim was for trademark dilution by blurring under 15 U.S.C. § 1125. Dkt. 1., ¶¶ 38-59. The fourth count was under Cal. Bus. & Prof. Code § 17200 for unfair competition based on infringement and dilution. *Id.*, ¶¶ 36-63. Plaintiff alleged a fifth count for unfair competition for infringement in violation of the common law. *Id.*, ¶¶ 60-63. Plaintiff sought statutory damages, punitive damages, any profits, cost of suit, prejudgment interest, and attorneys' fees and costs. *Id.*

On October 6, 2023, the Union filed a Notice of Supplemental Authority submitting district court decision *Medieval Times U.S.A., Inc. v. Medieval Times Performers United, and American Guild of Variety Artists*, No. 2:22-cv-6050 (D.N.J. September 28, 2023), in support of its Motion to Dismiss. Dkt. 34. In *Medieval Times*, the court dismissed Medieval Times' trademark infringement complaint against the Medieval Times Performers United union, holding that "[g]iven the union context, customers are … not likely to be confused … ." *Id.*, 2. The Union again demanded that Trader Joe's withdraw the instant Complaint. Singla Decl., ¶ 19. This Court relied on *Medieval Times* in its Order to Dismiss. Dkt. 45, 11:7-21.

On December 13, 2023, the NLRB supplemented its complaint to add allegations that the Company unlawfully fired a TJU union organizer and withheld 401k benefits from two organized stores. Singla Decl., ¶ 26, NLRB complaint at https://static1.squarespace.com/static/6272a84f9eda2e455a02c919/t/658455df6906431c718d7be2/1703171650120/consolidatedcomplaint12192023.pdf.

On January 4, 2024, the Union sent Plaintiff a pre-filing 21-day Rule 11 safe harbor letter. Singla Decl., ¶ 27, Exhibit 1, Rule 11 letter. The Union noted Plaintiff's multimillion dollar union busting effort, and that Plaintiff's attorneys here were "experienced intellectual property counsel at a prestigious law firm such as O'Melveny and Myers— [who] should have known that Plaintiff's claims could not survive as a matter of law." *Id.*, ¶ 28.

Trader Joe's United, a fledgling and independent union of extremely modest resources, has been forced to expend a substantial amount of its means to defend itself against Plaintiff's frivolous claims, including by researching and investigating the claims, collecting documentary evidence, preparing a motion to dismiss, and engaging in conferences with Plaintiff's counsel. Singla Decl., ¶ 29.

These trademark lawsuits appear to be a strategy by several corporations, including Starbucks, Medieval Times, and of course Trader Joe's Company, where employees are organizing unions. *See Starbucks Corporation v. Workers United et al.*, Case 3:23-cv-00068-SHL-SBJ, Dkt. 13 First Amended Complaint, filed 11/10/23, ¶ 6 alleging *inter alia* trademark infringement, dilution, and unfair competition against Starbucks workers' union; *see also supra, Medieval Times*.

## STATEMENT OF LAW

### I. The Union should be awarded attorneys' fees because Plaintiff's complaint was exceptional under Lanham Act as it was frivolous, improperly motivated, and such conduct should be deterred.

The Lanham Act provides that a court in exceptional cases may award reasonable attorney fees to the prevailing defendants. 15 U.S.C. § 1117(a), *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002). A prevailing party is a party that achieves "a material alteration of the legal relationship between the parties." *Jackson v. Gaspar,* WL 2155975, at *4 (C.D. Cal. 2022). "Non-Lanham Act claims may not recover attorneys' fees under the Lanham Act unless the non-Lanham Act claims are so intertwined it is impossible to separate them." *Jackson* at *6. In this analysis, "[d]istrict courts ... should examine the 'totality of the circumstances' using a preponderance of evidence standard." *Id.* at *4. "[T]he court must consider several 'nonexclusive factors' ... including (1) frivolousness; (2) motivation; (3) objective unreasonableness (both in the factual and legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence." *Id., citing SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180-81 (9th Cir. 2016).

