SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Tel: 510-839-1200
Fax: 510-444-6698
sonyamehta@siegelyee.com

DAT HOANG PHAN, SBN 316813
HENNIG, KRAMER, RUIZ AND SINGH, LLP
3600 Wilshire Boulevard
Suite 1908
Los Angeles, CA 90010
Tel: 213-310-8301
Fax: 213-310-8302
dat@employmentattorneyla.com

RETU R. SINGLA, SBN 4162822
Tel: 646-228-4719
rsingla@workingpeopleslaw.com
SETH L. GOLDSTEIN, SBN 2160182
Tel: 646-460-1309
Fax: 251-319-2955
sgoldstein@workingpeopleslaw.com
JULIEN MIRER SINGLA AND
GOLDSTEIN PLLC
One Whitehall Street, 16th Floor
New York, NY 10004
ADMITTED PRO HAC VICE

Attorneys for Defendant
TRADER JOE'S UNITED

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TRADER JOE'S UNITED,<br><br>Defendant. | Case No. 2:23-cv-05664-HDV-MAR<br><br>**DECLARATION OF RETU R. SINGLA ISO DEFENDANT TRADER JOE'S UNITED'S MOTION FOR ATTORNEYS' FEES**<br><br>Filed Concurrently with MPA and Declarations of Sonya Z. Mehta and Seth L. Goldstein; Proposed Order<br><br>Hon. Hernán D. Vera<br>Date: February 29, 2024<br>Ctrm: 5B<br>Time: 10:00 a.m.<br><br>Complaint Filed: July 13, 2023<br>Complaint Dismissed: January 12, 2024 |

**DECLARATION OF ATTORNEY RETU SINGLA**

I, RETU SINGLA, declare:

1.      I am lead counsel for Trader Joe's United ("TJU" or "the Union") in the trademark infringement lawsuit Trader Joe's Company has filed against the Union.

2.      This Declaration is submitted in support of Defendants' Motion for Attorney Fees and Costs from the inception of this case through the date of submission.

3.      I am a 2001 graduate of the Program in Public Interest Law and Policy of the University of California, Los Angeles, School of Law.  Prior to attending law school, I graduated from The New School for Social Research in New York, New York, in 1997.

4.      I have practiced law for 23 years.

5.      I am an attorney admitted to practice law in New York. I am a partner at the law firm of Julien, Mirer, Singla and Goldstein, located in New York, New York. I am admitted to practice before the Eastern and Southern United States district courts in New York.  I am admitted pro hac vice to appear in this instant matter in the Central District Court of California.

6.      After graduating from law school, I worked for a labor law firm, Kennedy, Schwartz and Cure in 2001.  I then worked as a Litigation Associate with a personal injury firm, Sacks and Sacks until 2007.  I then worked as in house counsel for the Transport Workers Union, Local 100, AFL-CIO from 2007 to 2017 as its Legal Director.

7.      I have worked in private practice in employment and labor law first as a solo practitioner under The Law Office of Retu Singla, A Working Peoples Law Center from 2017-2022 until my firm merged with Julien & Mirer to become Julien Mirer and Singla, A Working Peoples Law Center and later in 2023 becoming Julien, Mirer, Singla & Goldstein, A Working Peoples Law Center.

8.      I was outside counsel to the Service Employees International Union, Local 721, CTW from 2017-2019.  I was the General Counsel to the United Production Workers Union, Local 17-18 that later became UFCW Local 1718 from 2020-2022.  I was also General Counsel to the Brooklyn Free School from 2017-2022 which is an independent

---

1    K-12 school in the democratic free school movement.  I am General Counsel to the

2    Green Workers Cooperative from 2020 to present which is a community based

3    organization that is part of the cooperative work movement.

4    9.      I am also the General Counsel to the Amazon Labor Union since 2022 to the

5    present.  I am also General Counsel to Trader Joes United since 2022 to the present.  I

6    am also outside counsel to Local Unions affiliated with the Office of Professional

7    Employees International Union since 2023 to present.

8    10.     Since 2001 I have been lead counsel in close to a 1,000 administrative trials and

9    hearings before arbitrators, administrative law judges and hearing officers pursuant to

10   individual collective bargaining agreements, the New York State Human Rights

11   Division, the National Labor Relations Board and before the California and New York

12   State Public Employees Relations Boards, including the widely reported 24 day back to

13   back trial to support the certification of the vote at the Amazon warehouse known as

14   JFK8 in 2022 before the National Labor Relations Board.  (29-RC-288020).

15   11.     I also successfully represented Trader Joe's United as lead counsel in its 4-day

16   trial with Trader Joe's before the National Labor Relations Board defending the tally of

17   votes in support of the Union in early 2023.  (09-RC-309216).

18   12.     In 2023, I was lead counsel to the Office of Professional Employees International

19   Union in a 13 day trial with 20 witnesses and thousands of pages of evidence against

20   Code For America.

21   13.     I have represented clients in Labor Management Reporting and Disclosure Act

22   litigation before the Eastern District Court of New York.  *Mello et. al. v. Isaacson et. al.*

23   (E.D. NY 2020) Case No. 1:20-cv-05035, *Byars et. al. v. Transport Workers Union of*

24   *America et. al.* (E.D. NY 2021) Case No. 1:2021cv05219, and *Sylla et. al. v. Amazon*

25   *Labor Union et. al.* Case No. 1:23-cv-05261 (E.D. NY 2023).  I also represent the

26   Professional Staff Congress/CUNY, AFT Local 2334 in its *amicus* with the Appellate

27   Division of the Supreme Court, First Judicial Department in *Bentkowski et. al. v. The*

28   *City Of New York et. al.* Appeal No. 2023-04716

---

14.     I am a 2023-2024 Wasserstein Fellow at Harvard Law School in recognition of my outstanding commitment to public interest law to meet with and speak to HLS students on the rise of labor law.  I am also the recipient of the 2024 "U. Serve L.A.", UCLA Law School's David J. Epstein Program in Public Interest Law and Policy, the Judge Rand Schrader Pro Bono Program, and the Office of Public Interest Programs alumni award for passionate advocacy in labor law.

15.     I have been an invited speaker at the 25th Annual National Law Students Workers' Rights Conference, a delegate to the 2008 International Conference of the Role of Unions and Labor Lawyers and for several American Bar Association Section of Labor and Employment and National Lawyers Guild conferences as an expert on labor law.

## Facts Related to *Trader Joe's v. Trader Joe's United*.

16.     I was the lead attorney litigating this case and drafted most of the pleadings and motions.

17.     In summer 2023, Plaintiff's General Counsel Kathryn Cahan sent two letters to the Union demanding it cease selling the items at issue or else it would file the instant lawsuit.

18.     On June 28, 2023, I responded on behalf of the Union advising the Company that the threatened lawsuit was frivolous and in bad faith.

