1  SONYA Z. MEHTA, SBN 294411
   SIEGEL, YEE, BRUNNER & MEHTA
2  475 14th Street, Suite 500
   Oakland, California 94612
3  Tel: 510-839-1200
   Fax: 510-444-6698
4  sonyamehta@siegelyee.com

5
6  DAT HOANG PHAN, SBN 316813
   HENNIG, KRAMER, RUIZ AND SINGH, LLP
7  3600 Wilshire Boulevard
   Suite 1908
8  Los Angeles, CA 90010
   Tel: 213-310-8301
9  Fax: 213-310-8302
   dat@employmentattorneyla.com
10

RETU R. SINGLA, SBN 4162822
Tel: 646-228-4719
rsingla@workingpeopleslaw.com
SETH L. GOLDSTEIN, SBN 2160182
Tel: 646-460-1309
Fax: 251-319-2955
sgoldstein@workingpeopleslaw.com
JULIEN MIRER SINGLA AND
GOLDSTEIN PLLC
One Whitehall Street, 16th Floor
New York, NY 10004
ADMITTED PRO HAC VICE

Attorneys for Defendant
TRADER JOE'S UNITED

11

12                **UNITED STATES DISTRICT COURT**
13                **CENTRAL DISTRICT OF CALIFORNIA**

14  TRADER JOE'S COMPANY, a California          )   Case No. 2:23-cv-05664-HDV-MAR
15  corporation,                                )
                                                )   **DECLARATION OF SONYA Z.**
16                                              )   **MEHTA ISO DEFENDANT TRADER**
                                                )   **JOE'S UNITED'S MOTION FOR**
17                Plaintiff,                     )   **ATTORNEYS' FEES**
18                                              )
                                                )   Filed Concurrently with MPA and
19  vs.                                         )   Declarations of Retu R. Singla and Seth L.
20                                              )   Goldstein; Proposed Order
                                                )
21  TRADER JOE'S UNITED,                        )   Hon. Hernán D. Vera
22                                              )   Date: February 29, 2024
                                                )   Ctrm: 5B
23                Defendant.                     )   Time: 10:00 a.m.
                                                )
24  _____          )   Complaint Filed: July 13, 2023
25                                              )   Complaint Dismissed: January 12, 2024

26
27
28

---

I, Sonya Z. Mehta, declare:

1.     I am an attorney admitted to practice law in California. I am a partner at the law firm of Siegel, Yee, Brunner & Mehta, LLP, located in Oakland, California. I have personal knowledge of the matters set forth herein, and if called as a witness I could competently so testify.

**Summary of experience.**

2.     I am a 2001 graduate of the University of California at Berkeley, where I received a Bachelor of Arts degree. After graduation and until 2010, I was a community organizer and Co-Director of a workers' center, Young Workers United, in San Francisco. We won the first paid sick leave law in the country and many other victories for and with working people.

3.     In 2010, I began law school at the City University of New York School of Law, the country's premiere social justice law school. There, I won awards from women's and labor organizations. I won a significant settlement for low wage immigrant women workers through the Economic Rights Clinic at CUNY.

4.     In 2013, I graduated from CUNY Law. That year I took the Bar and was admitted to practice law. In late 2013, I was hired as an Associate at Siegel & Yee, founded by civil rights icons Dan Siegel and Alan Yee. In 2014, I was part of the attorney team for the union seeking to overturn the Accrediting Commission for Community and Junior Colleges' attempt to terminate the City College of San Francisco's accreditation.

5.     At Siegel & Yee, I handled many fact-filled, lengthy, and complicated employment litigation cases. In May 2015, I was second chair to Siegel in an 11-day federal jury trial in Riverside against The Regents of the University of California in a race retaliation suit. I did all the written discovery work, wrote the summary judgment opposition, completed significant pretrial work, and questioned witnesses. The team was Siegel, me, and a junior paralegal.

6.     In September 2015, I was second chair to Siegel in a victorious 5-day jury trial before this Court, *Preston v. City of Oakland* (N.D. Cal. 2014) Case No. 3:14-cv-

---

02022 NC, a whistleblower case. I did most of the discovery except for a handful of depositions. I successfully opposed a complex motion to disqualify my firm as counsel due to the whistleblower's use of certain documents. I did the pretrial work and prepared and questioned many of the witnesses in trial. We won our state whistleblower claim and a verdict of nearly $700,000. The team was Siegel, me, and Senior Paralegal Elizabeth Johnson.

