Name _____
Address _____
City, State, Zip _____
Phone _____
Fax _____
E-Mail _____
☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☐ Retained

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFF(S), | CASE NUMBER: |
| v. | |
| DEFENDANT(S). | **NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):
   ORDER GRANTING DEFENDANT TRADER JOE'S
   UNITED'S MOTION TO DISMISS
☐ Judgment (specify):


☐ Other (specify):

Imposed or Filed on _____. Entered on the docket in this action on _____.

A copy of said judgment or order is attached hereto.

_____        _____
Date                            Signature
                                ☐ Appellant/ProSe   ☐ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

DAVID R. EBERHART (S.B. #195474)
deberhart@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:  +1 415 984 8700
Facsimile:  +1 415 984 8701

SCOTT W. PINK (S.B. #122383)
spink@omm.com
2765 Sand Hill Road
Menlo Park, California 94025-7019
Telephone:  +1 650 473 2600
Facsimile:  +1 650 473 2601

*Attorneys for Plaintiff Trader Joe's Company*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>TRADER JOE'S UNITED,<br><br>                    Defendant. | Case No. 2:23-cv-05664<br><br>**REPRESENTATION STATEMENT** |

Pursuant to Ninth Circuit Rule 3-2(b), Plaintiff Trader Joe's Company hereby identifies all parties to this action along with the names, addresses and telephone numbers of their respective counsel.

Plaintiff Trader Joe's Company, represented by:

1.     David R. Eberhart

       O'Melveny & Myers LLP

       Two Embarcadero Center, 28th Floor

       San Francisco, CA 94111

1 | Telephone: 415-984-8700

2 | 2. | Scott William Pink

3 | | O'Melveny & Myers LLP

4 | | 2765 Sand Hill Road

5 | | Menlo Park, CA 94025

6 | | Telephone: 650-473-2600

7 |

8 | Defendant Trader Joe's United, represented by:

9 | 1. | Dat Hoang Phan

10 | | Hennig Ruiz and Singh PC

11 | | 3600 Wilshire Boulevard Suite 1908

12 | | Los Angeles, CA 90010

13 | | Telephone: 213-310-8302

14 | 2. | Retu R. Singla

15 | | Julien Mirer Singla and Goldstein PLLC

16 | | One Whitehall Street, 16th Floor

17 | | New York, NY 10004

18 | | Telephone: 646-228-4719

19 | 3. | Seth L. Goldstein

20 | | Julien Mirer Singla and Goldstein PLLC

21 | | One Whitehall Street, 16th Floor

22 | | New York, NY 10004

23 | | Telephone: 646-460-1309

24 | 4. | Sonya Mehta

25 | | Siegel Yee Brunner and Mehta

26 | | 475 14th Street, Suite 500

27 | | Oakland, CA 94612

28 | | Telephone: 510-839-1200

REPRESENTATION STATEMENT

1   Dated: February 8, 2024                    O'MELVENY & MYERS LLP

2

3                                              By: */s/ David R. Eberhart*

4                                              David R. Eberhart
                                               Two Embarcadero Center, 28th Floor
5                                              San Francisco, California 94111-3823
                                               Telephone: 1-415-984-8700
6
                                               Scott W. Pink
7                                              2765 Sand Hill Road
                                               Menlo Park, California 94025-7019
8                                              Telephone:1-650-473-2600

9                                              *Attorneys for Plaintiff*
                                               *Trader Joe's Company*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11                                              Case No. 2:23-cv-05664-HDV-MARx

12   TRADER JOE'S COMPANY, a California
     corporation,
13                                              **ORDER GRANTING DEFENDANT
                                                TRADER JOE'S UNITED'S MOTION TO
14                          Plaintiff,          DISMISS PLAINTIFF'S COMPLAINT
                                                [20]**
15

16                  v.

17

18   TRADER JOE'S UNITED,

19

20                          Defendant.

21

22

23

24

25

26

27

28

1   **I.   INTRODUCTION**

2        Plaintiff Trader Joe's Company ("Trader Joe's") brings this suit against Defendant Trader

3   Joe's United ("the Union" or "TJU"), a union representing its workers, alleging trademark

4   infringement and related claims for designs on union merchandise such as buttons, mugs, t-shirts,

5   and tote bags sold on the Union's website.  Trader Joe's maintains that this is a purely commercial

6   dispute and that the Union's designs are causing consumer confusion and diluting the Trader Joe's

7   family of trademarks.

