1

LATHAM & WATKINS LLP
Jennifer L. Barry (SBN 228066)
 *jennifer.barry@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
T:  +1.858.523.5400 | F:+1.858.523.5450

2

3

4

5

Jessica Stebbins Bina (SBN 248485)
 *jessica.stebbinsbina@lw.com*
10250 Constellation Boulevard, Suite 1100
Los Angeles, CA 90067
T:  +1.424.653.5500 | F:+1.424.653.5501

6

7

8

9

10

Attorneys for Plaintiff
TRADER JOE'S COMPANY

11

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S UNITED,<br><br>Defendant. | Case No. 2:23-cv-05664-HDV-MARx<br><br>**OPPOSITION OF PLAINTIFF TRADER JOE'S COMPANY TO DEFENDANT TRADER JOE'S UNITED'S MOTION FOR ATTORNEYS' FEES**<br><br>Hon. Hernán D. Vera<br>Date: April 11, 2024<br>Ctrm: 5B<br>Time: 10:00 a.m.<br><br>Complaint Filed: July 13, 2023 |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**I.**    **INTRODUCTION**...................................................................... 1

**II.**   **BACKGROUND.** ...................................................................... 2

    1.    Trader Joe's And Its Famous Trademarks.............................. 2

    2.    Trader Joe's United And Its Use of Trader Joe's
        Trademarks. ......................................................................... 3

**III.**  **THIS CASE IS NOT EXCEPTIONAL.** ........................................ 4

    1.    The Complaint Was Not Frivolous Or
        Unreasonable. ...................................................................... 5

    2.    The Complaint Was Not Ill-Motivated.................................. 9

    3.    There is No Need for Compensation and
        Deterrence.......................................................................... 11

**IV.**   **TRADER JOE'S UNITED CLAIMS
UNREASONABLE AND IMPROPER FEES.**............................. 12

**V.**    **CONCLUSION**...................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

5

*3M Co. v. G7 Environment, LLC*,
6      No. CV 20-8892 PA, 2021 WL 2935659 (C.D. Cal. June 9, 2021) .................. 14

7

*Applied Information Sciences Corp. v. eBay, Inc.*,
     511 F.3d 966 (9th Cir. 2007) ....................................................................... 6, 7, 10
8

9

*Applied Underwriters, Inc. v. Lichtenegger*,
     No. 2:15-cv-02445-TLN-CKD, 2020 WL 5107627
10      (E.D. Cal. Aug. 31, 2020)................................................................................ 8, 9, 11

11

*Arcona, Inc. v. Farmacy Beauty, LLC*,
12      No. 2:17-cv-7058-ODW, 2021 WL 2414856
     (C.D. Cal. June 14, 2021)............................................................................... 14
13

*Banas v. Volcano Corp.*,
14      47 F. Supp. 3d 957 (N.D. Cal. 2014)................................................................... 13

15

*Breaking Code Silence v. Papciak*,
16      No. 21-cv-00918-BAS-DEB, 2022 WL 4241733
     (S.D. Cal. Sept. 13, 2022)............................................................................... 12
17

18

*Caiz v. Roberts*,
19      No. 15-09044-RSWL-AGRx, 2017 WL 830386
     (C.D. Cal. Mar. 2, 2017)................................................................................... 6
20

*Chloe SAS v. Sawabeh Information Services Co.*,
21      No. CV 11–04147 MMM, 2015 WL 12763541
     (C.D. Cal. June 22, 2015) ............................................................................... 14
22

23

*Classic Media, Inc. v. Mewborn*,
24      532 F.3d 978 (9th Cir. 2008) ........................................................................... 4

25

*Dominick v. Collectors Universe, Inc.*,
26      No. 2:12–cv–04782–ODW(CWx), 2013 WL 990825
     (C.D. Cal. Mar. 13, 2013).................................................................................. 6

27

28

**Page(s)**

*Gibson Guitar Corp. v. Viacom International, Inc.*,
   No. CV 12–10870 DDP, 2013 WL 3779593
   (C.D. Cal. July 18, 2013)................................................................................. 8

*Krikor v. Sports Mall LLC*,
   No. CV 22-5600-DMG, 2023 WL 3234333
   (C.D. Cal. Mar. 31, 2023)............................................................................... 6

*LegalForce, Inc. v. LegalZoom.com, Inc.*,
   No. 18-CV-07274-MMC, 2019 WL 1170777
   (N.D. Cal. Mar. 13, 2019) .............................................................................. 5

*McZeal v. Amazon.com Services LLC*,
   No. 2:21-cv-07093-SVW-RAO, 2022 WL 19521359
   (C.D. Cal. Aug. 16, 2022) ............................................................................ 11