#### A. The Complaint was frivolous and "objectively unreasonable" as it lacked a factual or legal basis.

"We have previously held that an action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits. ... [e]xceptional cases include instances where plaintiff's case is frivolous or completely lacking in merit." *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.,* 668 F.3d 677, 687–88 (9th Cir. 2012), *abrogated on other grounds by SunEarth, supra. See also Am. Optometric Soc., Inc. v. Am. Bd. of Optometry, Inc.*, WL 6012861, at *1 (C.D. Cal. 2012), *citing Cairns, supra, at* 1156, "The district court [] found that the plaintiff's trademark dilution claim was 'groundless and unreasonable because it had no legal basis, having been based on [an] 'absurd' and 'just short of frivolous' contention ... ." "Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001).

**B. The Complaint here was improperly motivated and in bad faith.**

As to motivation, "[t]he existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party." *Bell v. Oakland Cmty. Pools Project, Inc.*, WL 13695114, at *2 (N.D. Cal. 2020). Timing and "political motivation" can show improper motivation. *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1151 (N.D. Cal. 2017). Improper motivation can be inferred from the complaint and record. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).

**C. Granting attorneys' fees fairly compensates the Union and deters this Company's and similar misconduct.**

This factor should be applied where there is a need to compensate Defendant for the damage caused by Plaintiff's actions, to deter Plaintiff and others who may perform the same acts, and to punish "willful violation" of the statute. *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007). Disparity in financial strength may be considered for whether fees should be awarded under the Lanham Act. *Wakefern Food Corp.v. Marchese*, WL 3497880, at *3 (3d Cir. 2023).

**II. Defendant's attorneys here expended reasonable hours and request a reasonable rate.**

Courts determine reasonable attorney fees based on the reasonable hours expended on the case and a reasonable hourly rate. Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 19-B, Recovery of Attorney Fees, 19:259:1. "The Ninth Circuit has repeatedly instructed that the relevant markers for attorneys' fees determinations are the fees awarded by others in the same locality for similar cases." *E.S. v. Conejo Valley Unified Sch. Dist.*, WL 1598756, at *8 (C.D. Cal. 2019). However, "[c]ourts [do] consider the *Laffey Matrix* in establishing [] hourly rates." Rutter Group, *supra*, at 19:484:17. "[T]he forum rate may not apply when the 'community' is … the *national* market for the legal services in a highly specialized subject area." *Id.* at 19:320.1a. "Recent fees awarded by the courts [to comparable attorneys] are also useful guides … ." *Conejo* at *3.

According to legal rates survey website Legal.Io.com, the high-end rate for an intellectual property attorney in Los Angeles in 2023 was $795 at ten years, $1075 around 23 years, and $1085 at 30 years. *See* Singla Decl., ¶ 33. https://www.legal.io/pricing-tool/hourly-rates/los-angeles/intellectual-property-law. The high-end rate for labor/employment was $720 at about 10 years, $945 at 20 years, and $1070 at 30 years. *Id.*, https://www.legal.io/pricing-tool/hourly-rates/los-angeles/employment-and-labor-law. The hourly rate for a management-side labor attorney with 20 to 30 years' experience is $1500 to $2000 nationwide. Singla Decl., ¶ 32; Declaration of Seth Goldstein ISO Motion for Attorneys' Fees, ¶ 39.

2024 Laffey Matrix rates are $1057 for attorneys with 20+ years of practice and $777 for ten years of practice. Declaration of Sonya Z. Mehta, Exhibit 1. In April 2023, a Northern District of California court determined an hourly rate of $676 using the Laffey Matrix for partner and then nine-year attorney Mehta. *Id.*, ¶ 39, Exh. 2.