19.     It was clear from receipt of the Complaint in this matter that Plaintiff's trademark causes of action stemmed from a labor dispute with Defendants.  Remarkably, despite having written at least four times to Plaintiff's counsel, including when *Medieval Times* was issued, that such a frivolous lawsuit should not be filed and should be withdrawn, Plaintiff continued its fabricated causes of action.

20.     This case has been publicized since before the Complaint was even served on Defendants and I have further publicized it in order to advance federal labor law and the rights of unionized workers in the face of trademark bullying. The true and correct links to some media are:

---

- https://www.huffpost.com/entry/trader-joes-threatens-to-sue-its-workers-union-alleging-trademark-infringement_n_64a8600ce4b02fb0e6f889dd

- https://www.reuters.com/legal/litigation/trader-joes-employee-union-defeats-grocers-trademark-lawsuit-2024-01-16

- https://news.bloomberglaw.com/ip-law/union-seeks-end-of-trader-joes-bid-to-weaponize-trademark-law

21.     After Plaintiff filed its Complaint on July 13, 2023 against Trader Joe's United, I analyzed and reviewed the complaint, participated in a number of conferences with opposing counsel, engaged in motion practice and drafted correspondence to Plaintiff's counsel.

22.     I contacted Plaintiff to request a Local Rule 7-3 conference so that the parties could engage in communications regarding Defendants Motion to Dismiss explaining the frivolous nature of Plaintiff's Complaint and engaged in that conference.

23.     I drafted Defendant's Notice of Motion to Dismiss Plaintiff's Complaint with accompanying Memorandum of Law filed on August 21, 2023.

24.     On October 19, 2023 Plaintiff served an Opposition to Defendant's Motion to Dismiss. Subsequently, I drafted Defendant's Reply to the Employer's Opposition which was filed on October 26, 2023.

25.     I delivered the oral argument on November 9, 2023 in support of Plaintiff's Motion to Dismiss.

26.     On December 13, 2023, the NLRB amended its complaint to add allegations that the Company unlawfully fired a TJU union organizer and withheld 401k benefits from two organized stores. A true and correct copy of the  NLRB complaint is located at: https://static1.squarespace.com/static/6272a84f9eda2e455a02c919/t/658455df6906431c718d7be2/1703171650120/consolidatedcomplaint12192023.pdf.

27.     During December 2023 and January 2024, I drafted Defendant's 21-day safe harbor letter and accompanying Rule 11 Motion requesting for a fourth time that Plaintiff withdraw their Complaint. On January 4, 2024 the 21-day safe harbor letter

was served on Plaintiff. Attached here as Exhibit 1 is the Rule 11 letter Defendant send to Plaintiff.

28.     The Union noted Trader Joe's Company's multimillion dollar union busting effort in the letter. It noted that Plaintiff's attorneys here - "experienced intellectual property counsel at a prestigious law firm such as O'Melveny and Myers—should have known that Plaintiff's claims could not survive as a matter of law."

29.     Trader Joe's United, a fledgling and independent union of extremely modest resources, has been forced to expend a substantial amount of its means to defend itself against Plaintiff's frivolous claims, including by researching and investigating the claims, collecting documentary evidence, preparing a motion to dismiss, and engaging in conferences with Plaintiff's counsel.

30.     Given the efforts required for a diligent defense in this matter requiring an understanding of Intellectual Property law, 59.42 hours are reasonable.

31.     Attached as Exhibit 2 to this Declaration is a true and correct copy of my time entries in relation to this matter.

32.     Based on my 23 years of legal experience my rate is $1,057 per hour based on the Laffey Matrix.  In my experience, management attorneys nationwide and at my level of experience charge between $1,500 to $2000 per hour. As I have noted above, I have litigated thousands of labor matters over the years.

33.     I visited the website Legal.Io.com. That source surveyed firms and determined that the high-end rate for an intellectual property attorney in Los Angeles in 2023 was $795 at ten years, $1075 around 23 years, and $1085 at 30 years. https://www.legal.io/pricing-tool/hourly-rates/los-angeles/intellectual-property-law. The high-end rate for labor/employment was $720 for a 10 years, $945 for 20 years, and $1070 at 30 years. *Id.*, https://www.legal.io/pricing-tool/hourly-rates/los-angeles/employment-and-labor-law.

34.     The amount requested in attorney fees is reasonable for the stated reasons in the accompanying brief and those set above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed January 25, 2024, in New York, New York.

Dated: January 25, 2024              /s/ *Retu Singla*
_____

By: Retu Singla
*Attorney for Defendant*
JULIEN MIRER SINGLA & GOLDSTEIN PLLC
1 Whitehall Street, 16th Floor,
New York, NY 10004
(212) 231-2235
rsingla@workingpeopleslaw.com

EXHIBIT 1

JULIEN, MIRER, SINGLA & GOLDSTEIN, PLLC

ATTORNEYS AT LAW

1 WHITEHALL STREET

16TH FLOOR

NEW YORK, NEW YORK 10038

JEANNE MIRER                TELEPHONE: (212) 231-2235                RIA JULIEN
SETH GOLDSTEIN              FACSIMILE: (646) 219-0946                RETU SINGLA

January 5, 2024

David Eberhart, Partner
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111

Via Electronic Mail: deberhart@omm.com

Re: Case No. 2:23-cv-05664

Dear Mr. Eberhart:

On November 13, 2023 we contacted you to discuss the filing of a Rule 11 motion for sanctions. At our meet and confer on November 14, 2023 the Plaintiff responded by refusing to withdraw their lawsuit. Please note that pursuant to Rule 11 we are giving you 21 days to withdraw the lawsuit referenced above brought on behalf of Trader Joe's against Trader Joe's United. If you do not, we will file the attached motion for sanctions. Indeed, if you continue to go forward with your complaint requiring the TJU to expend further resources on fighting this case we will seek sanctions for this work as well.

Second, the purpose of the "safe harbor" provision is to afford an opposing party a reasonable period to reconsider an apparently or arguably frivolous claim or other filing. Plaintiff's counsel cannot claim that he was not given ample opportunity to do so. Nor can he claim that he ever evinced any intent to take this opportunity.

Sincerely,

Retu Singla, Esq.
Seth Goldstein. Esq.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11(b)

Defendants respectfully submit this Memorandum of Law in support of their Motion for appropriate sanctions on Plaintiff and its attorneys for violations of FRCP 11(b) as the complaint is being presented for the improper purpose to harass and that the factual allegations do not provide evidentiary support that Defendant has infringed on Plaintiff's trademark.

## PRELIMINARY STATEMENTS

On June 27, 2023 and again on July 5, 2023 Plaintiffs' General Counsel, Kathryn Cahan, sent letters to Defendant in which she provided an ultimatum that if Trader Joe's United ("Defendant" or "TJU") did not consent to all of Plaintiff's demands she would pursue federal litigation. The letter demanded full capitulation to Plaintiff's demands by July 7, 2023.  On June 28, 2023, Defendant's counsel responded, advising Plaintiff's General Counsel that such a threatened lawsuit was frivolous, based on bad faith as counsel had failed to vet the applicable law to the alleged facts, and that, if filed, such a complaint would be presented for an improper purpose to the Court. Defendants also provided counsel for Plaintiff with a pre-filing 21-day safe harbor letter on January 5, 2024, pursuant to FRCP 11(c)(2), serving the instant motion with memorandum of law and notifying Plaintiff and its counsel that this motion will be filed after 21 days should Plaintiff and its counsel choose not to withdraw their filed complaint. This letter was provided as an incentive to Plaintiff's counsel to reconsider its decision to file this litigation or face consequences for filing with an improper purpose, which they obviously did not heed. (Exhibit A).