7.      In 2016, I favorably settled *Hodges v. Marinello Beauty School*, an arbitration where the beauty school had discriminated and retaliated against a Black student. That year, I obtained a worthy settlement in *Plummer v. City of Richmond* (N.D. Cal. 2014) Case No. 14-cv-03962-VC, a whistleblower case.

8.      In 2016, I began representing Public Employees Union, Local #1, in Public Employment Relations Board (PERB) matters, and as of 2023, I am the Union's General Counsel. Local #1 represents public employees in the counties of Contra Costa, West Contra Costa, Sutter, Yuba, and El Dorado. I have won almost all of myriad matters for the Union, including several PERB hearings and arbitrations. I also tried a two-week State Personnel Board hearing on behalf of a state employee whistleblower.

9.      In 2017, I engaged in anti-SLAPP litigation on behalf of an Alliance for Californians for Community Empowerment (ACCE) tenant organizer from a landlord's restraining order.

10.      In early 2018, I obtained an excellent settlement right before trial in whistleblower case *Ochoa v. Santa Clara Cnty. Off. of Educ.* (N.D Cal. 2016) Case No. 16-cv-03283-HRL, with the settlement assistance of this Court. I also won a great settlement shortly before trial in *Neushul v. Regents of Univ. of California* (C.D. Cal. 2015) Case No. CV 15-6286 FMO (ASx). *Neushul* was a Title IX, whistleblower, gender discrimination, and retaliation case.

11.      In both cases, I did all the attorney work, from writing the complaint, discovery including depositions, oppositions to summary judgments, and pretrial preparation including witness preparation and evidence selection. In *Neushul*, I won a

---

ruling stating California Labor Code § 1102.5 did not require administrative exhaustion, though it was depublished.

12.     Also, in 2018, I settled another sex discrimination case against The Regents, and I defended environmental activists against attempts to enjoin their protests. That year, I became co-General Counsel with my now-partner Jane Brunner to Service Employees International Union, Local 87, the San Francisco janitors' union.

13.     In January 2019, I became a named partner at Siegel, Yee, Brunner & Mehta. That year, I filed a writ against The Regents at University of California San Francisco on behalf of a wronged doctor. I again defended environmental activists against another injunction. I represented the Union in a successful National Labor Relations Board hearing. Brunner and I successfully defended Local 87 in a four-day bench trial in San Francisco Superior Court. I co-counseled in a case against Diestel Turkey Ranch for false advertising and co-chaired a bench trial in Alameda County Superior Court in 2019.

14.     In 2020, I advised Local 87, the janitors' union, through massive layoffs due to COVID. I won a new and better position for the only Black executive, who had been unfairly treated, at a Contra Costa public entity. In 2020, I was the sole attorney and won a three-day arbitration before Arbitrator Norman Brand on behalf of a Local #1 member, a falsely accused 17-year janitor at Contra Costa Community College District.

15.     In 2021, I won an appeal on behalf of Local 87 regarding the earlier bench trial result. This was related to complicated Family Medical Leave Act issues. I favorably settled a discrimination and retaliation case on behalf of the first ever Latina/indigenous museum curator at St. Mary's College.

16.     In 2021, I was a leading member of my firm's and Attorney Walter Riley's class action lawsuit against the City of Oakland regarding its police brutality against protestors in the aftermath of the police murder of George Floyd. *Anti Police-Terror Project v. City of Oakland* (N.D. Cal. 2020) Case No. 20-cv-03866-JCS, is now in the process of settling after agreeing to significant police reform. In 2021, I was co-counsel

---

with Siegel and gave the opening statement in a whistleblower jury trial in Sacramento state court.

17. In 2022, I won *Gomez v. Evergreen School District*, Case No. 5:20-cv-03008-NC (N.D. Cal. 2020). in a bench trial and with an over $2 million verdict. I was the only attorney on the case, did all the work on it, and tried the 4.5-day bench trial by myself.

18. In 2022, I also won an excellent settlement for an Oakland Unified School District employee who blew the whistle on lead in the water at a school with over 90% Black students. I won reinstatement for a Human Resources employee at Contra Costa Community College District in a three-day evidentiary hearing.

19. In 2022, I also won a $268,000 pre-complaint settlement for Dr. Sarai Crain, the former Deputy Chief of Violence Prevention of the City of Oakland, to resolve her claims of gender discrimination, retaliation, and unequal pay.

20. In 2022, I won a two-day Office of Administrative Hearings evidentiary hearing where I defended a nurse activist against the Bureau of Registered Nurses before the Office of Administrative Hearings. I reduced the discipline from loss of license to no discipline.