8        As a preliminary matter, the Court feels compelled to put legal formalisms to one side and

9   point out the obvious.  This action is undoubtedly related to an existing labor dispute, and it strains

10  credulity to believe that the present lawsuit—which itself comes dangerously close to the line of

11  Rule 11—would have been filed absent the ongoing organizing efforts that Trader Joe's employees

12  have mounted (successfully) in *multiple* locations across the country.  For that reason, the Court

13  *dismisses* Trader Joe's request for injunctive relief under the Norris-LaGuardia Act, which was

14  passed by Congress precisely to extract courts from the unfortunate business of issuing ostensibly

15  business-related injunctions in pending labor disputes.

16       But the Lanham Act makes no such distinction on the applicability of trademark law.  The

17  Court therefore analyzes the *Sleekcraft* factors and concludes that there is no likelihood of confusion

18  posed by the Union's campaign-related products.  As discussed more thoroughly below, the logos

19  used by the Union are in a different font, do not utilize the distinctive fruit basket design, apply

20  concentric rings of different proportions, and are applied to products that no reasonable consumer

21  could confuse as coming from Trader Joe's itself.

22       The Complaint is dismissed in its entirety.

23  **II.   BACKGROUND**

24       Plaintiff Trader Joe's operates a national chain of grocery stores.  Complaint ("Compl.") ¶ 14

25  [Dkt. No. 1].  Defendant Trader Joe's United is a labor union that represents certain Trader Joe's

26  employees.  Complaint ¶ 3.  Within the last two years, workers at multiple Trader Joe's store

27

28

locations across the country have unionized.[1]  The National Labor Relations Board (NLRB) has filed multiple complaints against Trader Joe's related to these union elections.[2]  On July 7, 2023, the NLRB issued a consolidated complaint against Trader Joe's for unfair labor practices including retaliation, interrogation, threats, and misrepresentation of the Union.  Six days later, Trader Joe's filed its Complaint in this action.

Trader Joe's owns multiple registered trademarks in connection with its brand.  *Id.* ¶¶ 1-2,



21; Registration Nos. 2,171,157; 4,001,533 (stylized word mark); 5,221,626 (design logo); *see also* 1,424,176; 1,422,216; 1,420,628; 1,421,310; 1,421,358; 2,160,601; 2,156,879; 2,158,990; 4,001,531

---

[1] Under Rule 201, the court can—in response to a request from a party or on its own—take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Fed. R. Evidence 201.  For example, courts "may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (citation omitted).  The Court takes judicial notice of the fact that workers at multiple Trader Joe's stores— including stores in Hadley, Massachusetts; Minneapolis, Minnesota; Brooklyn, New York; and Oakland, California—have held union elections since 2022, some of which resulted in the certification of Trader Joe's United as the exclusive collective-bargaining representative.

[2] Trader Joe's United also asks the Court to take judicial notice of two complaints against Trader Joe's issued by the NLRB.  The Court finds these public filings to be the proper subject of judicial notice and therefore grants Trader Joe's United's Request for Judicial Notice.  ("RJN") [Dkt. No. 21], Exhibits 1-2.

1   (typed word mark).  In addition to its food and beverage products, Trader Joe's sells in its stores

2   certain branded merchandise including Trader Joe's tote bags.  *Id.* ¶ 18.

3   　　The Union operates a website in connection with its organizing efforts, on which it sells to

4   website users mugs, apparel, buttons, and reusable tote bags bearing the Union name and designs

5   relating to their mission.  *Id.* ¶¶ 4, 26-28.

6

7

8     

9

10

11

12

13

14   　　Trader Joe's alleges that the Union's merchandise infringes on the Trader Joe's marks by

15   using Trader Joe's typed and stylized word mark, typeface and red coloring, and the concentric

16   circle design.  *Id.* ¶ 28.  Trader Joe's most specific allegation of infringement relates to the Union's

17   sale of reusable tote bags; the Union's tote bags allegedly infringe on Trader Joe's Trademark Reg.

18   No. 5,221,626, which covers "merchandise bags" in Class 16 and "[a]ll-purpose reusable carrying

19   bags" in Class 18.  *Id.* ¶ 29.