*Medieval Times U.S.A., Inc. v. Medieval Times Performers United*,
   No. 2:22-cv-6050 (WJM), 2023 WL 6307464
   (D.N.J. Sept. 28, 2023) ................................................................................ 10

*Nutrivita Laboratories, Inc. v. VBS Distrib.*,
   160 F. Supp. 3d 1184 (C.D. Cal. 2016).................................................... 5, 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ....................................................................................... 5

*Partners for Health & Home, L.P. v. Yang*,
   488 B.R. 431 (C.D. Cal. 2012)...................................................................... 12

*Sarieddine v. Alien Visions E-Juice, Inc.*,
   No. CV 18-3658 PA, 2019 WL 4316245 (C.D. Cal. June 14, 2019) ................ 6

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   839 F.3d 1179 (9th Cir. 2016)....................................................................... 5

*Tamko Roofing Products, Inc. v. Ideal Roofing Co.*,
   61 U.S.P.Q.2d 1865 (1st Cir. 2002) ............................................................. 12

*Trader Joes Co. v. T-Shirt AT Fashion LLC*,
   No. CV 23-03010-MWF, 2023 WL 9420440
   (C.D. Cal. Dec. 20, 2023) ............................................................................ 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLAINTIFF'S OPP. TO MOT. FOR FEES
CASE NO. 2:23-cv-05664-HDV-MARx

Page(s)

*Welch v. Metropolitan Life Insurance Co.*,
  480 F.3d 942 (9th Cir. 2007) ............................................................................ 13

*Wynn v. Chanos*,
  No. 14-cv-04329-WHO, 2015 WL 3832561
  (N.D. Cal. June 19, 2015) ................................................................................ 14

*Yeager v. Airbus Group SE*,
  No. 8:19-CV-01793, 2021 WL 3260624 (C.D. Cal. July 1, 2021 ...................... 4

*Yeager v. Airbus Group SE*,
  No. 21-55162, 2022 WL 1175236 (9th Cir. Apr. 20, 2022) .............................. 4

*Zosma Ventures, Inc. v. Nazari*,
  No. CV 12-1404 RSWL (FFMx), 2013 WL 12129643
  (C.D. Cal. Sept. 23, 2013) ................................................................................ 6

**STATUTES**

15 U.S.C. § 1117(a) ................................................................................................ 4

**OTHER AUTHORITIES**

Gilson on Trademarks, § 4.03(4)(b) (2023) ............................................................ 7

Madison Malone Kircher, *Why Is This $2.99 Tote Bag Causing
  Chaos*, N.Y. Times (Mar. 5, 2024) ), https://www.nytimes.com/
  2024/03/05/style/trader-joes-mini-tote.html ...................................................... 3

S. Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132 ..................... 8

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.      INTRODUCTION.**

3          This is a trademark case.  And that is *all* it is.  Stripped of defendant Trader

4    Joe's United's rhetoric, and supplemented with facts that the Court did not permit

5    Trader Joe's to plead when it dismissed the complaint without leave to amend—a

6    decision Trader Joe's has appealed—there is nothing "exceptional" about this case.

7    Because the law only allows fees to be awarded in "exceptional" trademark cases,

8    Trader Joe's United's motion for extraordinary attorneys' fees should be denied.

9          Trader Joe's United argues that, through this action, Trader Joe's sought

10   solely to harass and threaten the union, and not to enforce its legitimate, uncontested

11   trademarks.  But the facts do not support this claim.  More fundamentally, Trader

12   Joe's United's position that Trader Joe's should, in effect, be punished merely for

13   bringing this lawsuit is fatally flawed.  Trader Joe's brought this case to protect its

14   trademark rights.  In bringing this action, Trader Joe's sought to be precise, to make

15   clear that it challenged only those specific products that it believed infringed its

16   strong and long-established trademarks.  Yet, contrary to defendant's arguments, it

17   is not the case that the *only* overlap in products branded by Trader Joe's and those

18   sold by Trader Joe's United was a single tote bag.  In fact, had the Court granted

19   Trader Joe's leave to amend, Trader Joe's would have demonstrated that it creates

20   branded T-shirts, cups, stickers, and buttons—all of which it routinely uses to

21   strengthen its brand and its indisputably strong TRADER JOE'S mark, and all of

22   which are infringed by Trader Joe's United's products.

23         Trader Joe's United's arguments that the Court can infer malicious intent from

24   the timing of Trader Joe's filing are likewise unfounded.  Trader Joe's raised the

25   issue of infringement days after the union began selling the allegedly infringing

26   products—and *before* the National Labor Relations Board filed its July 7, 2023

27   consolidated complaint against Trader Joe's.  That the Court rejected Trader Joe's

28

arguments does not mean that the case is somehow "exceptional" within the meaning of the Lanham Act.