## ARGUMENT

**I. Plaintiff's complaint was frivolous and improperly motivated; this conduct should be deterred, and the Union compensated.**

Defendant easily meets its preponderance of the evidence burden here to show that Plaintiff's complaint was exceptional due to its frivolity and improper motivation. Defendant can handily demonstrate that Plaintiff's conduct should be deterred, and Defendant compensated. The Union is the prevailing party as it materially shifted the parties' legal relationship because this Court completely dismissed the Complaint. Plaintiff's Lanham and non-Lanham claims are intertwined or "substantially congruent" so that Defendant may recover fees on all its work reasonably related to the ultimate dismissal of the Complaint. Dkt. 45, 8:16-9:11.

Defendant will first address the frivolity of Plaintiff's "weak … claims." Dkt. 45, 8:4-6. First, this Court was divested of jurisdiction over Plaintiff's request for injunctive relief because the Complaint was "undoubtedly related to an existing labor dispute" and thus prohibited by the Norris-LaGuardia Act. Dkt. 45, 2:9-12. Therefore, right from the start, the Complaint was groundless and should not have been filed.

This Court held that Plaintiff failed at showing even one factor from *MF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). It held Plaintiff's claims were so implausible that it would not provide leave to amend and dismissed the Complaint at the 12(b)(6) stage. "Any amendment would be an exercise in futility." Dkt. 45, FN 12.

Next, Plaintiff admitted at oral argument that its case came down to tote bags because that is the only product both parties sell. Dkt. 45, 10:17-22. Even Plaintiff could not justify including the buttons and other items because there was "no relation between Plaintiff's grocery services and goods and the Union's buttons and mugs." *Id.*, 10:17-22. The Company failed entirely to explain how the Union was diluting its trademark. *Id.*, 16:17-17:4. But as this Court held, even more important was the totally different context in which "consumers find the Union's product," which was on the union's website which was critical of the company. Dkt. 45, 10:23-11:21. Thus, this Court also found no convergent marketing channels. "It is simply not plausible to imagine a reasonable consumer going to the Union's website, purchasing a Union-branded coffee mug, and mistakenly believing it to be sold by Trader Joe's." Dkt. 45, 13:12-14.

Finally, the Court held, "there is simply *no* visible similarity apparent to the Court, and *certainly none* to plausibly cause a likelihood of confusion." Dkt. 45, 12:15-17, *emphasis added.*

As shown above, the Complaint was frivolous and objectively unreasonable under the Lanham Act. There was no similarity of marks, no convergence of markets, and absolutely no likelihood of confusion. Indeed, the Complaint "itself" was "dangerously close" to being sanctionable under Rule 11. Dkt. 45, 2:9-12. "Rule 11 is intended to deter baseless filings [] and imposes a duty of reasonable inquiry so that anything filed with the court is well grounded in fact, legally tenable, and not interposed for any improper purpose." *Islamic Shura Council of S. Cal. v. FBI,* 757 F.3d 870, 872 (9th Cir. 2014). Here, despite numerous warnings, including Rule 11 notices and *Medieval Times*, Plaintiff failed to observe its duty to reasonably inquire into its allegations.

Next, Plaintiff's motivation here was improper and in bad faith. This Court noted "the potential chilling effect and other collateral impacts on union members resulting from these lawsuits can be significant." Dkt. 45, 7:24-28. The Court also noted the timing which was only six days after the NLRB's consolidated Complaint and in the midst of several organizing campaigns. This timing and "political motivation" can show improper motivation. *Elem Indian* Colony, *supra*, at 1151.

The Union informed Plaintiff on multiple occasions, even sending a Rule 11 safe harbor letter, that the Complaint was improper and groundless. Plaintiff's experienced white-shoe trademark attorneys knew their Complaint was frivolous and improperly motivated. Improper motivation can be inferred from the complaint and record. *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006).

Truly, "it strains credulity to believe that the present lawsuit—which itself comes dangerously close to the line of Rule 11—would have been filed absent the ongoing organizing efforts that Trader Joe's employees have mounted (successfully) in *multiple* locations across the country." Dkt. 45, 2:8-12. There can be no doubt this Complaint was filed in order to chill union organizing and interfere with Union efforts.

This Court summed up these two factors perfectly. "This history combined with the weakness of Plaintiff's claims leads the Court to the conclusion that this case is an attempt to weaponize the legal system to gain advantage in an ongoing labor dispute between Trader Joe's and the Union representing its workers." Dkt. 45:8:4-6.