Plaintiff Trader Joe's filed the instant Complaint six days after the National Labor Relations Board ("NLRB") issued a consolidated complaint against Trader Joe's for unlawful labor practices in violation of the National Labor Relations Act ("NLRA").

In 2022 and 2023, TJU filed six union representation petitions and conducted six secret ballot elections at Plaintiff's stores across the nation under the NLRA. Defendant has been certified as the collective bargaining representative for three stores, is fighting Plaintiff for recognition of the election results in another store with a finding in a fifth store imminent that a bargaining order will issue and active organizing campaigns going on in multiple other locations throughout the nation.

Since November 2022, the parties have been negotiating collective bargaining agreements for several bargaining units. The parties' relationship during collective bargaining has been adversarial and both sides have filed a number of unfair labor practice charges including  bad faith bargaining charges under the National Labor Relations Act with the NLRB.

As Plaintiff admits, TJU has been undertaking active union organizing activities in California, but before another representation petition was filed with the NLRB, Plaintiff filed this trademark action in a transparent effort to continue its retaliation against the unionization efforts and to chill workers at other Trader Joe's locations from exercising their rights under federal labor law to organize a union. (Docket 1, Complaint, ¶ 12, "Defendant and its agents have engaged in systematic and continuous contacts with this District, including by undertaking union organizing activities ... .") Indeed, after filing the instant complaint for purported trademark infringement, the federal government has filed a second consolidated labor complaint on July 7, 2023 against Plaintiff for: threatening Defendant members with a negative appraisal if they wore union insignia, retaliation to discourage employees from engaging in mutual aid and protection and other concerted activities, cornering and forcing Defendant members to listen to Plaintiff's mandatory captive audience speeches about the right to form a labor union, and providing false a misleading information to employees nationwide about the status of collective bargaining with

Defendant. Moreover, on October 17, 2023, the NLRB General Counsel in Region One issued a complaint alleging that Trader Joe'sunlawfully threatened and retaliated against workers who were organizing a union. An amended complaint was issued against the Defendant on December 13, alleging that the Employer unlawfully fired a TJU union organizer and that the Company unlawfully withheld a 401K benefit from the employees at both the Minneapolis and Hadley stores. Thus, the NLRB is currently seeking a national order against Plaintiff and an administrative trial is scheduled to commence on January 16, 2024.

## ALLEGATIONS OF THE COMPLAINT

The heart of Plaintiff's lawsuit is that Defendant violated two counts of the Lanham Act by engaging in Trademark infringement  under 15 U.S.C. § 1114-1118 and 15 U.S.C. § 1125(a). The third claim is for trademark dilution by blurring under 15 U.S.C. § 1125 (Id., ¶¶ 38-59). Plaintiff alleges a fourth count under Cal. Bus. & Prof. Code § 17200 for unfair competition based on infringement and dilution.(Id., ¶¶ 36-63). Plaintiff also alleges a fifth count for unfair competition for infringement in violation of the common law. (Id., ¶¶ 60-63).

Plaintiff alleges that it is the owner of several United States federal trademark registrations for the mark TRADER JOE'S for retail grocery services and for a range of food and beverage products and associated merchandise. (Docket 1, Complaint, Id.,¶ 1.).  Plaintiff alleges that TJU has a website logo that "wholly encompasses the trademark TRADER JOE'S, which is presented in Trader Joe's distinctive red typeface and the concentric circle design of the TRADER JOE'S logo." (Id., ¶ 27.) Plaintiff alleges that "Defendant Trader Joe's United is an independent labor union comprised of Trader Joe's employees." (Id., ¶ 10.) It alleges that TJU "operates a commercial website where it markets and sells various products, including apparel, home goods, and reusable tote bags, for profit," and has "started using the TRADER JOE'S

Family of Marks on merchandise that it sells for profit, including reusable tote bags, apparel, mugs, and buttons." (Id., ¶¶ 4, 26.) "Specifically, certain of Defendant's products use the TRADER JOE'S typed word mark and stylized word mark, the unique Trader Joe's typeface and red coloring, and/or the concentric circle design and general composition of the registered TRADER JOE'S logo." (Id., ¶ 5.) Plaintiff speculates that its mark on some of these items is "likely to cause consumer confusion," "mistake," "or deception" as to "the source, sponsorship, affiliation, or approval of Defendant's goods." (Id., ¶¶ 4, 6, 40, 49.) Continuing its chain of speculation, Plaintiff alleges that the public "with an appreciable number of reasonable customers" is likely deceived "into believing that Defendant's goods are sponsored, endorsed, or approved by Trader Joe's, or are otherwise associated with Trader Joe's." (Id., ¶¶ 62, 68.) Plaintiff fails to allege any evidence of actual confusion relying only on speculation.

As remedies, Plaintiff seeks injunctive relief, for Defendants to be required to file a written report with the Court setting forth its manner of compliance with any such injunctive relief. Plaintiffs seek for Defendants to also be required to "deliver up for destruction all commercial merchandise in its possession or control," and "recall from any distributors, retailers, vendors, or others all commercial merchandise ... for impoundment and eventual destruction." Plaintiffs also seek statutory damages, punitive damages, any profits, cost of suit, prejudgment interest, and attorney's fees and costs. (Id., Prayer for Relief.)

The election results throughout 2022 and 2023, as well as the federal labor law complaints issued by the NLRB against Plaintiff, show the ongoing highly adversarial nature of Plaintiff's multi-million-dollar anti-union labor dispute with Defendant. The instant Complaint is a clear example of Plaintiff weaponizing the federal courts and trademark law in particular in retaliation against workers who have unionized and against the labor union that assisted those

workers' efforts. Moreover, Plaintiff seeks to engage in trademark bullying to dissuade Defendant's from engaging in their labor dispute with Plaintiff.

The law firm, O'Melveny and Myers, along with their client Trader Joe's, are actively participating in a union-busting campaign that is both illegitimate and unlawful. This lawsuit is an abuse of the legal process and shows a lack of respect for the court's time and resources. Defendant has attempted to explain the frivolous nature of this lawsuit to Plaintiffs a number of times to no avail. This harassment is being disguised as a trademark dispute, but it is clear that Plaintiff's actions constitute bad faith litigation and should be met with Rule 11 sanctions to dissuade such conduct in the future.

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT IS FRIVOLOUS AND FILED FOR AN IMPROPER PURPOSE WITHOUT EVIDENTIARY SUPPORT IN VIOLATION OF RULE 11(b)(1), (3).