21. In 2023, I won a six-figure settlement for a Google employee.

22. In 2023, I won a six-figure settlement for a City Manager of a large Bay Area municipality.

23. In 2023, I defended a professor in a two-day Privilege & Tenure hearing at the University of California at Davis.

24. I am currently representing a financial advisor who blew the whistle on tax evasion by a billionaire family who retaliated against her.

25. I am currently prosecuting a gender discrimination and retaliation case for a world-renowned woman scientist against University of California at Davis.

26.     As of this year, I am General Counsel to Local #1, a public employees' union; and co-counsel to SEIU Local 87. I advise the Alphabet Workers Union and have advised a union composed of County doctors.

27.     Unless otherwise noted, I have advised on, prosecuted or defended, and tried the above matters by myself, mostly against public entities and often with complicated, long fact patterns and difficult legal issues.

28.     I have been an active member of California Employment Lawyers Association since 2016 and I was the 2023 Co-Chair of the Public Employees committee. I am starting my second term as President of the Women Lawyers of Alameda County.

29.     In 2023, the Minority Bar Coalition awarded me its Unity Award.

30.     I have been a speaker or moderator on numerous panels, including Continuing Education of the Bar, CELA, the Bar Association of San Francisco, National Lawyers Guild, and Alameda County Superior Court.

31.     I was selected as a Rising Star in employment litigation in 2023 and this year, I was recognized as a Super Lawyer.

32.     Most recently, I won a motion to dismiss against Trader Joe's Company on a trademark infringement suit against the Union, Trader Joe's United.

**Facts related to *Trader Joe's Company v. Trader Joe's United.***

33.     I agreed to work on this case in order to provide federal court, labor, litigation, and California expertise.

34.     I have been the sole attorney on this case determining rules, timing, and other particularities of federal court and the Central District.

35.     I performed the necessary pro hac vice work, conducted research for, edited, and drafted supportive filings for the motion to dismiss; conducted anti-SLAPP, Rule 11, and attorneys' fees research; and wrote and coordinated this motion. I will also write the reply and argue at the hearing.

36.     I have ten years of experience, four as a Partner at a major civil rights law firm that has been winning impactful cases for almost 40 years.

37.     I am the first person in the firm's history with under 30 years of practice to be invited to the partnership, and only the second person in nearly 40 years to join Dan Siegel and Alan Yee as a partner. (The first was Jane Brunner.)

38.     Attached as Exhibit 1 to this Declaration is the 2024 Laffey Matrix.

39.     In 2023, I was awarded a fee of $676 in Gomez. Attached as Exhibit 2 to this Declaration is a true and complete copy of that Court Order. The Court noted, "Ninth, the Court considers the reputation, experience, and ability of the lawyer. Ms. Mehta is skillful and respected, and the Court has now observed her in victorious civil trials early (*Preston v. City of Oakland*, No. 14-cv-2022 NC) and later in her career. This too is fairly compensated by the hourly rate." Exh. 2, *Gomez v. Evergreen School District*, Case No. 5:20-cv-03008-NC (N.D. Cal. 2020), Dkt. 115, 10:4-7. The Court in *Gomez* applied the Laffey rate. *Id.*, 7:3-16, 9:12-15.

40.     I have unique and desirable expertise in both individual employee matters and labor law for both public and private sector employees and employee organizations, as well as significant political and organizing experience and acumen.

41.     Attached as Exhibit 3 to this Declaration is a complete accounting and description of my hours worked in this case. I kept my hours contemporaneously on a computer application.


I have read this declaration and declare under penalty of perjury under the laws of the State of California that it is true and correct. Executed on January 26, 2024, in Oakland, California.


___/s/ Sonya Z. Mehta___
Sonya Z. Mehta


Attorneys for Defendant
TRADER JOE'S UNITED

EXHIBIT 1

# LAFFEY MATRIX

History

Case Law

See the Matrix

Contact us

Home

| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/23- 5/31/24 | 1.059295 | $239 | $437 | $538 | $777 | $878 | $1057 |
| 6/01/22- 5/31/23 | 1.085091 | $225 | $413 | $508 | $733 | $829 | $997 |
| 6/01/21- 5/31/22 | 1.006053 | $208 | $381 | $468 | $676 | $764 | $919 |
| 6/01/20- 5/31/21 | 1.015894 | $206 | $378 | $465 | $672 | $759 | $914 |
| 6/01/19- 5/31/20 | 1.0049 | $203 | $372 | $458 | $661 | $747 | $899 |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07- 5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06- 5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05- 5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04- 5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03- 6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02- 5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01- 5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00- 5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99- 5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98- 5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97- 5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96- 5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95- 5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |

| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

 The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g.,DL v. District of Columbia, 267 F.Supp.3d 55, 69 (D.D.C. 2017)