20   

21

22

23

24

25

26

27

28

4

1    Plaintiff alleges the Union is using the marks in a purely commercial fashion, resulting in a

2    likelihood of consumer confusion and impairment of the distinctiveness of Trader Joe's famous

3    marks.  *Id*. ¶ 6.  However, Trader Joe's does *not* challenge the Union's use of the phrase "Trader

4    Joe's" for the purpose of identifying Trader Joe's or communicating Defendant's message or using

5    the phrase "Trader Joe's United" for the purpose of identifying Defendant or communicating its

6    message.  *Id*. ¶¶ 35-36.

7    Trader Joe's brings five claims against the Union in connection with this alleged

8    infringement: (i) Federal Trademark Infringement under 15 U.S.C. §§ 1114-1118, 1125; (ii) Federal

9    Unfair Competition, False Association, and False Designation of Origin under 15 U.S.C. § 1125(a);

10   (iii) Federal Trademark Dilution under 15 U.S.C. § 1125(c); (iv) California Statutory Unfair

11   Competition under Cal. Bus. & Prof. Code § 17200, *et seq*.; and (v) California Common Law

12   Trademark Infringement and Unfair Competition.

13   **III.    LEGAL STANDARD**

14   The Union brings this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

15   12(b)(6)").  Rule 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim

16   upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain

17   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

18   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

19   (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

20   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

21   *Iqbal*, 556 U.S. at 678.

22   Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

23   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

24   While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned,

25   the defendant-unlawfully-harmed-me accusation."  *Iqbal,* 556 U.S. at 678.  A pleading is insufficient

26   if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of

27   action."  *Twombly*, 550 U.S. at 555; *see also Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the

28   elements of a cause of action, supported by mere conclusory statements, do not suffice.").

1    Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

2    facts to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 697 (quoting *Twombly,*

3    550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [his or her] claims ... across the line from

4    conceivable to plausible[,]" is the complaint properly dismissed. *Iqbal,* 556 U.S. at 680. While the

5    plausibility requirement is not akin to a probability requirement, it demands more than "a sheer

6    possibility that a defendant has acted unlawfully." *Id.* at 678. The determination of whether a

7    complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing

8    court to draw on its judicial experience and common sense." *Id.* at 679.

9    **IV.    DISCUSSION**

10       **A.  Injunctive Relief**

11       Trader Joe's' Complaint seeks injunctive relief[3] and asks this Court to enjoin the Union from

12   using the Trader Joe's marks or any similar marks and names in connection with the Union's

13   merchandise. *See* Compl. at 18:5-17 ("Prayer for Relief"). The Union's Motion seeks dismissal of

14   this claim for relief on the ground that it is expressly prohibited by the Norris-LaGuardia Act, 29

15   U.S.C. § 104, *et seq. See* Motion at 13-15.

16       Congress enacted the Norris–LaGuardia Act "to take the federal courts out of the labor

17   injunction business." *Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*, 779 F.3d 1069, 1073 (9th

18   Cir. 2015) (citing *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702,

19   712, 102 S.Ct. 2672 (1982)). Prior to its passage in 1932, federal courts routinely enjoined labor

20   activity at the behest of employers. *Burlington N. Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters Loc.*

21   *174*, 203 F.3d 703, 707 (9th Cir. 2000), *as amended* (Mar. 8, 2000) (citing Patrick Hardin, *The*

22   *Developing Labor Law* 7 (3d ed.1992)). This practice "enabled employers to defeat unions instantly

23   by preventing them from using self-help and destroying the momentum of strikes before substantive

24   legal rights were litigated." *Id.* In response to this "extraordinary problem", "Congress felt

25   compelled to take the 'extraordinary step of divesting federal courts of equitable jurisdiction' over

26   _____

27   [3] Generally, courts may grant injunctions "to prevent the violation of any right of the registrant of a
     mark registered in the Patent or Trademark Office." 15 U.S.C. § 1116(a).

28

[labor] disputes." *Aircraft Serv. Int'l, Inc.*, 779 F.3d at 1073 (citing *Burlington N. R.R. v. Bhd. of Maint. of Way Employees*, 481 U.S. 429, 437, 107 S.Ct. 1841 (1987)).  The Norris-LaGuardia Act provides that "[n]o court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute ... ." 29 U.S.C. § 104.