Moreover, defendant's own motion demonstrates that this case was not frivolous.  Trader Joe's United claims that it needed to hire attorneys with nearly 70 years of combined experience to spend *almost 160 collective hours* and rack up over $150,000 in fees defending this suit—less than half of which was incurred in connection with its motion to dismiss, the only motion it actually filed prior to its fees motion.  *See* Dkt. 46 at 3, 11-12.  If Trader Joe's United is correct that its attorneys' fees were reasonable and necessary to defeat Trader Joe's claims, then it illustrates precisely why an award of fees *is not* proper here.  This case required thoughtful analysis, raised unique issues regarding labor and trademark law, and arose from a trademark owner's good faith attempt to enforce its rights.

Trader Joe's United did not and cannot meet its burden to establish that this is an "exceptional" case that warrants any award of attorneys' fees, much less one numbering six figures.

## II.    BACKGROUND.

1.    Trader Joe's And Its Famous Trademarks.

Trader Joe's is a national chain of neighborhood grocery stores that has become famous for its unique shopping experience and exciting—yet affordable—product selection.  It has 545 stores across the United States and a significant online presence, including social media pages, a digital version of the Fearless Flyer magazine, and the website at <traderjoes.com>, all of which offer extensive information about Trader Joe's products, recipes, how-to guides, and stories.

For decades, Trader Joe's has used its TRADER JOE'S trademarks to operate its grocery stores and to offer and sell a wide variety of consumer products.  Trader Joe's owns numerous federal trademark registrations for the TRADER JOE'S mark for retail store services and a wide variety of food and beverage products.  *See, e.g.*, Dkt. 1-1.  Having invested more than 50 years of effort and substantial sums in

1   promotions and advertisements, the TRADER JOE'S marks have gained nationwide

2   recognition, popularity, and fame.

3          As detailed in its complaint, Trader Joe's sells a number of branded products,

4   including tote bags so popular they were recently profiled in the *New York Times* as

5   a "hit" on social media.[1]   *See* Declaration of Jessica Stebbins Bina ("Bina Decl."),

6   Ex. 12.   The company distributes a branded "Fearless Flyer" newsletter, and

7   prominently marks its core grocery products and retail services with the TRADER

8   JOE'S mark.  Trader Joe's also creates additional branded products, like shirts, pins,

9   coffee cups, and stickers, for use in-store and at events, to support and strengthen its

10  brand.  *Id.* ¶¶ 3-4, Exs. 1-11.

11         In connection with the 2023 Tournament of Roses Parade, for example, Trader

12  Joe's created a square pin with the word "ONWARD!" together with the TRADER

13  JOE'S word mark and a small picture of a rose.  Other pin designs include garden

14  gnomes, steampunk motifs, pickle cars, teapots, wagon wheels, and circus tents.  *See*

15  *id.*, Exs. 3-6.

16                  2.      Trader Joe's United And Its Use of Trader Joe's Trademarks.

17         Defendant Trader Joe's United is a union that, beginning in 2022, has sought

18  to unionize certain Trader Joe's stores.  *See* Dkt. 1 at ¶¶ 10, 26.  To date, Trader

19  Joe's United has three affiliated Trader Joe's stores where employees have unionized

20  (out of 545 stores).

21         On June 23, 2023, Trader Joe's United announced the launch of its online

22  "merch" store, where it would offer "[s]hirts, buttons, totes, mugs, all right here."

23  *See* Bina Decl., Ex. 13; *see also* Dkt. 1 at ¶¶ 26-30.  And Trader Joe's United did in

24  fact begin selling shirts, buttons, totes, and mugs on its site.  Dkt. 1 at ¶¶ 26-29.

25  Some of these products included red lettering and a font very similar to Trader Joe's

26  registered TRADER JOE'S mark, while others included similar circular logos.  *See*

27

28  [1] Madison Malone Kircher, *Why Is This $2.99 Tote Bag Causing Chaos*, N.Y. Times (Mar. 5, 2024), https://www.nytimes.com/2024/03/05/style/trader-joes-mini-tote.html.

*id.*   On June 27, 2023—four days after Trader Joe's United began selling its products—Trader Joe's sent a letter requesting that it discontinue selling certain products that Trader Joe's believed infringed its trademarks.  *See id.* at ¶ 33.  Trader Joe's United nonetheless continued sales, and Trader Joe's thereafter filed this lawsuit on July 13, 2023.  *See generally id.* at ¶ 34.  Importantly, Trader Joe's did not challenge the union's right to use its name as part of the name of the union, nor did it broadly challenge the union's right to sell merchandise.  *See id.* at ¶ 36.  Rather, Trader Joe's alleged a narrow set of claims, isolating specific products that caused the greatest risk of confusion.  *See, e.g.*, *id.* at ¶¶ 28-29.