As to compensation and deterrence, which are not necessary factors, Plaintiff filed this lawsuit in bad faith to drain the Union of its resources and chill it from organizing. Such conduct should be deterred. An attorneys' fees award would also deter other companies from this strategy that wastes the Court's time and improperly interferes with labor relations. Finally, such an award would compensate a poor and fledgling Union for its efforts combating this retaliatory and groundless lawsuit.

**II. The Union attorneys' rates are reasonable and the time was reasonably expended.**

Lead attorney Retu R. Singla expended a total of almost 60 hours on this case. Singla Decl., ¶ 30. She reviewed and responded to Cahan's initial letter threatening suit, including legal research; met with her client TJU about the matter, wrote and argued the motion to dismiss, consulted with co-counsel, completed the pro hac vice process, met and conferred with Plaintiff, responded to Plaintiff's communications, filed with the NLRB regarding the retaliatory trademark suit, drafted the Rule 11 letter including the motion, and consulted and wrote her declaration in support of this motion. All of this was necessary work. *Id.*, ¶¶ 16-34. Attorney Seth L. Goldstein expended nearly 44 hours in assisting and reviewing Singla in the above work. Goldstein Decl., ¶ 40, Exhibit 1.

Singla and Goldstein request a rate of $1065. Singla has 23 years of outstanding experience and has represented unions in countless matters. Singla Decl., ¶¶ 3-15. Goldstein has over 30 years of remarkable experience. Goldstein Decl., ¶¶ 3-21. They represent some of the most cutting edge, attacked unions today such as Amazon Labor Union and TJU. Singla Decl., ¶ 9, Goldstein Decl., ¶¶ 14-15. They are thus at the high end of labor law, which Legal.IO surveyed to earn $945 (20 years) to $1070 (30 years). They can also clearly combat the high end of intellectual property lawyers, who earn $1075 (23 years) and $1085 (30 years).

Notably, Defendant's motion to dismiss centered on labor law, specifically, the Norris-LaGuardia Act. Labor law is a "*national* market for [] legal services in a highly specialized subject area." Rutters, *supra*, at 19:320.1a. That nationwide rate is $1500 to $2000 for management-side attorneys. The Laffey rate of $1065 is appropriate here because it falls within the forum rates for labor/employment and intellectual property, and also fits the national rate for attorneys at this level.

Attorney Sonya Z. Mehta spent and will spend 56 hours on necessary work. She performed the necessary pro hac vice work, conducted research for, edited, and drafted supportive filings for the motion to dismiss; conducted anti-SLAPP, Rule 11, and attorneys' fees research; and wrote and coordinated this motion. *Id.*, ¶ 35. She will also write the reply and argue at the hearing, estimated at 15 hours. *Id.*

Mehta requests a fee of $777. As described in her declaration, Mehta became a partner after only six years of practice at a prominent civil rights firm, has outstanding and victorious motion, hearing, and trial experience; and is one of few attorneys with both labor and employment expertise. *Id.*, ¶¶ 1-32.

Her requested rate is in the range of Legal.IO's rates for ten-year attorneys in Los Angeles in labor/employment ($720) and intellectual property attorney ($795). Importantly, in April 2023, a Northern District of California court determined an hourly rate of $676 using the Laffey Matrix for partner and then nine-year attorney Sonya Z. Mehta. Mehta Decl., Exhibit 1. Thus a Court has determined a comparable attorney, Mehta, to merit the Laffey rate in 2023. Thus, the 2024 Laffey rate of $777 is reasonable within the forum, as per her 2023 California federal court award, and by Laffey.

We appreciate this Court's detailed ruling and consideration of this motion.

Dated: January 26, 2024

SIEGEL, YEE, BRUNNER & MEHTA

By: <u>/s/ Sonya Z. Mehta</u>
Sonya Z. Mehta

Attorneys for Defendant
TRADER JOE'S UNITED