The fundamental purpose of Rule 11 of the Federal Rules of Civil Procedure is to "reduce frivolous claims" and "deter meritless maneuvers," and thus avoid "delay and unnecessary expense in litigation." *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir. 2002) (citation omitted); *see also Islamic Shura Council of S. Cal. v. FBI,* 757 F.3d 870, 872 (9th Cir. 2014) ("Rule 11 is intended to deter baseless filings in district court and imposes a duty of reasonable inquiry so that anything filed with the court is well grounded in fact, legally tenable, and not interposed for any improper purpose."). Rule 11(b) provides in relevant part that, by presenting a complaint to the court, the attorney signing or filing the complaint is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Fed. R. Civ. P. 11(b)(1)-(4).

When, as here, the "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Mattel,* 286 F.3d at 1127 (citing *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). "Frivolous" filings are those that are "both baseless and made without a reasonable and competent inquiry." *Id.* The pre-complaint duty to conduct a reasonable and competent inquiry and find evidentiary support is "not satisfied by rumor or hunch." *Ingenuity 13 LLC v. Doe*, No. 2:12-cv-8333-ODW(JCx), 2013 U.S. Dist. LEXIS 17693, at *1 (C.D. Cal. Feb. 7, 2013). Thus, allegations of consumer confusion in the complaint which is based solely on speculation does not satisfy the pre-complaint duty to conduct a reasonable and competent inquiry and find evidentiary support.

Rule 11 violations are determined by an objective standard, which eliminates the "empty-head pure-heart" justification for frivolous arguments; thus, Rule 11 applies even in the absence of subjective bad faith. *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994). The complaint does not need to be wholly baseless to be sanctionable, *e.g.,* the "'mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions." *Holgate v. Baldwin,* 425 F.3d 671, 677 (9th Cir. 2005) (citing *Townsend v. Holman Consulting Corp.,* 929

F.2d 1358, 1364 (9th Cir. 1990)).  As this Court has noted in *Roe v. Rivian Auto. LLC*, No. CV 20-998-MWF (ADSx), 2020 U.S. Dist. LEXIS 236001, at *7 (C.D. Cal. Dec. 11, 2020), improper purposes under Rule 11 include: (1) "negotiating [a] settlement, not in the courtroom, but in the media," *Kramer v. Tribe*, 156 F.R.D. 96, 109 (D.N.J. 1994), *aff'd* 52 F.3d 315 (3d Cir. 1995)); (2) "threaten[ing] [] adversaries with meritless harassing lawsuits" if they do not settle, *id.*; (3) "the absence of any reasonable support for [a] damage claim," *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1162 (9th Cir. 1987); and (4) "intentional use of publicity for the purpose of embarrassing an adversary," *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003).

### A.  PLAINTIFF'S CLAIMS ARE FACTUALLY BASELESS.

An attorney's signature on a pleading is a certification or warranty that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(3). This certification is intended to guarantee that the attorney "conduct[ed] a reasonable inquiry into the facts . . . before filing" a complaint with the court. *Bus. Guides v. Chromatic Commc'ns Enters.*, 892 F.2d 802, 813 (9th Cir. 1989). Plaintiff's attorney fails to certify the factual contention that Defendant's logo has "wholly encompassed" Plaintiff's trademark as the marks are significantly dissimilar.

#### 1. *Plaintiff's trademark vs. Defendant's website logo*

Most, if not all, of the allegations of trademark infringement in Plaintiff's complaint are "factually 'baseless' from an objective perspective." *Mattel,* 286 F.3d at 1127. First, Plaintiff alleges that Defendant has a website logo that "wholly encompasses the trademark TRADER JOE'S, which is presented in Trader Joe's distinctive red typeface and the concentric circle

design of the TRADER JOE'S logo." ECF 1, ¶ 27. However, a simple, side-by-side comparison of Plaintiff's trademark and Defendant's website logo clearly shows major distinctions.

*Plaintiff's trademark:*



*Defendant's website logo:*



Not only is the typeface used in Defendant's logo markedly different in its font style and placement, but the concentric circle designs in each are also clearly different. Most noticeably, Plaintiff's bread, wine, cheese, and grape board design is wholly unrelated to and palpably distinguishable from Defendant's black fist holding a neon green box cutter design. The text and design in Plaintiff's mark is entirely contained within the circle, and the text is aligned horizontally straight. The text in Defendant's logo is arched and in between two circles. Indeed, during oral argument over Defendant's Motion to Dismiss Plaintiff's complaint, this Court stated

that, when comparing Defendant's logo with Plaintiff's trademark, Defendant's font and concentric circle design is clearly different with only the red color being similar.

2. *Plaintiff's trademark vs. Defendant's designs for clothing, mugs, and buttons*

Despite the plainly obvious distinctions between Plaintiff's trademark and Defendant's website logo, Plaintiff inexplicably makes similar allegations about Defendant's logo found on various other products marketed on the Trader Joe's United website, including clothing, mugs, and buttons. Plaintiff contends that the designs on these products "wholly encompass the TRADER JOE'S word mark and stylized word mark, the unique Trader Joe's typeface, Trader Joe's signature red font, and/or the concentric circle design and general composition of the registered TRADER JOE'S logo." ECF 1, ¶ 28. Once more, a side-by-side review of the Defendant-Union's designs and the TRADER JOE'S mark demonstrates that they are distinguishable.

***Plaintiff's trademark:***



**TRADER JOE'S**

***Defendant's designs:***











As demonstrated with these simple side-by-side comparisons, the notion that any part of

Defendant's logo or designs—whether the text font, text placement, concentric circle designs, or

central image designs—mirror or encompass any relevant part of Plaintiff's mark is factually

baseless. The only remote similarity between Defendant's logo and Plaintiff's mark is the use of the color red for the text; however, as this Court noted in the November 9, 2023 oral argument on Defendant's Motion to Dismiss, the common usage of red text by itself is not enough to amount to a trademark infringement. Plaintiff does not have exclusive entitlement to the color red or to red-colored text. Further, Plaintiff does not even market or sell buttons, mugs, or clothing for which Defendant's merchandise can be confused. These are not facts that can be subject to reasonable debate or discussion, and they surely do not have the modicum of "evidentiary support" that is required to avoid Rule 11 sanctions. Moreover, during oral argument and in its opposition papers, Plaintiff's counsel was forced to abandon any trademark argument over any merchandise other than Plaintiff's tote bags. Plaintiff's counsel thus cannot maintain that they conducted a reasonable or competent inquiry into the physical or aesthetic similarities between Plaintiff's mark and Defendant's logo before they made such frivolous allegations of trademark infringement over Defendant's clothing, mugs, and buttons.

### 3. *Plaintiff's Tote Bags vs. Defendant's Tote Bags*

Plaintiff's allegations about the similarity of the Plaintiff's tote bags and Defendant's tote bags are factually baseless for similar reasons.