* ï¿½Years Out of Law Schoolï¿½ is calculated from June 1 of each year, when most law students graduate. ï¿½1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). ï¿½4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier ï¿½1-3" from June 1, 1996 until May 31, 1999, would move into tier ï¿½4-7" on June 1, 1999, and tier ï¿½8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

EXHIBIT 2

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11

12    KATHERINE GOMEZ,                    Case No. 20-cv-03008-NC

             Plaintiff,                   **ORDER GRANTING IN PART**
13                                        **PLAINTIFFS' MOTIONS FOR**
        v.                                **FEES AND COSTS**
14
      EVERGREEN SCHOOL DISTRICT,          Re: ECF 98, 100
15
             Defendant.
16

17

18         Plaintiff Katherine Gomez was the first woman Superintendent of Evergreen

19   School District, serving from 2011 to 2019.  In this case, Gomez sued the District under

20   federal and California law, asserting equal pay and employment discrimination claims.

21   After a bench trial in 2022, the Court ruled in Gomez's favor and awarded her

22   compensatory damages totaling $2,027,653.46.  ECF 96.

23         Now presented to the Court are Gomez's post-trial motions seeking an award of

24   attorney and expert witness fees and costs.  ECF 98 (unopposed bill of costs for

25   $5,473.70); ECF 100 (motion for attorney and expert witness fees of $573,583.24); ECF

26   101-105, 111 (declarations in support); and ECF 106 (proposed order).  In summary,

27   Gomez seeks the following amounts, including a proposed multiplier of 1.3 for the work

28   by lead attorney Sonya Z. Mehta:

United States District Court
Northern District of California

| Name | Role | Rate | Hours | Total |
|------|------|------|-------|-------|
| Dan Siegel | Partner | $919 | 7.1 | $6,524.90 |
| Sonya Z. Mehta | Partner | $676 | 501.8 | $339,216.8 x 1.3 = $440,981.84 |
| Elizabeth Johnson | Senior Paralegal | $300 | 64.75 | $19,425 |
| Kayla Webster | Paralegal | $250 | 350.3 | $87,575 |
| Vanessa Hill | Expert | | | $19,076.50 |
| Other Costs (ECF 98) | | | | $5,473.70 |
| | | | | **TOTAL: $579,056.94** |

The Defendant District does not dispute that Gomez is the prevailing party for purposes of this order; that she is entitled to her reasonable fees and costs; and that the hourly rates requested by Gomez's attorneys and paralegals are reasonable. ECF 109 (opposition brief). The District also does not contest the costs for expert witness Vanessa Hill ($19,076.50) and the "other costs" ($5,473.70) detailed in the Bill of Costs, ECF 98. Instead, the District argues that Gomez's lodestar is unreasonable and inflated because the attorneys and paralegals worked too many hours on certain tasks. By comparison to the 925.95 hours billed by Gomez's attorneys and paralegals, the District asserts that its team billed only 631.5 hours. ECF 109-1. The District also contends that a state-law multiplier is not warranted.

As explored below, the Court awards Gomez her reasonable fees and uncontested costs as the prevailing party. The Court reduces a handful of time entries where the time spent was excessive or insufficiently explained. The Court declines to multiply the fees, finding that the lodestar award is sufficient to satisfy the interest of justice. In total, the Court awards Gomez $467,622.90 in fees and costs.

### A. Standard for Award of Attorney Fees

The general rule in federal courts is that "absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975). "In a pure federal question case in federal court, federal law governs attorneys' fees." *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d

2

272, 281 (9th Cir. 2018) (internal citations omitted). "By contrast, 'so long as 'state law does not run counter to a valid federal statute or rule of court . . . state law denying the right to attorney's fees or giving a right thereto . . . should be followed.'" *Id.* (citing *MRO Communications, Inc. v. American Telephone & Telegraph Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (quoting *Alyeska*, 421 U.S. at 259 n.31)).

For claims asserted under California law, "California law governs plaintiffs' motion for fees." *Ridgeway v. Wal-Mart Stores Inc.*, No. 08-cv-5221-SI, 269 F. Supp. 3d 975, 982 (N.D. Cal. 2017); *see Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("federal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine, and *Erie* does not compel federal courts to apply state law to a federal claim.") (internal footnote omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees." *Ridgeway*, 269 F. Supp. 3d at 982 (citing *MacDonald v. Ford Motor Co.*, No. 13-cv-2988-JST, 2016 WL 3055643, at *2 (N.D. Cal. May 31, 2016)).