When considering whether the Norris-LaGuardia Act prevents the Court from issuing an injunction, the Court must determine whether the case is "involving or growing out of [a] labor dispute."  29 U.S.C. § 104.  In making such a determination, the Supreme Court stressed the "necessity of inquiry beyond the form" of the dispute to "its relative impact on the product market and the interests of union members."  *Am. Fed'n of Musicians of U.S. & Canada v. Carroll*, 391 U.S. 99, 107, 88 S. Ct. 1562, 1568 (1968) (quoting *Local Union No. 189, Amalgamated Meat Cutters etc. v. Jewel Tea Co*., 381 U.S. 676, 690, n.5, 85 S.Ct. 1596, 1602 (1965); *see also Marriott Corp. v. Great Am. Serv. Trades Council, AFL-CIO*, 552 F.2d 176, 179 (7th Cir. 1977) ("Following the Supreme Court's directive to look beyond the form of this complaint, it can readily be perceived that, whatever the merits of plaintiff's Lanham Act and other trademark claims, this dispute has a great impact on the interests of the unions, their members, and potential members."); *Silgan Containers LLC v. Int'l Ass'n of Machinists & Aerospace Workers*, AFL-CIO, No. 18-C-213, 2018 WL 5840766, at *3 (E.D. Wis. Nov. 8, 2018) ("Although Silgan argues that it 'is not using a trademark dispute to challenge or shut down the IAM organization efforts,' Pl.'s Resp. at 9, ECF No. 23, looking beyond the form of Silgan's claim it is apparent that the impact of the dispute on the interests of union members is significant.").

Applying this standard, and performing an "inquiry beyond the form" as directed by the Supreme Court, the Court finds that the present dispute unquestionably "involve[es] or grow[s] out of a labor dispute" within the meaning of 29 U.S.C. § 104.  Although a full record has not been developed at this early stage, the "relative impact" of online sales of campaign merchandise like buttons, t-shirts, and mugs on Trader Joe's product market is undoubtedly *de minimis*, and the potential chilling effect and other collateral impacts on union members resulting from these lawsuits can be significant.  In addition, the Court concludes based on the parties' recent history of collective-

1  bargaining disputes nationwide, the actions of the NLRB, and the **timing** of the present action that

2  this lawsuit undoubtedly arises out of a labor dispute.[4]   Indeed, following a tide of contentious

3  organizing efforts and mere days after the issuance of a consolidated NLRB complaint[5] was issued

4  against it, Trader Joe's filed this suit.  This history combined with the weakness of Plaintiff's claims

5  leads the Court to the conclusion that this case is an attempt to weaponize the legal system to gain

6  advantage in an ongoing labor dispute between Trader Joe's and the Union representing its workers.

7      In short, because this case arises out of a labor dispute between the parties, the Court is

8  divested of jurisdiction to issue injunctive relief on any of Plaintiff's claims.

9                    **B.  Trademark Infringement**

10     "To show trademark infringement under the Lanham Act, the plaintiff must show that (1) the

11  plaintiff owns a valid trademark; (2) the defendant is using the trademark without the plaintiff's

12  authorization; and (3) the defendant's use of the trademark likely confuses consumers."  *2Die4Kourt*

13  *v. Hillair Cap. Mgmt., LLC*, No. CV-16-01304-JVS-DFMx, 2016 WL 4487895, at *5 (C.D. Cal.

14  Aug. 23, 2016), *aff'd*, 692 F. App'x 366 (9th Cir. 2017) (citing *Applied Info. Scis. Corp. v. eBay.*

15  *Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)).

16     Plaintiff's other claims for Federal Unfair Competition, False Association, and False

17  Designation of Origin; California Statutory Unfair Competition; and California Common Law

18  Trademark Infringement and Unfair Competition are substantially congruent with its infringement

19  claim under the Lanham Act.  To state all three of these claims, a plaintiff must allege facts to

20

21  _____

22  [4] The Norris-LaGuardia Act defines a "labor dispute" to include "any controversy concerning terms
    or conditions of employment, or concerning the association or representation of persons in negotiating,

23  fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of
    whether or not the disputants stand in the proximate relation of employer and employee."  29 U.S.C.

24  § 113(c).