On August 21, 2023, Trader Joe's United moved to dismiss Trader Joe's complaint.  *See* Dkt. 20.  The Court held a hearing on November 9, 2023.  During the hearing, the Court noted that it was "plausible at least at this stage" that Trader Joe's United could create confusion with its tote bags, and that it was "torn about that."  *See* Dkt. 43 at 7:9-18.  The Court noted that both parties' briefs were "very good" and took the matter under submission.  *Id.* at 12:20-21.  Two months later, on January 12, 2024, the Court granted Trader Joe's United's motion and dismissed the case without leave to amend.  *See* Dkt. 45.  Trader Joe's United then filed this motion for fees on January 26, 2024.  *See* Dkt. 46.  On February 9, 2024, Trader Joe's appealed the Court's dismissal order.  *See Trader Joe's Co. v. Trader Joe's United*, No. 24-720 (9th Cir.).

## III.    THIS CASE IS NOT EXCEPTIONAL.

Under section 35(a) of the Lanham Act, a "court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  "The Ninth Circuit construes the exceptional cases requirement narrowly."  *Yeager v. Airbus Grp. SE*, No. 8:19-CV-01793, 2021 WL 3260624, at *3 (C.D. Cal. July 1, 2021), *aff'd*, No. 21-55162, 2022 WL 1175236 (9th Cir. Apr. 20, 2022) (citing *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 990 (9th Cir. 2008)).  The party seeking such exceptional fees bears the burden to show, by a preponderance of the

evidence, that the case was in fact "exceptional" within the meaning of the Lanham Act. *LegalForce, Inc. v. LegalZoom.com, Inc.*, No. 18-CV-07274-MMC, 2019 WL 1170777, at *2 (N.D. Cal. Mar. 13, 2019) (citing *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016)).

Trader Joe's United has not and cannot meet that burden here.   "[A]n 'exceptional' case is simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc.*, 839 F.3d at 1180.[2]  In making this determination, courts look to the "totality of the circumstances" and consider a non-exhaustive list of factors "including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1180-81 (internal quotation marks omitted) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014)). Trader Joe's United falls short on each factor it invokes.

### 1.    The Complaint Was Not Frivolous Or Unreasonable.

First, Trader Joe's United has not shown, and cannot show, that the complaint was frivolous or objectively unreasonable.  To support this factor, Trader Joe's United must have shown that Trader Joe's failed to raise even "debatable issues" through its claims. *See, e.g.*, *Nutrivita Labs., Inc. v. VBS Distrib.*, 160 F. Supp. 3d 1184, 1191-92 (C.D. Cal. 2016) (denying fees where plaintiff "faced an uphill battle in proving its trademark infringement claims," but "the Court [was] not persuaded that [the plaintiff] lacked *any* reasonable basis to believe the claim was worthwhile").  A "[plaintiff's] failure to persuade the Court of [its] case's merits does not make [its] positions unreasonable." *Sarieddine v. Alien Visions E-Juice,*

---

[2]  Trader Joe's United has not contended that this case was litigated in an unreasonable manner, so this opposition focuses on Trader Joe's United's failure to establish the unreasonableness of the claims at issue.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Inc.*, No. CV 18-3658 PA (MAAx), 2019 WL 4316245, at *2 (C.D. Cal. June 14, 2019); *see also Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007) (affirming denial of attorneys' fees and emphasizing plaintiff's case was not frivolous and "raised debatable issues"). Nor does the "the mere fact that a motion to dismiss is granted [] suffice to show that the claim was groundless." *Dominick v. Collectors Universe, Inc.*, No. 2:12–cv–04782–ODW(CWx), 2013 WL 990825, at *3 (C.D. Cal. Mar. 13, 2013); *see also Krikor v. Sports Mall LLC*, No. CV 22-5600-DMG (MRWx), 2023 WL 3234333, at *4 (C.D. Cal. Mar. 31, 2023) ("If every case in which a defendant prevailed on a motion or at trial on a plaintiff's claim required an award of attorneys' fees, the Lanham Act's instruction to courts to award attorneys' fees only in exceptional cases would be meaningless.").

In the short lifespan of this case, the strength of the TRADER JOE'S marks has never been in question. *See* Dkt. 45 at 15 n.11 ("The Union does not contest the strength of the Trader Joe's family of marks."). Likewise undisputed is the fame of the TRADER JOE'S marks, which of course is supportive of Trader Joe's federal trademark dilution claim. *See* Dkt. 1 ¶¶ 53-56 (explaining fame of TRADER JOE'S marks and risk of dilution due to Trader Joe's Union's conduct).