*Plaintiff's tote bags:*



*Defendant's tote bags:*



As seen above, Plaintiff's tote bags use the same trademark discussed earlier, with horizontally straight text and the bread, wine, grape, and cheese board design contained entirely within the circle. Defendant's tote bags again use the distinct logo, featuring different text font, text orientation and placement, and a strikingly different, neon green boxcutter and black fist image design. The size of the prints on each tote bag is also easily distinguishable, with Defendant's logo taking up almost the entire bag and no other distinguishable color or design featured on the bag, while Plaintiff's tote bags feature a smaller mark surrounded by notable stripes and strap handles of navy blue. If, as Plaintiffs proudly proclaim in their Complaint,

Trader Joe's tote bags "in particular have garnered tremendous consumer attention," ECF 1, ¶ 18, then consumers are sure to discern that Defendant's tote bags are a marked departure from Plaintiff's popular tote bags. Any sincere investigation by competent counsel of the tote bags would have been able to identify the clear distinctions between Plaintiff's and Defendant's bags. However, even if the Court is to find that there are plausible similarities between Plaintiff's and Defendant's tote bags, this alone does not protect Plaintiff's counsel from Rule 11 sanctions, since Plaintiff's allegations about Defendant's website logo and designs for clothing, mugs, and buttons remain factually baseless, and the "'mere existence of one non-frivolous claim' in a complaint does not immunize it from Rule 11 sanctions." *Holgate,* 425 F.3d at 677 (*Townsend,* 929 F.2d at 1364).

### B.  PLAINTIFF'S CLAIMS ARE LEGALLY BASELESS.

An attorney's signature on a pleading certifies that the claims therein are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Holgate v. Baldwin,* 425 F.3d 671, 676-77 (9th Cir. 2005). A claim is legally baseless and thus subject to Rule 11 sanctions, "where no 'plausible, good faith argument can be made by a competent attorney' in support of the proposition asserted." *Goel v. Coal. Am. Holding Co.*, No. CV 11-02349 JGB (Ex), 2013 U.S. Dist. LEXIS 197253, at *15 (C.D. Cal. Feb. 26, 2013) (citing *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829, 833 (9th Cir. 1986)).

As illustrated in the Motion to Dismiss, even if all of the factual allegations in the Complaint were true (which they are not), any lawyer with even a rudimentary knowledge of intellectual property law—let alone experienced intellectual property counsel at a prestigious law

firm such as O'Melveny and Myers—should have known that Plaintiff's claims could not survive as a matter of law.  Thus this lawsuit has clearly been filed for an improper purpose.

### 1.  *Plaintiff fails to sufficiently allege likelihood of consumer confusion.*

The Complaint fails to plausibly allege that a reasonable consumer is likely to be confused that the Trader Joe's company is the origin of the Union's materials. The Ninth Circuit holds that likelihood of confusion is the central element of a trademark infringement action. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,* 174 F.3d 1036, 1053 (9th Cir. 1999). It is unlikely that any consumer who visits Defendant's Union website would be confused as to the origin of the goods sold by the Union as the website is created to communicate about the labor dispute between the parties and Defendant's merchandise is located at a completely distinct website address: http://www.traderjoesunited.org/ (not to mention the fact that Plaintiff does not sell its tote bags on its website). There is an embedded video on the homepage featuring several worker organizers across the country supporting the unionization efforts of Defendant-Union. Not only does Defendant's website contain a ".org" extension used primarily to identify nonprofit organizations on the internet, but there is no mention of any commercial sale of retail grocery services, food or beverage products, nor any associated grocery related merchandise.

Plaintiff also failed to allege the most critical factors that should be considered when determining likelihood of confusion. Among the eight factors identified in *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated on other grounds*, when dealing with claims of trademark infringement on the internet, the Ninth Circuit places "greater import" on the "internet troika" of (1) similarity of marks; (2) relatedness of goods or services; and (3) simultaneous use of the internet as a marketing channel. *Internet Specialties West v.*

*Milon-DiGorgio Enterprises,* 559 F.3d 985, 989 (9th Cir. 2009).   Plaintiff does not market its tote bags on its website.  In fact, its website fails to even contain one picture of its tote bags.

Here, the face of the Complaint shows no similarity of marks, as demonstrated in the section above. Plaintiff also fails to allege that it sells any of the complained of trademark protected merchandise on its website, and in fact admits it does not use the Internet for any sales at paragraph 16 of its Complaint. The "Trader Joe's-branded tote bags," its "vast tote bag offerings" and tote bags "Trader Joe's enthusiasts are known to collect" are not alleged to be offered for sale on Plaintiff's commercial website. (Dkt. 1, ¶ 18.) Thus, "the degree to which the parties' marketing channels converge" and the "simultaneous use of the internet as a marketing channel" are basically zero. Likewise, Trader Joe's fails to allege it sells apparel, mugs, home goods, or buttons. It thus fails to allege any relatedness of goods. There is no relation in services alleged, and there is none. As per the Complaint, Trader Joe's offers groceries while TJU offers labor union services. (Dkt. 1, ¶¶ 1, 4.)  Moreover there is nothing in the Complaint that disputes the fact that the Defendant's website is intended to communicate its labor dispute with the public.

Plaintiff does not sufficiently allege other critical *Sleekcraft* factors as well as failing to allege evidence of actual confusion, which is especially relevant here, as the pre-complaint duty to conduct a reasonable and competent inquiry and find evidentiary support is "not satisfied by rumor or hunch." *Ingenuity,* 2013 U.S. Dist. LEXIS 17693, at *1. Plaintiff also fails to allege that TJU will expand the supposed product line, while acknowledging the material at issue is not TJU's service in any case.

Plaintiff's common law and statutory UCL claims also fail as there is no competitor relationship or intent alleged between Plaintiff and Defendant. *See Deckers Outdoor Corp. v. Team Footwear, Inc.,* WL 12131287 at *2 (C.D. Cal. 2013) ("Unfair competition prohibits the

passing off of one's goods as those of another. One 'passes off' a product when they use confusingly similar products to exploit a competitor's reputation in the marketplace."); *see also SkinMedica, Inc. v. Histogen Inc.,* 869 F. Supp. 2d 1176, 1188 (S.D. Cal. 2012) ("[T]he common law tort of unfair competition ... is rooted in preventing conduct that harms competitors by deceiving customers.").

> 2. *The Norris-LaGuardia Act deprives this Court of jurisdiction to provide the requested injunctive relief.*

Plaintiff's request to enjoin the alleged use of its mark necessarily fails because the Norris-LaGuardia Act deprives this Court of subject matter jurisdiction to grant such relief. The Norris-LaGuardia Act provides that a federal court does not possess "jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute," and shall not issue an injunction that is "contrary to the public policy declared in this chapter." 29 U.S.C. § 101. The Norris-LaGuardia Act's policy against judicial intervention in labor disputes is so strong that "not even the specter of a national paralysis ... [is] considered sufficient to overcome Congress' withdrawal of jurisdiction." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 100 v. E. Airlines Inc.,* 826 F.2d 1141, 1145 (1st Cir. 1987). The instant case plainly involves and grows out of an effort to organize workers who work at Plaintiff, Trader Joe's stores, and as such, this request must be denied. The Norris-LaGuardia Act broadly defines labor disputes to include "any controversy … concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c).