FEHA and the other claims tried here contain fee-shifting provisions and under California and federal law, courts use the "lodestar method" to calculate reasonable attorneys' fees by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. *Polee v. Cent. Contra Costa Transit Auth.*, No. 18-cv-5405-SI, 516 F. Supp. 3d 993, 997 (N.D. Cal. Jan. 29, 2021) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010)).

### 1. Hours Expended

Sonya Z. Mehta was the sole trial counsel for Gomez. She was assisted at any given time by one paralegal. Ms. Mehta provides a declaration from experienced attorney Wendy Musell noting that this type of solo work throughout trial was impressive and unusual. ECF 102 at 15-16. Ms. Mehta also avers that her hours are reasonable and efficient, with significant efforts to save time. ECF 100 at 9-10.

The District objects to several aspects of Ms. Mehta's time usage, as well as that of the two paralegals involved. It notes that Plaintiff's counsel claims to have spent a

3

combined 923.95 hours working on this matter between two partners and two paralegals, – as compared to the 631.50 hours recorded by defense counsel on the same case.  ECF 109-1. The District delineates several activities on which it believes excessive hours were used:

| Preparing the Complaint | 19 hours |
|---|---|
| Determining Who To Serve | 1.25 hours |
| Reviewing the DFEH File | 10.25 hours |
| Writing a 3-Page Discovery Meet And Confer Letter To Defense Counsel (dated September 25, 2020) | 4.25 hours |
| Preparing a Partial Motion For Summary Judgment – Which Was Denied (See ECF 39) | 78.5 hours[1] |
| Preparing an 8-page Mediation Brief (dated October 15, 2020 – with 26 pages of attachments consisting of (1) a report prepared by Plaintiff's retained economist; and (2) the District's Answer to the Complaint) | 7.5 hours |
| Preparing a 19-page Joint Settlement Conference Statement | 16.25 hours |
| Preparing a 19-page Post Trial Brief (w/ Errata, See ECF 90-92) | 39.75 hours |
| Media | 2 hours |

For the most part, Ms. Mehta's hours strike the Court as reasonable given that they were the work of a single attorney.  The Court will adopt several of the changes requested by the District.

First, the Court will subtract the 2 hours that Ms. Mehta used to do media work related to the case.  *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 970 (1989) (eliminating fees attributable to time spent with the media).  Second, the Court finds that the 1.25 hours labeled "deciding who to serve" is appropriately subsumed in the 19 hours Ms. Mehta took to prepare the complaint.  Next, the 74.5 hours Ms. Mehta claimed on the preparation of a summary judgment motion strikes the Court, having

---

[1] Ms. Mehta avers that she calculated this task at 74.5 hours and that the District's calculation was in error.  ECF 111 at 4.

reviewed the Motion, as slightly excessive. Although it is true that Ms. Mehta did have to respond to the "16 Reasons Why" offered by the District, these responses were all governed by the Equal Pay Act and should not have been especially labor-intensive to prepare. Finally, the Court notes that the Motion was unsuccessful, and while the Court does not fault Ms. Mehta for moving for summary judgment, that result should have been foreseeable. Accordingly, the Court will deduct 4.5 hours, crediting Ms. Mehta for 70 hours on the summary judgment brief.

Finally, the District objects to six separate and ambiguous entries for "Exhibit Strategy" totaling 11.41 hours. While those entries could have been more specific, considering the number of exhibits involved in the trial, it is reasonable to believe that Ms. Mehta spent 11.41 hours planning for exhibit use at trial. And she confirms in reply that she did. ECF 111 at 4.

In total 7.75 hours will be deducted from Ms. Mehta's total requested time.

With respect to senior paralegal Elizabeth Johnson, the District objects to several of her time expenditures as noted below:

| "Team Emails" | 2.6 hours |
| Preparing Complaint | 1 hour |
| Review scanned documents, personnel file for document | 2.3 hours |

The Court disagrees that these 5.9 hours are duplicative or excessive. 2.6 hours seems a reasonable amount of time to spend on emails over all of trial preparation. The fact that Ms. Mehta prepared the complaint does not mean that it was unreasonable for a paralegal to spend an hour reviewing it. Ms. Johnson will receive her requested hours.