25  [5] The NLRB complaints evince an active labor dispute between the parties.  *See* RJN, Ex. 1-2.  The

26  Court need not take the allegations within the complaints as true to find as much.  *See Lee v. City of
    Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County*

27  *of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (explaining that to the extent any facts in documents
    subject to judicial notice are subject to reasonable dispute, the Court should not take judicial notice of

28  those facts).

demonstrate that (1) plaintiff has a valid, protectable trademark, and (2) that the defendant's use of that mark is likely to cause confusion. *See Applied Info. Scis. Corp.*, 511 F.3d at 969; *Grupo Gigange S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) ("As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis.'"); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) (explaining state common law claims of unfair competition [under California law] are "'substantially congruent' to claims made under the Lanham Act"); *Brookfield Comms., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) ("To establish a trademark infringement claim under section 32 of the Lanham Act or an unfair competition claim under section 43(a) of the Lanham Act, [plaintiff] must establish that [defendant] is using a mark confusingly similar to a valid, protectable trademark of [plaintiff's].").

### 1. Ownership and Unauthorized Use

A plaintiff's federal trademark registration is prima facie evidence that the plaintiff owns a valid trademark. 15 U.S.C. § 1057(b). Here, Trader Joe's produced federal registrations for the marks. *See* Complaint, Ex. A. The Union neither contests nor submits controverting evidence regarding ownership or validity. Nor does the Union argue Trader Joe's gave it permission to use its trademarks. Therefore, Trader Joe's has done enough at the pleading stage to establish it has a valid, protectable trademark.

### 2. Likelihood of Confusion

The issue central to this dispute is whether the Union's designs are likely to cause confusion. Courts consider eight factors to determine whether there is a likelihood of confusion: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) types of goods and degree of care consumers are likely to exercise when purchasing them; (7) intent of defendants in selecting the infringing mark; and (8) likelihood that the parties will expand their product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979), *abrogation in part on other grounds recognized by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003). The Ninth Circuit has described this eight-factor analysis as "'pliant,'

illustrative rather than exhaustive, and best understood as simply providing helpful guideposts." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054.[6]

Plaintiff argues that the likelihood of confusion inquiry is fact-intensive and thus ill-suited for disposition on a motion to dismiss here. Opp. at 11. This Court disagrees. Simply put, not "every infringement case involving a source-identifying use requires full-scale litigation.... [I]f, in a given case, a plaintiff fails to plausibly allege a likelihood of confusion, the district court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6)." *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 157, n.2, 143 S.Ct. 1578 (2023).

### a. Proximity or relatedness of goods

"Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark." *Sleekcraft*, 599 F.2d at 348, n.10 (citation omitted). In other words, the more likely that the public will mistakenly assume that the goods at issue are related, "the less similarity in the marks is requisite to a finding of a likelihood of confusion." *Id.* at 350.

The Complaint alleges that Trader Joe's "offers a variety of merchandise in addition to its core grocery products and retail services, including tote bags and other Trader Joe's branded goods." Compl. ¶ 18. But when pressed at oral argument, Plaintiff's counsel confirmed that tote bags are the only product type sold by both Trader Joe's and the Union. Transcript for Proceedings Held on Nov. 9, 2023 ("Hearing Transcript"), 5:17-21 [Dkt. No. 43]. There is no relation between Plaintiff's grocery services and goods and the Union's buttons and mugs.

But even more fundamentally, the context in which consumers find the Union's products minimizes the likelihood the public will mistakenly assume the goods at issue are related. In

---

[6] "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1054 (citing *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1130–32 (9th Cir.1998)).

considering the plausibility of allegations of consumer confusion, courts have placed importance on the "juxtaposition of the parties"—explaining that consumers are unlikely to confuse a union's use of an employer's trademark as a sign that the employer endorses the union's organizing efforts. *Silgan*, 2018 WL 5840766, at *4 ("Confusion is even less likely to occur here in the context of an attempt to unionize laborers given the inherent adversarial relationship between [the Union] and [the employer] in such a situation.").

The same is true here.  The only place customers can purchase TJU merchandise online is through the Union's website, which is openly critical of Plaintiff's labor practices—citing, for example, declining benefits and stagnating wages.  Motion at 7.  Courts have often found that a labor union's use of an employer's trademark as part of communications about the employer's labor practices is unlikely to cause confusion in context.  *See Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571, 579 (S.D.N.Y.) ("While the materials available on Defendants' websites may disparage Cintas, the likelihood that Cintas's actual or potential customers would be confused about who provides CINTAS goods and services is remote."), *aff'd*, 355 F. App'x 508 (2d Cir. 2009) (agreeing that union's use of employer's mark to criticize employer was not likely to cause confusion and did not violate Lanham Act even where website sold union merchandise such as "t-shirts, pins and other sundry items"); *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*, No. 2:22-CV-6050 (WJM), 2023 WL 6307464, at *5 (D.N.J. Sept. 28, 2023) (finding that given the union context and the criticism of the employer on the Union's website, "consumers are not likely to be confused as to similarity of function").  The Court finds the reasoning of these sister courts persuasive and concludes that this factor weighs strongly against a finding of likelihood of confusion.