"Having a validly registered trademark entitle[d] [Trader Joe's] to police [its] mark" where "[it] reasonably believe[d] the mark has been infringed." *Caiz v. Roberts*, No. 15-09044-RSWL-AGRx, 2017 WL 830386, at *4 (C.D. Cal. Mar. 2, 2017). Furthermore, if Trader Joe's did not protect its marks (such as through claims for infringement and dilution), it would risk weakening the strength of its marks, or worse, losing its rights *entirely*. *See Zosma Ventures, Inc. v. Nazari*, No. CV 12-1404 RSWL (FFMx), 2013 WL 12129643, at *6 (C.D. Cal. Sept. 23, 2013) (explaining there is "more at stake than just the loss of profits or actual damages" in a trademark action, since failure to enforce trademark rights "may result in the weakening of these rights over time").

As a threshold matter, Trader Joe's did not lose its right to protect its famous marks merely by choosing not to challenge Trader Joe's United's use of the TRADER JOE'S mark to identify the union.  That narrow decision was not *carte blanche* to allow Trader Joe's United to use the TRADER JOE'S marks—including its word mark, its distinctive font mark, or its logo—in any way it so chooses.

Indeed, Trader Joe's United's use of the TRADER JOE'S mark goes far beyond the narrow decision given by Trader Joe's, and it does so in a way that Trader Joe's reasonably believes threatens its rights.  Trader Joe's United sells tote bags, t-shirts, mugs, and buttons emblazoned with "Trader Joe's United" logos and lettering. Dkt. 1 ¶¶ 26-29.  Trader Joe's likewise sells tote bags and—had it been permitted leave to amend—would have demonstrated that it also sells or provides TRADER JOE'S branded t-shirts, cups, and pins.  *See* Bina Decl., ¶¶ 3-4, Exs. 3-8.  Even were it otherwise, "a trademark owner may seek redress if another's use of the mark on different goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered goods."  *Applied Info. Scis. Corp.*, 511 F.3d at 971.  This is because "[a]lthough the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed."  *Id.*  Thus, "the owner [of a protectable registered mark] does not additionally have to show that the defendant's allegedly confusing use involves the *same* goods or services listed in the registration."  *Id.* at 972; *see also* Gilson on Trademarks, § 4.03(4)(b) (2023) ("[W]hen the plaintiff does base the action on use of his mark on the goods or services identified in the registration, the *scope of relief* will extend beyond those goods or services to an infringing mark used on any goods or services where confusion is likely to result.").  The products sold by Trader Joe's United are a natural expansion from, if not overlapping with,

1    products Trader Joe's offers, or has offered, under its own branding.  *See, e.g.*, Bina

2    Decl., Exs. 1-11.[3]

3          Even without the benefit of the further facts provided by amendment, Trader

4    Joe's claims raised, at the very least, "debatable issues," precluding a finding of

5    exceptionality.  *See Nutrivita Labs.*, 160 F. Supp. 3d at 1191-92; *see also Applied*

6    *Underwriters, Inc. v. Lichtenegger*, No. 2:15-cv-02445-TLN-CKD, 2020 WL

7    5107627, at *4 (E.D. Cal. Aug. 31, 2020) ("[W]here a party has set forth some good

8    faith argument in favor of its position, it will generally not be found to have advanced

9    exceptionally meritless claims").  As the Court itself acknowledged, consumer

10   confusion between Trader Joe's totes and Trader Joe's United totes was "plausible,"

11   leaving the Court "torn."  Dkt. 43 at 7:9-18.

12         The simple driving factor behind this case is Trader Joe's good faith belief

13   that the lawsuit was necessary to protect Trader Joe's valuable trademarks.  Not only

14   is Trader Joe's *required* to police its mark (lest it risk weakening, or losing

15   altogether, its rights), the legislative history of the attorneys' fees provision of the

16   Lanham Act explicitly encourages good faith enforcement efforts (like Trader

17   Joe's).  *See Gibson Guitar Corp. v. Viacom Int'l, Inc.*, No. CV 12–10870 DDP

18   (AJWx), 2013 WL 3779593, at *4 (C.D. Cal. July 18, 2013) (quoting S. Rep. No.

19   93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136) ("Mass demand, mass

20   advertising and the increasingly large variety of goods available make the

21   trademarks of crucial importance to manufacturers, distributors, and the consuming

22   public . . . .  Effective enforcement of trademark rights is left to the trademark owners

23   and they should, in the interest of preventing purchaser confusion, be encouraged to

24   enforce trademark rights.").  And courts have found that—even where a trademark

25   plaintiff's claims "were not particularly strong"—the fact that the plaintiff "has

26

27   [3] For example, while Trader Joe's does not presently sell coffee mugs, it does sell
     coffee, tea, and cocoa, "mug hanger" cookies that sit atop mugs, "mug mix" hot
28   chocolate, and hot cocoa stirring spoons emblazoned with mug designs.  Bina
     Decl. ¶ 4, Exs. 8-11.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

                                    8

registered trademarks" (as Trader Joe's does here) and that the defendant "used those trademarks" (as Trader Joe's United did here) "supports a finding that [the p]laintiff had a legitimate reason for bringing the lawsuit." *Applied Underwriters*, 2020 WL 5107627, at *5.