**C. PLAINTIFF AND ITS COUNSEL FAILED TO CONDUCT 'A REASONABLE AND COMPETENT INQUIRY' PRIOR TO FILING THIS COMPLAINT FOR THE IMPROPER PURPOSE OF HARASSING DEFENDANT IN THEIR LABOR DISPUTE.**

Given the clearly visible factual distinctions between Plaintiff's trademark and Defendant's logo and designs and the well-established authority refuting each of Plaintiff's claims, no attorney conducting an objectively reasonable or competent inquiry could claim in good faith that such claims were warranted under existing law.  It is inconceivable that Plaintiff's counsel—who are highly trained and experienced intellectual property lawyers—did not know this. *See, e.g., Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal.,* 790 F.2d 1421, 1427 (9th Cir. 1986) (affirming imposition of Rule 11 sanctions on experienced law practitioners who "must have known" the claim asserted was invalid). Plaintiff's counsel cannot "avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head," *Smith v. Ricks,* 31 F.3d 1478, 1488 (9th Cir. 1994), especially after Defendant's counsel repeatedly brought the numerous issues with Plaintiff's Complaint to their attention.

This court has ruled that "where there is no legal or factual basis for a claim, improper purpose may be deduced." *Goel*, 2013 U.S. Dist. LEXIS 197253, at *15 (C.D. Cal. Feb. 26, 2013). Given that Plaintiff's claims are factually and legally baseless as demonstrated above, along with the fact that Plaintiff improperly seeks in violation of the Norris-Laguardia Act an injunction Defendant's use of the latter's own distinct mark, the court may conclude that Plaintiff filed its complaint to harass, cause unnecessary delay, and needlessly increase the cost of litigation to further burden Defendant in their labor dispute with Plaintiff.

## II.   THE COURT SHOULD STRIKE THE COMPLAINT AND AWARD TRADER JOE'S UNITED ITS ATTORNEYS' FEES AS A SANCTION FOR  PLAINTIFF AND IT'S COUNSEL'S RULE 11 VIOLATIONS.

Where such a violation is found, Rule 11 authorizes sanctions against persons, attorneys, law firms, or parties responsible. *See Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989).

Under these circumstances, it is appropriate both to strike Plaintiff's Complaint against Trader Joe's United with prejudice and impose monetary sanctions on Plaintiff's counsel of record. The Court has broad discretion in fashioning an appropriate sanction for a Rule 11 violation. *See Mellow v. Sacramento Cty.,* 365 F. App'x 57, 58 (9th Cir. 2010); *Hudson,* 836 F.2d at 1163 ("The district court has wide discretion in determining the appropriate sanction for a Rule 11 violation."). Striking the offending pleading is an appropriate remedy for a Rule 11 violation. *See* Fed. R. Civ. P. 11, 1993 Adv. Comm. Notes (nonmonetary sanctions include "striking the offending paper"). Accordingly, to the extent the Complaint has not already been dismissed pursuant to Defendant's pending Motion to Dismiss, Trader Joe's United respectfully requests that the Court strike Plaintiff's Complaint with prejudice and terminate the action. *See Combs v. Rockwell Int'l Corp.,* 927 F.2d 486, 488 (9th Cir. 1991) (dismissal with prejudice appropriate under Rule 11); *Gionis v. Cal. Bureau for Private Postsecondary Educ.,* No. 2:13-CV-00912-MCE, 2014 WL 466276, at *4 (E.D. Cal. Feb. 5, 2014) (imposing terminating sanctions under Rule 11 for filing frivolous complaint).

Rule 11 expressly authorizes the imposition of monetary and/or nonmonetary sanctions. See Fed. R. Civ. Pro. 11(c)(2); *Weissman v. Quail Lodge, Inc.,* 179 F.3d 1194, 1198 (9th Cir. 1999). A monetary sanction may be composed of either or both a penalty payable to the court, and/or an award of reasonable attorneys' fees to the opposing party for those "fees and other expenses incurred as a direct result of the violation." *See* Fed. R. Civ. Pro. 11(c)(2). A fee award may only be made on motion and if warranted for effective deterrence."

Rule 11 is not designed as a fee-shifting provision or to compensate the opposing party. Its primary purpose is to deter sanctionable conduct. Thus, in addition to requiring that any fees be a direct result of the offending conduct, the court must consider the deterrent effect of any fee

award. *See* Fed. R. Civ. Pro. 11(c)(2); *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 406, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). The sanction imposed must "suffice[] to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Trader Joe's United has been forced to expend a substantial amount of money to defend itself against Plaintiff's frivolous claims, including by researching and investigating the claims, collecting documentary evidence, preparing a motion to dismiss, and engaging in conferences with Plaintiff's counsel. On a motion, and if warranted for effective deterrence, the Court may order "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "Where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." *Gaskell v. Weir,* 10 F.3d 626, 629 (9th Cir. 1993); *see also Kunimoto v. Fidell,* 26 F. App'x 630, 633 (9th Cir. 2001) (affirming award of attorneys' fees under Rule 11 for filing frivolous complaint); *Truesdell v. S. Cal. Permanente Med. Grp.,* 209 F.R.D. 169, 178 (C.D. Cal. 2002) ("an appropriate sanction is reimbursement of those attorneys' fees and costs reasonably expended by Defendant as a result of [the] unwarranted filing" of a complaint).

Trader Joe's United therefore respectfully requests that the Court order Plaintiff's counsel to pay all of the reasonable attorney's fees and costs that Defendant-Union needlessly incurred in defending against Plaintiff's frivolous claims, including the fees incurred for bringing this Rule 11 Motion. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion."); *ADO Fin., AG v. McDonnell Douglas Corp.,* 938 F. Supp. 590, 597 (C.D. Cal. 1996) (allowing defendant "to recover the fees and expenses incurred in prosecuting the Rule 11 motion"). Given

the gravity of Plaintiff and its counsel's conduct and the fundamental nature of the facts that they failed to reasonably and competently investigate, a monetary award is necessary to deter future improper conduct by Plaintiff's counsel or others similarly situated. See Fed. R. Civ. P. 11(b)(2), (4).

The monetary sanctions sought herein should be imposed jointly against Plaintiff and their counsel, O'Melveny and Myers. See Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."). Defendant is prepared to promptly submit an application for its reasonable attorneys' fees and costs in connection with such appropriate sanctions.

### III.    <u>CONCLUSION</u>

Trader Joe's United respectfully requests that the Court grant its motion for sanctions pursuant to Rule 11 and enter an order (1) dismissing Plaintiff's Complaint with prejudice; and (2) directing Plaintiff's counsel (and their law firm) to pay all of Defendant's reasonable attorneys' fees and costs incurred in defending itself in this action; and (3) imposing any other sanctions sufficient to deter repetition of Plaintiff's and its counsel's improper conduct.