With respect to Kayla Webster, Defendants objects to her expenditures as noted below:

/ / /

/ / /

| ACTIVITY | HOURS |
|---|---|
| Reviewing Plaintiff's Personnel File (1361 Pages) – Attorney Mehta reported 1 hour for this same activity; Plaintiff's expert reported 3.9 hours to "Review Gomez personnel file and update report; send final draft to counsel and instructions to staff for final qualify control review; review data and calculate loss for sick days (difference between number of days benefit Mr. Black and Ms. Gomez)" | 21 |
| Reviewing Clif Black's Personnel File (906 Pages) | 28 |
| Research/download program to open RFP emails | 2 |
| "Rename/organize defendant's document production set two" | 26 |
| "Index/review defendants document production set two" | 47.8 |
| Work on Partial Motion For Summary Judgment | 9.4 |
| "Create record/evidence chronology for attorney" | 11 |
| Preparing Deposition Errata | 0.3 |
| Review Settlement Conference Statement (duplicative) | 1 |
| Preparing a 19-page Post Trial Brief (Create tables (1.8); Cite Check (4.0); Finalize post trial brief and tables (2.5) | 8.3 |
| "Retrieve docket sheet" | 4.1 |

Preliminarily, Ms. Webster acknowledges in reply that a task listed at 4.1 hours in fact took .1 hours. Accordingly, 4 hours will be deducted from her initial total time of 350.3. ECF 111-2. The District asserts that these remaining hours are excessive, but does not say why and to what extent these tasks are excessive. The Court sees some duplication of effort as to document production set two. Webster claims "Rename/organize defendant's document production set two" (26 hours) as well as "Index/review defendants document production set two" (47.8) for a total of 73.8 hours. Because both tasks involved organization of the same documents, the Court will subtract 13.8 hours for a total of 60 combined hours on those two tasks in addition to the four hours noted above for a total of 17.8 hours subtracted from her requested total.

United States District Court
Northern District of California

In summary, Ms. Mehta will receive fees for 501.8 hours-7.75 hours for a total of 494.05 hours.

Ms. Johnson will receive all of her requested hours, as the Court does not find them duplicative or excessive.  Accordingly, she will receive fees for 64.75 hours.

Ms. Webster will receive fees for 350.3-17.8 for a total of 332.5 hours.

Attorney Dan Siegel will receive all his requested fees for 7.1 hours of work.

Additionally, the Court will allow the full unobjected expert cost of $19,076.50 to Ms. Vanessa Hill, the Plaintiff's damages expert, and $5,473.70 for other costs.

### 2. Hourly Rate

The next question is the reasonableness of hourly rates.  As stated above, Ms. Mehta bills at $676; Ms. Johnson, a senior paralegal, bills at $300; Ms. Webster, a paralegal, bills at $250; and senior partner Dan Siegel at $919.

Courts consider the *Laffey Matrix* in establishing the hourly rates for counsel. Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 19-B, Recovery of Attorney Fees, 19:484:17.  From June 2021 to May 2022, the *Laffey Matrix* stated the rate for 20+ years of attorney experience was $919, and for eight to ten years, $676.  The District does not challenge the reasonableness of the rates.

The Court further finds that the rate of $300/hr. for a senior paralegal and $250/hr. for a paralegal is reasonable.  Given that Ms. Mehta was the only attorney on the trial team, the record indicates that each paralegal played a significant role in litigation and trial readiness.  Additionally, Ms. Webster sat with Ms. Mehta at trial and provided contemporaneous support.

The Court finds that that the requested rates are reasonable.

### B. Propriety of Requested Lodestar Multiplier

Gomez requests an attorney fee multiplier of 1.3 based on the quality of the representation and results obtained.  Having considered all relevant factors, the Court declines to apply a multiplier, despite the excellent and professional legal advocacy by her legal team.

United States District Court
Northern District of California

California law governs plaintiffs' motions for fees for California causes of action. *Ridgeway*, 269 F. Supp. 3d at 982. The lodestar amount is presumed to be the reasonable fee, and, therefore, "'a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts.'" *Summers v. Carvist Corp.*, 323 F. App'x 581, 582 (9th Cir. 2009) (quoting *Van Gerwen v. Guarantee Mut. Life. Co.*, 214 F.3d 1041, 1045 (9th Cir.2000)). "Adjustments [to the lodestar amount] must be carefully tailored . . . and [made] only to the extent a factor has not been subsumed within the lodestar calculation." *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2009) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)).

In considering departure from a presumptively reasonable lodestar calculation, courts within this circuit consider: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

The Court takes each of these factors in turn, concluding that, while it is a close call, these factors weigh against the imposition of a multiplier in this case.