### b.  Similarity of Marks

"The following axioms define and delimit the similarity analysis: (1) similarity is best evaluated by appearance, sound, and meaning; (2) marks should be considered in their entirety and as they appear in the marketplace; and (3) similarities weigh more heavily than differences." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127–28 (9th Cir. 2014) (citation omitted).

The Court does not see compelling similarities in any of the designs.  The product that comes closest is the parties' tote bags.  In evaluating the overall impression of the TJU designs and the

Trader Joe's marks side-by-side, the most apparent similarity is the use of the "Trader Joe's" name. But Trader Joe's is adamant here that it is ***not*** suing Trader Joe's United over the Union's use of the name "Trader Joe's". *See* Compl. ¶ 36 ("Trader Joe's … does not demand in this Complaint[] that Defendant stop using the phrase 'Trader Joe's' for the purpose of identifying Trader Joe's or communicating Defendant's message or using the phrase 'Trader Joe's United' for the purpose of identifying Defendant or communicating its message."); Opp. at 23 ("Trader Joe's does not seek to enjoin Defendant from using 'Trader Joe's' in its name or any of its union communications.).[7] Trader Joe's cannot have it both ways. They cannot state they take no issue with use of the name "Trader Joe's" but yet rely on its use to evince the similarity of the marks.

Setting aside the name "Trader Joe's" from Trader Joe's United's designs leaves only negligible similarities: the use of the color red and the circle logo shape. The rest is not similar. The Union's designs do not feature a fruit basket in the center of the circle; instead, there is the raised fist—widely recognized as a symbol of labor, social, and political movements—and a box cutter. The placement of text is also different. The spacing of the concentric rings is visibly different. And while the fonts may have a similar impact at a distance, the fonts are undisputedly not the same.[8] In short, there is simply no visible similarity apparent to the Court, and certainly none to plausibly cause a likelihood of confusion.

### c.  Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d

---

[7] Wisely so, given the authority rejecting such claims. *See, e.g.*, *Marriott Corp. v. Great Am. Serv. Trades Council, AFL-CIO*, 552 F.2d 176, 179–80 (7th Cir. 1977) ("The choice of a particular name by a labor organization … may serve to identify and publicize the employer which is the target of the campaign and to instill a measure of collective identity among employees. Such aims are legitimate union objectives in seeking the right to self-organization of employees under section 7 of the Labor Management Relations Act."); *Senco Prod., Inc. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 311 F. Supp. 590, 592 (S.D. Ohio 1970) (holding the court could not enjoin the union from using the employer's name "[s]o long as the employer's name is used in such a way that the casual reader would clearly understand that it was the Union and not the employer….").

[8] At oral argument, Trader Joe's counsel conceded that the fonts on the tote bags are different. Hearing Transcript, 8:16-19.

12

at 353.  To assess convergence, "courts consider whether the parties' customer bases overlap and how the parties advertise and market their products."  *Pom Wonderful*, 775 F.3d at 1130 (finding market convergence where both companies sold their products in supermarkets located throughout the United States).

The Union markets and sells its products online through its website.  Compl. ¶¶ 4, 30.  Trader Joe's promotes its products and services online, but sells products only in stores.  Compl. ¶ 16. Trader Joe's argues that because it also utilizes online promotion, the Court should recognize the marketing channels converge.  Opp. at 13.  However, the Court finds that the point of sale is most relevant on these particular facts.[9]  Consumers only encounter the Union's products in the context of its website, which is steeped in the language of labor activism.  While Trader Joe's also operates a website, consumers cannot purchase any Trader Joe's products online.  In-store grocery retail is the very core of Trader Joe's as a company.  Given this context, it is simply not plausible to imagine a reasonable consumer going to the Union's website, purchasing a Union-branded coffee mug, and mistakenly believing it to be sold by Trader Joe's.  Analyzed in its totality, this factor also weighs against a possible likelihood of confusion.