2.     The Complaint Was Not Ill-Motivated.

"A case is not exceptional and does not support an award of attorney fees where Plaintiff had a registered trademark, *his motivation in pursuing the lawsuit was to police and enforce his trademark rights*, and the case was not objectively unreasonable both in the factual and legal components of the case." *Id.* at *4 (emphasis added). Trader Joe's United argues that the Court is free to disregard the merits of Trader Joe's trademark claims because, in Trader Joe's United's view, Trader Joe's filed the lawsuit solely to gain an advantage in labor negotiations. This assertion, however, does not comport with the facts.

Trader Joe's United is correct that Trader Joe's filed its complaint on July 13, 2023, "six days after the NLRB issued a consolidated complaint against [plaintiff]." Dkt. 46 at 4:27-28. Trader Joe's, however, sent its first cease and desist letter to Trader Joe's United more than two weeks before, on June 27, 2023, *see* Dkt. 1 at ¶ 33, promptly after Trader Joe's United launched the infringing merchandise four days earlier on June 23, 2023, *see* Bina Decl., Ex. 13. Trader Joe's did not rush to file this suit upon an NLRB complaint; rather, the timing of these events is compelled by the separate but parallel timeline during which this trademark dispute developed. The Court should not infer bad faith from the timing of the lawsuit.

Moreover, the narrow scope of Trader Joe's complaint—far from demonstrating its lack of merit, as Trader Joe's United argues—demonstrated Trader Joe's attempt to *avoid* challenging the union's labor efforts and *limit* its claims to the issue of infringement. Trader Joe's did not assert a blanket challenge against Trader Joe's United's entire website or product line, much less its name (which at that point Trader Joe's United had used for more than a year without challenge from Trader

Joe's, *see* Dkt. 20 at 6)—instead focusing on a narrow subset of commercial goods for sale, *see* Dkt. 1 at ¶¶ 26-29.  And discovery would have shown those products' relationship to past and future Trader Joe branded materials.  *See, e.g.*, Bina Decl., Exs. 1-11;  *see also Trader Joes Co. v. T-Shirt AT Fashion LLC*, No. CV 23-03010-MWF (RAOx), 2023 WL 9420440, at *3 (C.D. Cal. Dec. 20, 2023) (granting default to Trader Joe's on trademark infringement claims regarding infringing use of TRADER JOE'S marks on t-shirts); *see also Applied Info. Scis. Corp.*, 511 F.3d at 971.

Trader Joe's United also argues that Trader Joe's complaint was frivolous because it was related to an existing labor dispute, and thus injunctive relief was prohibited by the Norris-LaGuardia Act.  *See* Dkt. 46 at 9.  As a threshold matter, and as the Court's order acknowledges, even if injunctive relief were unavailable, that would not render the complaint groundless: the claims must still be evaluated on the merits because other forms of relief remain available.  *See* Dkt. 45 at 2.[4] Trader Joe's United relies on a recent decision in the District of New Jersey, *Medieval Times U.S.A., Inc. v. Medieval Times Performers United*, No. 2:22-cv-6050 (WJM), 2023 WL 6307464 (D.N.J. Sept. 28, 2023).  *See* Dkt. 46 at 5.  *Medieval Times*, however, is non-binding out-of-circuit law, with a very different fact pattern. The plaintiff in that case was challenging the union's use of the MEDIEVAL TIMES mark in its union name, not on products or services.  *See* Dkt. 35 at 17.  Trader Joe's specifically *avoided* challenging Trader Joe's United's use of the TRADER JOE'S mark in its union name.  That decision to narrowly target the complaint shows reasonableness, not frivolousness.  The *Medieval Times* decision, moreover, was issued more than two months after Trader Joe's filed its complaint, so Trader Joe's United cannot credibly argue that the decision to file was somehow in contravention

---

[4] As noted above, Trader Joe's has appealed the dismissal of its complaint and expressly reserves all arguments with respect to the impact of the Norris-LaGuardia Act on this case.

1  of existing case law.  That case law (regardless of its aptness or precedential impact)
2  did not exist.