EXHIBIT 2

**Julien Mirer Singla & Goldstein, PLLC**
1 Whitehall Street
16th Floor
New York, NY 10004
212-231-2235

January 25, 2024

Trader Joes United

**RE: TJU Trademark**

## Time Details

| Date | Staff Member | Description | Hours | Rate | Amount |
|------|--------------|-------------|-------|------|--------|
| 06-27-2023 | Seth Goldstein | Reviewed Kathryn Cahan email sent to Jamie Edwards regarding Trademark infringement | 0.25 | 1,057.00 | 264.25 |
| 06-27-2023 | Retu Singla | Reviewed Kathryn Cahan email sent to Jamie Edwards regarding Trademark infringement and researched similar cases and found Medieval Times | 0.50 | 1,057.00 | 528.50 |
| 06-28-2023 | Retu Singla | Phone conference with National Officers to discuss response to Kathryn Cahan infringement letter. | 0.50 | 1,057.00 | 528.50 |
| 06-28-2023 | Retu Singla | Drafting and finalizing June 28, 2023 TJU letter to Kathryn Cahan regarding trademark infringement threat | 1.75 | 1,057.00 | 1,849.75 |
| 06-28-2023 | Seth Goldstein | legal research on trademark infringement relating to Kathryn Cahan email | 1.00 | 1,057.00 | 1,057.00 |
| 06-28-2023 | Seth Goldstein | Phone conference with National Officers to discuss response to Kathryn Cahan infringement letter. | 0.50 | 1,057.00 | 528.50 |
| 07-05-2023 | Retu Singla | Reviewed TJ Letter from Kathryn Cahan, General Counsel including case law research | 0.50 | 1,057.00 | 528.50 |
| 07-05-2023 | Seth Goldstein | Met with national Officers to discuss TJ July 5 letter and TJU response. | 0.25 | 1,057.00 | 264.25 |
| 07-05-2023 | Seth Goldstein | Reviewed and analyzed case law cited in TJ July 5, 2023 General Counsel letter | 1.00 | 1,057.00 | 1,057.00 |
| 07-05-2023 | Retu Singla | Met with national Officers to discuss TJ July 5 letter and TJU response. | 0.25 | 1,057.00 | 264.25 |
| 07-06-2023 | Retu Singla | Meeting with National Officers to discuss responding to TJ Trademark letter | 1.00 | 1,057.00 | 1,057.00 |
| 07-06-2023 | Seth Goldstein | Meeting with National Officers to discuss responding to TJ Trademark letter | 1.00 | 1,057.00 | 1,057.00 |

| Date | Staff Member | Description | Hours | Rate | Amount |
|------|--------------|-------------|-------|------|--------|
| 07-11-2023 | Seth Goldstein | Legal research on Trademark Trader Joe's case | 2.00 | 1,057.00 | 2,114.00 |
| 07-11-2023 | Retu Singla | Trademark research | 3.75 | 1,057.00 | 3,963.75 |
| 07-13-2023 | Retu Singla | Review Complaint and begin legal research on claims | 3.25 | 1,057.00 | 3,435.25 |
| 07-13-2023 | Seth Goldstein | Review and analyze Trader Joe's Complaint | 1.50 | 1,057.00 | 1,585.50 |
| 07-13-2023 | Retu Singla | check docket | 0.25 | 1,057.00 | 264.25 |
| 07-14-2023 | Seth Goldstein | Legal Research relating to July 13 Trademark infringement Complaint | 1.50 | 1,057.00 | 1,585.50 |
| 07-26-2023 | Seth Goldstein | Zoom conference with National officers to discus status of the case. | 1.00 | 1,057.00 | 1,057.00 |
| 07-26-2023 | Retu Singla | Zoom conference with National officers to discus status of the case. | 1.00 | 1,057.00 | 1,057.00 |
| 07-27-2023 | Retu Singla | following up on service of complaint with client | 0.50 | 1,057.00 | 528.50 |
| 07-28-2023 | Retu Singla | Phone call with Seth and client to discuss Trademark case. | 1.50 | 1,057.00 | 1,585.50 |
| 07-28-2023 | Seth Goldstein | Phone call with client to discuss Trademark case strategy. | 1.50 | 1,057.00 | 1,585.50 |
| 07-29-2023 | Retu Singla | following up on service of complaint with client | 0.50 | 1,057.00 | 528.50 |
| 08-07-2023 | Retu Singla | Pro Hac Vice application for California District Court | 1.30 | 1,057.00 | 1,374.10 |
| 08-07-2023 | Seth Goldstein | Drafted and filed application with California District Court to appear Pro Hac Vice in Trademark case | 1.50 | 1,057.00 | 1,585.50 |
| 08-15-2023 | Seth Goldstein | Meet and confer with Defendant's Counsel David Eberhart, Andrew Levad, Scott Pink, Sonya Mehta and Retu Singla | 0.25 | 1,057.00 | 264.25 |
| 08-15-2023 | Seth Goldstein | Prepare for meet and confer | 0.50 | 1,057.00 | 528.50 |
| 08-15-2023 | Seth Goldstein | Discuss with client about the results of the meet and confer with defendant's attorneys in Trademark case | 0.25 | 1,057.00 | 264.25 |
| 08-15-2023 | Retu Singla | Meet and confer with Defendant's Counsel David Eberhart, Andrew Levad, Scott Pink, Sonya Mehta and Retu Singla | 0.25 | 1,057.00 | 264.25 |
| 08-15-2023 | Seth Goldstein | Prep meeting for meet and confer with Seth and Sonya | 0.50 | 1,057.00 | 528.50 |
| 08-15-2023 | Retu Singla | Inform client about meet and confer | 0.25 | 1,057.00 | 264.25 |
| 08-16-2023 | Retu Singla | Drafting Motion to Dismiss | 5.00 | 1,057.00 | 5,285.00 |