First, the time and labor for Ms. Mehta was significant. She was the only trial attorney for Gomez. She researched and prepared all motions and engaged in significant settlement efforts with the District, which was represented by two skilled lawyers.

Second, the Court considers the novelty and difficulty of questions involved in the case. Although there were some complex aspects of this case, overall, the questions were not particularly novel or difficult. Both Ms. Mehta and Ms. Musell note that litigating

United States District Court
Northern District of California

against a public entity, like a school district, presents unique challenges. On this record, the Court believes that these challenges are adequately accounted for through the hours Ms. Mehta spent on them.

Third, the Court considers Ms. Mehta's skill. While she was undoubtedly a skillful advocate for her client, this case did not involve an unusual amount of skill for someone with her experience. Her experience is fairly compensated in her hourly rate.

Fourth, the Court considers the extent to which Ms. Mehta was precluded from working on other matters. Although the record is not particularly clear about that, her time records suggest that she was appropriately focused on this case in the months leading up to trial. In acknowledgement of that fact, the Court has validated the overwhelming majority of Ms. Mehta's hours, overruling most objections to them.

Fifth, the Court considers the customary fee. While the Court has been unable to locate an exactly equivalent case for comparison, the *Laffey* matrix suggests that Ms. Mehta's hourly rate is appropriate, and the Court has endeavored to limit excessiveness or duplication of hours where possible.

Sixth, the Court considers the form of the fee and the risk associated with it. Here, the fee was partially contingent, so Ms. Mehta took on some risk, but not as much as she might have. Additionally, Ms. Mehta argues that the risks she took on were exacerbated by the fact that a previous attorney and DFEH had withdrawn from the case. It is true that this led to some added risk. On the other hand, Ms. Mehta was able to use the work developed by the DFEH.

Seventh, the Court considers time pressure. Here, there was arguably some time pressure to file the case because of applicable statutes of limitation; but there is no evidence here that any of the facts of the case, or Ms. Gomez herself, created additional pressure. Ms. Mehta may have felt some time pressure as a result of court-imposed deadlines, but that is nearly always the case. A lodestar that accounts for the hours Ms. Mehta expended addresses those realities.

Eighth, the Court considers the results obtained. Here, there is no question that they

1    were excellent.  Gomez and her counsel prevailed at trial on each claim and obtained

2    significant monetary damages.  This is likely the factor that weighs most strongly in favor

3    of a multiplier.

4           Ninth, the Court considers the reputation, experience, and ability of the lawyer.  Ms.

5    Mehta is skillful and respected, and the Court has now observed her in victorious civil

6    trials early (*Preston v. City of Oakland*, No. 14-cv-2022 NC) and later in her career.  This

7    too is fairly compensated by the hourly rate.

8           Tenth, the Court considers the undesirability of the case, sometimes providing a

9    lodestar multiplier to incentivize attorneys to take on less popular, more difficult cases.

10   Such an incentive is not necessary here.  There is no reason to think that attorneys need to

11   be incentivized to take on gender discrimination as an issue, with a sympathetic set of facts

12   and clients.  It is certainly true that Ms. Mehta's victory conferred a public benefit of the

13   type that should be incentivized.

14          Eleventh, courts are instructed to consider the nature and length of the professional

15   relationship with the client.  All indicators are that Ms. Mehta had a positive and

16   productive relationship with Ms. Gomez.

17          Finally, Courts are instructed to canvass similar decisions to determine the propriety

18   of a lodestar multiplier.  A survey of single-plaintiff civil rights cases reveals somewhat

19   disparate results. Some courts have allowed lodestar multipliers, others have not.  *See, e.g.*,

20   *Kranson v. Fed. Express Corp.*, No. 11-cv-05826-YGR, 2013 WL 6503308, at *12-13

21   (N.D. Cal. Dec. 11, 2013) (allowing multiplier of 1.5 on the basis of contingency);

22   *Mitchell v. Chavez*, No. 13-cv-01324-DAD-EPG, 2018 WL 3218364, at *17 (E.D. Cal.

23   June 29, 2018) (not allowing 1.3 multiplier in civil rights case); *Newton v. Equilon

24   Enterprises, LLC*, 411 F. Supp. 3d 856 (N.D. Cal. 2019) (discrimination case, not allowing

25   1.75 multiplier); *Erickson v. Biogen, Inc.*, No. 18-cv-1029-JCC, 2020 WL 885743 (W.D.