### d.  Types of Goods and Consumer Care when Purchasing

The Court also examines whether the types of goods overlap from the perspective of a "typical buyer exercising ordinary caution."  *Sleekcraft*, 599 F.2d at 353.  Courts sometimes look to the price of the products as indicia of consumer care.  "Unlike purchasers of expensive goods— whom we expect to be more discerning and less easily confused—purchasers of inexpensive goods

---

[9] While the Ninth Circuit has recognized that simultaneous use of the internet as a marketing channel exacerbates the likelihood of confusion, *see Brookfield Communications*, 174 F.3d at 1057, it has also observed in other cases that internet advertising alone is entitled to little weight.  *See Network Automation v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("Today, it would be the rare commercial retailer that did not advertise online, and the shared ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion."); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020 (9th Cir. 2004) ("PEI and the advertisers use identical marketing channels: the Internet.  More specifically, each of their sites appears on defendants' search results pages.  Given the broad use of the Internet today, the same could be said for countless companies.  Thus, this factor merits little weight.").

'are likely to exercise less care, thus making confusion more likely.'" *Pom Wonderful*, 775 F.3d at 1127 (citation omitted) (finding consumers were unlikely to exercise a high degree of care in purchasing beverages that cost between $1.99 and $2.29); *see Sleekcraft*, 599 F.2d at 353 (finding consumers were likely to exercise a high degree of care in purchasing high quality, expensive goods such as a racing boat). With respect to pricing, Plaintiff argues only that reusable tote bags, apparel, mugs, and buttons are "inherently inexpensive," Opp. at 13, and did not provide the Court with pricing information on its Trader Joe's-branded tote bags. The Union similarly did not provide pricing information on its products, but according to its website,[10] the Union sells tote bags for $32, tee-shirts for $32, sweatshirts for $60, mugs for $20, and buttons for $6. "No clear standard exists for analyzing moderately priced goods, such as non-designer clothing." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (quotations omitted) (finding that, with respect to moderately priced items such as the tee-shirts, shorts, and hats, the "degree of consumer care" factor favored neither party), *superseded by statute on other grounds*.

Beyond price, the context surrounding purchase of these goods shows that a reasonable buyer exercising ordinary caution would not be confused. To purchase TJU merchandise, consumers pass through Trader Joe's United's website, which contains a ".org" extension and clearly identifies itself as the website of a labor union. The website communicates the Union's message, which is openly critical of Trader Joe's' labor practices such as its declining benefits and stagnating wages. *See* Opp.

---

[10] Courts may properly consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see* Compl. ¶ 4, n.1 (citing the Trader Joe's United's website at https://store.traderjoesunited.org/). Public records and documents on publicly available websites are also proper subjects of judicial notice. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of publicly available websites, including publicly available websites archived using the Internet Archive's Wayback Machine). These statements and materials appeared on Defendant's publicly available website and are thus proper subjects for judicial notice. To the extent any facts on Defendant's website are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See, e.g.*, *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1323 (C.D. Cal. 2023) (taking judicial notice of third-party website for the limited purpose of establishing that the statements in the website were made, but not for the truth of the information therein that was reasonably in dispute).

at 7.  Even if a user found themselves on the Union's apparel page without navigating through the

TJU homepage, the apparel page includes at the top a conspicuous "About Us" link, which states the

webstore is administered on behalf of Trader Joe's United and contains links that direct the user back

to the Trader Joe's United homepage.  A typical buyer exercising ordinary caution would not believe

they were purchasing from Trader Joe's when navigating through the Union's website.

In summary, after a careful assessment of the *Sleekcraft* factors,[11] the Court concludes that

there is no plausible likelihood of confusion.  Therefore, the Court grants Defendant's Motion with

respect to Plaintiff's first, second, fourth, and fifth causes of action.  These claims are dismissed

---

[11] The Union does not contest the strength of the Trader Joe's family of marks.  *See* Compl. ¶ 20; Defendant Trader Joe's United's Reply in Support of Motion to Dismiss ("Reply"), at 4.  A mark's strength impacts the scope of its trademark protection.  *Sleekcraft*, 599 F.2d at 349 ("A strong mark is inherently distinctive…; it will be afforded the widest ambit of protection from infringing uses.").  The Court analyzes the *Sleekcraft* factors assuming Plaintiff's marks are afforded the greatest scope of protection.  Even so, the Union's designs are not infringing if the other factors do not demonstrate a likelihood of confusion.

The Court considered the remaining factors, but finds them relatively unimportant or neutral.