3        Trader Joe's United further asserts that Trader Joe's "admitted at oral
4  argument that its case came down to tote bags because that is the only product both
5  parties sell," implying that Trader Joe's could not possibly have been legitimately
6  threatened by Trader Joe's United.   Dkt. 46 at 9:18-19.   Not only is this a
7  mischaracterization of Trader Joe's counsel's statement (predecessor counsel simply
8  made a good faith factual concession that Trader Joe's did not sell buttons and mugs
9  *at that time*), Trader Joe's United omits the Court's commentary regarding the
10 parties' tote bags.  Specifically, the Court stated "I'm somewhat torn on that because
11 they're pretty famous tote bags" and "they're pretty well known for those tote bags."
12 *See* Dkt. 43 at 7:10-12.  Indeed, the Court further stated that "to put . . . that mark on
13 [a] tote bag can create some confusion, at least it's plausible at least at this stage
14 even if there are some clear differences."  *Id.* at 7:12-15.

15       Ultimately, Trader Joe's United offers no *evidence* that Trader Joe's was
16 maliciously motivated, and the facts demonstrate the opposite: the timing, limits,
17 and scope of the complaint yields one conclusion: this is a trademark case, not an
18 anti-union case. *See Applied Underwriters*, 2020 WL 5107627, at *5 (denying fees)
19 ("Defendants' argument rest[ed] heavily on the assumption that Plaintiff's lawsuit
20 was baseless and motivated by a bad faith intent to chill speech"; despite these
21 allegations, "the Court declines to conclude that Plaintiff pursued the litigation in
22 bad faith when it had a legitimate reason for filing a lawsuit and debatable issues
23 were litigated").

24         3.   <u>There is No Need for Compensation and Deterrence.</u>

25       Trader Joe's United has not shown that fees are necessary for compensation
26 and deterrence. *See McZeal v. Amazon.com Servs. LLC*, No. 2:21-cv-07093-SVW-
27 RAO, 2022 WL 19521359, at *2 (C.D. Cal. Aug. 16, 2022) ("[D]eterrent fee awards
28 should be used to dissuade the filing of baseless, frivolous lawsuits with a particular

1  focus on the frivolousness of the case at hand; even vexatious litigants should be

2  able to pursue potentially meritorious claims.").

3      Trader Joe's United argues that a fees award is necessary to deter companies

4  from anti-union behavior.  *See* Dkt. 46 at 11.  This argument overlooks the risk

5  associated with such an award:  it effectively licenses a company's intellectual

6  property rights to each corresponding union, as companies would be deterred from

7  protecting their rights for fear of facing sanctions or a fees motion.  This is

8  particularly troubling since in a trademark case, "trademark owners have more at

9  stake than just the damages or loss of profits in that case [because] [t]heir failure to

10  enforce their rights may result in the weakening of these rights over time." *Partners*

11  *for Health & Home, L.P. v. Yang*, 488 B.R. 431, 438 (C.D. Cal. 2012) (internal

12  quotation marks omitted) (quoting *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*,

13  61 U.S.P.Q.2d 1865, 1872 (1st Cir. 2002)).

14      Trader Joe's filed its complaint and asserted targeted, good faith arguments

15  regarding Trader Joe's United's infringing products.  It was obligated to do so, given

16  the risk associated with not properly enforcing its trademark rights.  Ultimately, the

17  Court was not persuaded, but "mere failure of proof on a claim or lack of success in

18  a lawsuit is not sufficient to warrant a finding that a case is exceptional." *Breaking*

19  *Code Silence v. Papciak*, No. 21-cv-00918-BAS-DEB, 2022 WL 4241733, at *4

20  (S.D. Cal. Sept. 13, 2022).  Thus the motion for fees should be denied.

21  **IV.   TRADER JOE'S UNITED CLAIMS UNREASONABLE AND**

22  **IMPROPER FEES.**

23      Not only does Trader Joe's United's motion fail on the merits, it seeks an

24  unreasonable amount of fees, built on (i) overlapping work performed by ***three***

25  partners, (ii)  ambiguous block-billed time entries that prevent a proper accounting

26  of how much time was spent on various distinct tasks, (iii) charges related to clerical

27  workstreams (e.g., *pro hac vice* applications, cite checking), and (iv) fees for

28  unprosecuted or abandoned projects.

Trader Joe's United seeks recovery of 160 hours at an hourly rate of $1,056 for attorneys Singla and Goldstein, and $777 for attorney Mehta—all partners. *See* Dkt. 46 at 11-12; Dkt. 47.  Trader Joe's United states that Singla has 23 years of labor and employment experience, Goldstein has over 30 years of labor and employment experience, and Mehta has ten years of labor and employment experience. Dkt. 46 at 12.  Trader Joe's United then argues that these three partners (with over 60 collective years of experience) needed to spend this extensive amount of hours, while simultaneously arguing that this was a frivolous, straightforward case.  It is not reasonable for Trader Joe's United to claim that it needed three partners to work on this matter *at all*, much less for this many hours on a supposedly "straightforward" case.[5]  The use of three partners was plainly inefficient, but more importantly it belies any claim that this was a frivolous case.