| Date | Staff Member | Description | Hours | Rate | Amount |
|------|--------------|-------------|-------|------|--------|
| 08-17-2023 | Retu Singla | Drafting Motion to Dismiss. | 4.00 | 1,057.00 | 4,228.00 |
| 08-17-2023 | Seth Goldstein | Assist in Drafting Motion to Dismiss in Trademark case. | 3.00 | 1,057.00 | 3,171.00 |
| 08-18-2023 | Seth Goldstein | Legal research and draft Motion to Dismiss for trademark case. | 2.50 | 1,057.00 | 2,642.50 |
| 08-18-2023 | Retu Singla | Final Draft Motion to Dismiss | 4.00 | 1,057.00 | 4,228.00 |
| 08-21-2023 | Retu Singla | Discuss MTD with Client | 0.75 | 1,057.00 | 792.75 |
| 08-21-2023 | Seth Goldstein | Discuss Trademark case status with TJU | 0.75 | 1,057.00 | 792.75 |
| 08-29-2023 | Retu Singla | Discussion about 26f conference with Sonya, checked docket, responded to OMM request for conference | 0.75 | 1,057.00 | 792.75 |
| 08-31-2023 | Seth Goldstein | Review and analyze letter from Andrew Levad requesting a 26(f) conference in Trademark case. | 0.25 | 1,057.00 | 264.25 |
| 09-01-2023 | Retu Singla | Discussion about 26f conference with Sonya, responded to OMM 2nd request for discovery | 0.50 | 1,057.00 | 528.50 |
| 09-05-2023 | Seth Goldstein | Review email Andrew Levad from O'Melveny and research case law cited in the letter | 0.80 | 1,057.00 | 845.60 |
| 09-11-2023 | Retu Singla | email to Andrew Levad 3rd request for 26(f) discovery | 0.50 | 1,057.00 | 528.50 |
| 09-28-2023 | Retu Singla | discussion with client and seth on medieval times decision | 0.50 | 1,057.00 | 528.50 |
| 09-28-2023 | Seth Goldstein | discussion with client and seth on medieval times decision | 0.50 | 1,057.00 | 528.50 |
| 09-28-2023 | Retu Singla | discussion with sonya on medieval times decision | 0.40 | 1,057.00 | 422.80 |
| 09-28-2023 | Seth Goldstein | discussion with sonya on medieval times decision | 0.40 | 1,057.00 | 422.80 |
| 10-02-2023 | Seth Goldstein | Review email Eberhart letter for discovery | 0.25 | 1,057.00 | 264.25 |
| 10-02-2023 | Retu Singla | Review OMM email for 4th discovery request | 0.25 | 1,057.00 | 264.25 |
| 10-04-2023 | Retu Singla | Letter to OMM on rule 11, 26f, and medieval times decision | 2.25 | 1,057.00 | 2,378.25 |
| 10-04-2023 | Seth Goldstein | Drafted letter to David Eberhart, Esq. regarding discovery schedule | 1.00 | 1,057.00 | 1,057.00 |
| 10-04-2023 | Seth Goldstein | Drafted in file a ULP charge against Trader Joe's for retaliatory civil lawsuit against the union. | 0.50 | 1,057.00 | 528.50 |
| 10-19-2023 | Seth Goldstein | legal research to respond to Trader Joe's Trademark lawsuit | 2.00 | 1,057.00 | 2,114.00 |

| Date | Staff Member | Description | Hours | Rate | Amount |
|------|-------------|-------------|-------|------|--------|
| 10-23-2023 | Seth Goldstein | Draft TJU Response to TJ Opposition to Motion to Dismiss (Trademark case) | 5.00 | 1,057.00 | 5,285.00 |
| 10-24-2023 | Retu Singla | Draft TJU Response to TJ Opposition to Motion to Dismiss | 6.00 | 1,057.00 | 6,342.00 |
| 11-01-2023 | Seth Goldstein | Phone call with Sonya Mehta regarding motion for Retu Singla to appear remotely for motion to dismiss on Trademark case. | 0.12 | 1,057.00 | 126.84 |
| 11-01-2023 | Retu Singla | Phone call with Sonya Mehta regarding motion for remote appearance for motion to dismiss | 0.12 | 1,057.00 | 126.84 |
| 11-03-2023 | Seth Goldstein | Review case law and assist Retu Singla to prepare for Trademark court hearing on Motion to Dismiss | 1.00 | 1,057.00 | 1,057.00 |
| 11-03-2023 | Retu Singla | Review case law and prepare for oral argument with seth | 1.00 | 1,057.00 | 1,057.00 |
| 11-09-2023 | Retu Singla | oral argument on MTD | 0.75 | 1,057.00 | 792.75 |
| 11-09-2023 | Retu Singla | oral argument on MTD prep | 1.00 | 1,057.00 | 1,057.00 |
| 11-09-2023 | Seth Goldstein | oral argument on MTD | 0.75 | 1,057.00 | 792.75 |
| 11-11-2023 | Retu Singla | Began Drafting Rule 11 motion to attach to safe harbor letter | 1.00 | 1,057.00 | 1,057.00 |
| 11-11-2023 | Seth Goldstein | Drafted and sent email to David Eberhart requesting a Section 7-3 meeting to discuss Rule 11 sanctions in Trademark case. | 0.25 | 1,057.00 | 264.25 |
| 11-13-2023 | Seth Goldstein | Legal Research on California Slap Law | 2.00 | 1,057.00 | 2,114.00 |
| 11-14-2023 | Seth Goldstein | Meeting with David Eberhart Counsel for Trader Joe's to discuss Rule 11 sanctions | 0.10 | 1,057.00 | 105.70 |
| 11-17-2023 | Retu Singla | Drafting Rule 11 motion to attach to safe harbor letter | 2.00 | 1,057.00 | 2,114.00 |
| 11-27-2023 | Seth Goldstein | research Rule 11 sanctions for Trader Joe's trademark case | 1.50 | 1,057.00 | 1,585.50 |
| 12-01-2023 | Seth Goldstein | Research Rule 11 Sanction Motion | 1.50 | 1,057.00 | 1,585.50 |
| 12-11-2023 | Seth Goldstein | Drafted Trader Joe's Rule 11 Sanctions Motion | 1.50 | 1,057.00 | 1,585.50 |
| 12-19-2023 | Retu Singla | Drafting Rule 11 motion to attach to safe harbor letter | 2.00 | 1,057.00 | 2,114.00 |
| 01-03-2024 | Retu Singla | Final draft for Rule 11 Safe Harbor letter with Motion | 3.50 | 1,057.00 | 3,699.50 |
| 01-04-2024 | Seth Goldstein | Discuss with Sonya Mehta Defendant's Safe harbor letter and Rule 11 Motion | 0.50 | 1,057.00 | 528.50 |
| 01-04-2024 | Seth Goldstein | Email Safe harbor letter and draft Rule 11 Sanction | 0.10 | 1,057.00 | 105.70 |

| Date | Staff Member | Description | Hours | Rate | Amount |
|------|-------------|-------------|-------|------|--------|
| | | Motion to David Eberhart | | | |
| 01-04-2024 | Retu Singla | Discuss with Sonya and Seth Safe harbor letter and Rule 11 Motion | 0.50 | 1,057.00 | 528.50 |
| 01-22-2024 | Seth Goldstein | Drafted Declaration for attorney fees | 3.00 | 250.00 | 750.00 |
| 01-23-2024 | Retu Singla | Draft Declaration for Attorney Fees (Trademark case) | 5.00 | 1,057.00 | 5,285.00 |
| 01-23-2024 | Retu Singla | Drafting second attorneys fees meet and confer request and scheduling communications with OMM and Seth and Sonya | 0.60 | 1,057.00 | 634.20 |
| | | | **Total** | | 106,650.83 |

## Time Summary

| Staff Member | Hours | Amount |
|-------------|-------|--------|
| Retu Singla | 59.42 | 62,806.94 |
| Seth Goldstein | 43.77 | 43,843.89 |
| | **Total** | 106,650.83 |