26   Wash. Feb. 24, 2020) (gender discrimination case, allowing 1.5 multiplier).

27          Gomez's counsel cites *Polee v. Cent. Contra Costa Transit Auth.*, 516 F. Supp. 3d

28   993,1002 (N.D. Cal. 2021) as an example of a factually similar case where an upward

United States District Court
Northern District of California

10

multiplier was applied. There, Judge Illston applied a 1.2 multiplier in a single plaintiff discrimination case against a public entity. The Court found that there was contingent risk and preclusion of other opportunity. *Id.* at 1002. The Court there also found that counsel in that case had 33 years of experience, which is significantly more than Ms. Mehta has here, and, it appears, that case was taken on contingency.

Weighing all of those factors together, the Court concludes that no multiplier is necessary here and will accordingly allocate total fees and costs as follows:

| Name | Role | Rate | Hours | Total |
|------|------|------|-------|-------|
| Dan Siegel | Partner | $919 | 7.1 | $6,524.90 |
| Sonya Z. Mehta | Partner | $676 | 494.05 | $333,997.80 |
| Elizabeth Johnson | Senior Paralegal | $300 | 64.75 | $19,425 |
| Kayla Webster | Paralegal | $250 | 332.5 | $83,125 |
| Vanessa Hill | Expert | | | $19,076.50 |
| Other Costs | | | | $5,473.70 |
| | | | | **TOTAL: $467,622.90** |

**IT IS SO ORDERED.**

Dated: April 14, 2023

_____

NATHANAEL M. COUSINS
United States Magistrate Judge

11

EXHIBIT 3

Mehta hours

| Project | Date | Description | Duration |
|---------|------|-------------|----------|
| TJU | 2023-07-20 | Call with Retu to learn about and sign on to case | 0.5 |
| TJU | 2023-08-14 | TJU meeting with Retu to discuss next steps in | 0.25 |
| TJU | 2023-08-14 | Review complaint and file | 2 |
| TJU | 2023-08-17 | Review rules for filing MTD, legal research, editing, cite checking | 4 |
| TJU | 2023-08-19 | Edits to motion, additional research, RJN, proposed order, filing | 6 |
| TJU | 2023-08-19 | Final proofing and cite checks to motion | 2 |
| TJU | 2023-08-21 | Fill out and submit reimburse form for PHV | 0.25 |
| TJU | 2023-08-22 | Complete and file notice of interested parties | 0.25 |
| TJU | 2023-08-22 | Review chambers copies rules | 0.25 |
| TJU | 2023-08-22 | PHV reimburse follow up | 0.25 |
| TJU | 2023-08-29 | Antislapp legal research | 1 |
| TJU | 2023-08-29 | Review and finalize PHV documents | 1 |
| TJU | 2023-09-12 | AntiSLAPP legal research | 1.5 |
| TJU | 2023-10-05 | Review Medieval Times and draft Notice of supplemental authority | 2.75 |
| TJU | 2023-10-20 | Review Reply to OMTD | 0.5 |
| TJU | 2023-10-27 | Rule 11 research | 0.75 |
| TJU | 2023-11-01 | Draft remote request and declaration ISO | 1 |
| TJU | 2023-11-09 | Hearing and follow up | 1 |
| TJU | 2024-01-04 | Rule 11 research - timing | 0.5 |
| TJU | 2024-01-16 | Discussion of order and follow up tasks - attys fees options, Rule 11 | 0.5 |
| TJU | 2024-01-17 | Attys fees and rule 11 research - timing of filing | 1.5 |
| TJU | 2024-01-18 | 1927 sanctions | 0.25 |
| TJU | 2024-01-22 | Motion for attorneys fees (AF) research | 2.5 |
| TJU | 2024-01-22 | Motion for AF - Laffey and rates research | 0.5 |
| TJU | 2024-01-23 | Review Seth's dec | 0.25 |
| TJU | 2024-01-25 | Draft Motion for AF - intro and procedural history | 5 |
| TJU | 2024-01-25 | Review and integrate Singla dec into motion | 0.25 |
| TJU | 2024-01-25 | Review and integrate Goldstein dec into motion | 0.5 |
| TJU | 2024-01-25 | Relief sought hours worked review | 0.25 |
| TJU | 2024-01-25 | Continue to integrate decs into motion | 0.25 |
| TJU | 2024-01-25 | Draft argument | 3 |
| TJU | 2024-01-26 | Edit motion, check cites | 2 |
| TJU | 2024-01-26 | Call with Retu re dec and edits | 0.25 |
|  | 2024-01-26 | Final dec review and integration, proposed order | 1.25 |
|  |  | Estimate for reply brief and hearing | 12 |
|  |  | Total hours | 56 |
|  |  | **Hours at $777 rate** | **$43,317.75** |

1