Evidence of actual confusion suggests that future confusion is more likely.  *Sleekcraft*, 599 F.2d at 352.  Failure to show actual confusion is not dispositive, *Pom Wonderful*, 775 F.3d at 1131, and therefore the absence of such allegations does not, by itself, make Plaintiff's Complaint deficient.  But because Plaintiff does not allege evidence of actual confusion, this factor is neutral in the likelihood of confusion analysis.

Courts also consider the intent of the alleged infringer.  If the defendant knowingly adopts an infringing mark to deceive the public, courts presume that such confusion will occur.  *Sleekcraft*, 559 F.2d at 354. But here, there are no allegations that the Union intended to cause confusion or deceive the public.  Plaintiff's lack of allegations regarding intent "neither undermines, nor advances its ability to prove likelihood of confusion."  *Pom Wonderful LLC*, 775 F.3d at 1131.

Finally, "a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing."  *Sleekcraft*, 599 F.2d at 354.  Trader Joe's alleges that absent an injunction "Defendant will continue and expand [its infringing] activities," Complaint ¶ 41, but provides no factual allegations plausibly showing why there is a likelihood of expansion.  The Court need not accept this conclusory prediction as true.  *See Twombly*, 550 U.S. at 545.  Plaintiff does not, nor would it be plausible to, allege that the Union will expand into grocery retail.  And Plaintiff does not argue that it plans to begin selling buttons and mugs.  Therefore, this factor does not help Plaintiff establish likelihood of confusion.

1   without leave to amend.[12]

2             **C.  Federal Trademark Dilution**

3         The Lanham Act also creates a cause of action for the dilution of famous marks, which can

4   succeed without likelihood of confusion.  *See* 15 U.S.C. § 1125(c); *Moseley v. V Secret Catalogue*,

5   Inc., 537 U.S. 418, 431, 123 S. Ct. 1115 (2003).  To plead a dilution claim, a plaintiff must allege

6   that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in

7   commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use

8   of the mark is likely to cause dilution by blurring or dilution by tarnishment."  *Upper Deck Co. v.*

9   *Flores*, 569 F. Supp. 3d 1050, 1065 (S.D. Cal. 2021).  Dilution by tarnishment occurs when an

10  "association arising from the similarity between" two marks—one of them famous—"harms the

11  reputation of the famous mark," and thus makes the other mark's owner liable.  15 U.S.C. §

12  1125(c)(2)(C).  Dilution by blurring arises from the similarity between marks—one of them

13  famous—"that impairs the distinctiveness of the famous mark."  15 U.S.C. § 1125(c)(2)(B); *see also*

14  *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 805 (9th Cir. 2002) (explaining blurring occurs

15  when another's use of a mark creates "the possibility that the mark will lose its ability to serve as a

16  unique identifier of the plaintiff's product").

17        Trader Joe's argues that the Union's designs are causing dilution by blurring.  Compl. ¶ 56.

18  But Trader Joe's fails to explain how that can be true based on these facts.  Blurring occurs when a

19  defendant's use creates the possibility the plaintiff's mark will lose its ability to serve as a unique

20  identifier of plaintiff's product.  Here, there is no secondary product or association that would make

21  the Trader Joe's marks lose their singularity.  *See Playboy Enterprises*, 279 F.3d at 806 ("Uses that

22  do not create an improper association between a mark and a new product but merely identify the

23  trademark holder's products should be excepted from the reach of the anti-dilution statute.  Such

24

25  _____

26  [12] Although generally a court granting a motion to dismiss should also grant leave to amend, "leave to
    amend need not be granted when 'any amendment would be an exercise in futility.'"  *Hoang v. Bank*
27  *of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d
    1293, 1298 (9th Cir. 1998)).  Because there is no plausible likelihood of confusion under these
28  circumstances, the Court concludes any amendment on these claims would be futile.

uses cause no harm."). Trader Joe's United is using the "Trader Joe's" name to refer to Trader Joe's itself.[13] *Id.* at 805 ("[N]ominative uses, by definition, do not dilute the trademarks."). The Court finds that there can be no trademark dilution by blurring on these facts, and therefore grants Defendant's Motion as to Plaintiff's third cause of action without leave to amend.[14]

## V.      CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss is granted.


Dated: January 12, 2024

_____
Hernán D. Vera
United States District Judge

---

[13] *See supra* note 3.
[14] *See supra* note 7.

17