In addition to gross inefficiency, the requested fees are replete with ambiguous block billing, entries reflecting work that a more junior associate could have conducted at a lower rate, and charges for motions that were not filed or pursued.

The Ninth Circuit has explained that block billing may justify a reduction of up to 30% for block-billed time, *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007), because block billing makes it "impossible to determine whether the time requested for any one task was reasonable," *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 967 (N.D. Cal. 2014).  Trader Joe's United's fee table reflects block billing throughout.  *See, e.g.*, Dkt. 47 at 1-2 (block billing entries such as "Reviewed Kathryn Cahan email sent to Jamie Edwards regarding Trademark (TM) infringement and researched similar cases and found Medieval Times," "Reviewed 7.5.23 TJ letter from Cahan, case law research," and "Review rules for filing MTD, legal research, edit motion, cite checking").  This block billing groups various tasks

---

[5] The unreasonable nature of these excessive billing practices is further underscored by Trader Joe's United's own counsel's description of Trader Joe's United as "a fledgling and independent union of extremely modest resources."  Dkt. 46-1 ¶ 29.

1   and "makes it difficult for the court to determine how much time was actually spent
2   on particular work." *Chloe SAS v. Sawabeh Info. Servs. Co.*, No. CV 11–04147
3   MMM (MANx), 2015 WL 12763541, at *33 (C.D. Cal. June 22, 2015). Thus, the
4   Court should reject this block billed time and discount the requested fees
5   accordingly.

6      Additionally, courts can reduce the requested fees for excessive billing, such
7   as when a more senior attorney or partner performs work that a junior associate could
8   conduct. *See, e.g., Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-7058-ODW
9   (JPRx), 2021 WL 2414856, at *5 (C.D. Cal. June 14, 2021) (applying 25% reduction
10  to fees in part because "partners with over twenty years of experience billed for
11  performing tasks such as 'review[ing] pretrial documents and motions in limine and
12  assist[ing] with filing the same with the court'"); *see also Wynn v. Chanos*, No.
13  14-cv-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015) (reducing
14  fees by 25% in part because "given the sophistication of counsel and their substantial
15  billing rates, this case should have been litigated much more efficiently without
16  sacrificing quality" and "the unreasonable staffing of five skilled attorneys at high
17  rates for this motion practice"). Trader Joe's United used not one, but **three**, partners
18  to conduct work that could have been handled more efficiently by a less expensive
19  biller.

20     For example, *all* legal research was conducted by Singla, Mehta, and
21  Goldstein (*i.e.*, partners with decades of experience in labor/employment, not
22  trademark law), despite this purportedly being a "groundless trademark infringement
23  suit" in which Trader Joe's United could "easily meet its preponderance of the
24  evidence burden." *See* Dkt. 46 at 1, 9. Trader Joe's United similarly did not employ
25  any lower-priced attorneys or staff members to perform other routine tasks, such as
26  checking the docket, *see* Dkt. 47 at 1, cite checking, *see id.* at 2, filing, *see id.*, or
27  completing the *pro hac vice* process, *see id.* at 4. *See 3M Co. v. G7 Env't, LLC*, No.
28  CV 20-8892 PA (AFMx), 2021 WL 2935659, at *9 (C.D. Cal. June 9, 2021)

(reducing fee request and concluding that tasks such as reviewing orders, conducting research, and completing *pro hac vice* applications "could have been performed by a junior attorney and/or paralegal with a lower billing rate").

Finally, less than half of the fees Trader Joe's United seeks to recover actually related to its motion to dismiss, and it seeks nearly $24,000 in connection with Anti-SLAPP, Rule 11, and "1927 sanctions" research and drafting. *See* Dkt 47 at 4-5. These workstreams did not materialize into any filed motions, nor did this work relate to the motion to dismiss or this motion for fees. Trader Joe's United should not recover fees for unpursued projects.

In sum, if the Court is inclined to award any fees at all, it should discount the requested fees by at least fifty percent.

**V.    CONCLUSION.**

Trader Joe's respectfully requests that the Court deny Trader Joe's United's motion for attorneys' fees.


Dated:  March 21, 2024              LATHAM & WATKINS LLP


                                    By:  /s/ *Jennifer L. Barry*
                                         Jennifer L. Barry
                                         Jessica Stebbins Bina


                                    Attorneys for Plaintiff
                                    TRADER JOE'S COMPANY

1

**CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Trade Joe's Company, certifies that

3 this brief contains 4,970 words, which complies with the word limit of L.R. 11-6.1.

4

5 Dated:  March 21, 2024              By:   *Jennifer L. Barry*

6                                            Jennifer L. Barry

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28