SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Tel: 510-839-1200
Fax: 510-444-6698
sonyamehta@siegelyee.com

DAT HOANG PHAN, SBN 316813
HENNIG, KRAMER, RUIZ AND SINGH, LLP
3600 Wilshire Boulevard
Suite 1908
Los Angeles, CA 90010
Tel: 213-310-8301
Fax: 213-310-8302
dat@employmentattorneyla.com

RETU R. SINGLA, SBN 4162822
Tel: 646-228-4719
rsingla@workingpeopleslaw.com
SETH L. GOLDSTEIN, SBN 2160182
Tel: 646-460-1309
Fax: 251-319-2955
sgoldstein@workingpeopleslaw.com
JULIEN MIRER SINGLA AND GOLDSTEIN PLLC
One Whitehall Street, 16th Floor
New York, NY 10004
ADMITTED PRO HAC VICE

Attorneys for Defendant
TRADER JOE'S UNITED

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>             Plaintiff,<br><br>vs.<br><br>TRADER JOE'S UNITED,<br><br>             Defendant. | Case No. 2:23-cv-05664-HDV-MAR<br><br>**REPLY TO OPPOSITION TO DEFENDANT TRADER JOE'S UNITED'S MOTION FOR ATTORNEYS' FEES**<br><br>Hon. Hernán D. Vera<br>Date: April 11, 2024<br>Ctrm: 5B<br>Time: 10:00 a.m.<br><br>Complaint Filed: July 13, 2023<br>Complaint Dismissed: January 12, 2024 |

---

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Reply to Opposition to Defendant Trader Joe's United's Motion for Attorneys' Fees – 1

# REPLY

On January 12, 2024, this Court completely dismissed, without leave to amend, Plaintiff Trader Joe's Company's ("the Company") Complaint for trademark infringement and related claims against defendant Trader Joe's United ("the Union"). The Court, "point[ing] out the obvious," held that the Company filed suit in "an attempt to weaponize the legal system to gain advantage in an ongoing labor dispute between Trader Joe's and the Union representing its workers." Docket 45, Order Granting Defendant's Motion to Dismiss Plaintiff's Complaint, 2:8-12, 8:4-6.

It ruled that the Company failed to meet any *Sleekcraft* factor. "[T]he logos used by the Union are in a different font, do not utilize the distinctive fruit basket design, apply concentric rings of different proportions, and are applied to products that no reasonable consumer could confuse as coming from Trader Joe's itself." *Id.* at 2:18-21.

The Complaint was frivolous and improperly motivated. Thus, it was exceptional under the Lanham Act and fees are warranted.

The Complaint was baseless. The Order to Dismiss was clear that no reasonable consumer would be confused about the origin of these products. The Company now argues – for the first time - that it should have been permitted to amend its Complaint with an allegation that it "produces" T-shirts, cups, stickers, and buttons, and that the Union infringed upon all such products. Plaintiff's Opposition is not the venue for such arguments. If the Company has new facts and theories upon which to sue the Union, it can file a new Complaint. The issue here is whether its Complaint was groundless and improperly motivated, which it was.

Improper motivation is now the law of the case. Dkt. 45, 8:4-6, Company "weaponize[d] the legal system" in a labor dispute. Finally, the fees here are reasonable and documented. In the spirit of compromise, Defendant agrees to a 20% reduction.

# ARGUMENT

The Lanham Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party," considering the "totality of the

circumstances using a preponderance of the evidence standard" applied to the following "nonexclusive factors," including "(1) frivolousness; (2) motivation; (3) objective unreasonableness (both in the factual and legal components of the case); and (4) the need in particular circumstances to advance considerations of compensation and deterrence." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002); *Jackson v. Gaspar,* WL 2155975, at *4 (C.D. Cal. 2022).

### I. The Complaint was frivolous and improperly motivated and thus attorneys' fees are warranted under the Lanham Act.

#### A. It is the law of the case that Plaintiff's claims were baseless because this Court held there was *no* plausible likelihood of confusion.

This Court held that Plaintiff's claims were so implausible that it would not provide leave to amend and dismissed the Complaint at the 12(b)(6) stage. The Complaint was "dangerously close to the line of Rule 11." Dkt. 45, 2:8-12*, see also* FN 12, "there is no plausible likelihood of confusion." It held that Plaintiff failed to show any *MF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), factors.

Plaintiff's cases regarding exceptionality under the Lanham Act are easily distinguished. In *Nutrivita Lab'ys, Inc. v. VBS Distribution Inc.*, 160 F. Supp. 3d 1184, 1192 (C.D. Cal. 2016), *aff'd,* 697 F. App'x 559 (9th Cir. 2017), the Court affirmed that in deciding whether a Lanham Act complaint was not exceptional, "the key factor appears to be that the plaintiff raised 'debatable issues' *and* had a legitimate reason for bringing the lawsuit." *Emphasis added*. The parties there were business competitors in selling vitamins. VBS produced a vitamin bottle and Nutrivita accused VBS of "us[ing] the same color schemes, layout, almost identical fonts, and art to make the box and labels of [JN–7 Best] substantially similar and infringing [sic] of Arthro–7." *Id.* at 1187.

Here, the parties are not competitors, and Plaintiff's reason for filing suit was to unfairly gain an advantage in an ongoing labor dispute. In *Nutrivita*, "the fact that [Defendant] modified its product packaging is good reason to believe that there was something to [Plaintiff] Nutrivita's lawsuit, even if its trademark infringement claim was

1  not particularly strong." *Id*. "And, importantly, VBS makes no credible argument that
2  Nutrivita brought this claim in bad faith or to harass VBS with needless litigation." *Id*.
3  The court found no need for deterrence or compensation.
4        Here, the Union steadfastly maintained there was no plausible allegation of
5  confusion because the marks are dissimilar. Unlike in *Nutrivita*, this Court already held
6  that Trader Joe's Company was improperly motivated. Thus, there is a need for
7  deterrence through compensation.
8        In *Sarieddine v. Alien Visions E-Juice, Inc.*, WL 4316245, at *2 (C.D. Cal. 2019),
9  the court decided on *summary judgment* that the plaintiff had raised debatable issues.
10 This Court promptly and firmly dismissed this case at the motion to dismiss stage due to
11 the complete absence of plausible allegations, i.e., the total lack of debatable issues.
12       In *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007),
13 Applied sued E-Bay for using its trademarked phrase "SmartSearch" and won at
14 summary judgment. Here, the Company does not challenge the Union's use of the words
15 "Trader Joe's" and this Court dismissed its claims via 12(b)(6). *Applied* is inapplicable.
16       In *Dominick v. Collectors Universe, Inc.*, WL 990825, at *3 (C.D. Cal. 2013), the
17 court noted that the prevailing party on a motion to dismiss "ma[d]e no attempt to
18 analyze or even allude to how the language of that Order supports a finding that this
19 case was exceptional." Here, the motion to dismiss thoroughly explained why this
20 Complaint was "dangerously close" to sanctionable. Dkt. 20.
21       In *Krikor v. Sports Mall LLC*, WL 3234333, at *4 (C.D. Cal. 2023), the court
22 found that the plaintiff "raised novel issues concerning how the term 'in stock' should be
23 interpreted and presented evidence that some of Defendant's items were not 100%
24 authentic." Again, the case progressed to a summary judgment. Here, the Company
25 raised no novel issues at Complaint or hearing, and this Court found "***no*** plausible
26 likelihood of confusion." Dkt. 45, FN 12.
27       Plaintiff's argument that it had to file this baseless Complaint in order to "police
28 its mark" fails because the case law it cited required a *reasonable belief* in infringement.

Here, "no reasonable consumer could confuse" these products. Dkt. 45 at 2:18-21. *Caiz v. Roberts*, WL 830386, at *4 (C.D. Cal. 2017), "reasonably believed the mark ha[d] been infringed" when one defendant responded by removing content from their website; *Zosma Ventures, Inc. v. Nazari*, WL 12129643, at *6 (C.D. Cal. 2013), jury verdict of $500,000 indicating reasonableness of plaintiff's allegations; *Gibson Guitar Corp. v. Viacom Int'l, Inc.*, WL 3779593, at *4 (C.D. Cal. 2013), no evidence of improper purpose; *Partners for Health & Home, L.P. v. Yang*, 488 B.R. 431, 438 (C.D. Cal. 2012), attorneys' fees to plaintiff larger than infringer's profits indicates reasonableness of plaintiff's clams; *Breaking Code Silence v. Papciak*, WL 4241733, at *4 (S.D. Cal. 2022), Court found it "difficult … to conclude … frivolous," *contra* this case where Court found no plausible allegations of a likelihood of confusion.

### B. The leave to amend allegations are untrue and frivolous, and the theory as to "all goods" is misleading and previously disclaimed.

The Company improperly argued in its Opposition that had it been granted leave to amend, it would have "demonstrated that it also sells or provides TRADER JOE'S branded t-shirts, cups, and pins. See Bina Decl., ¶¶ 3-4, Exs. 3-8." Dkt. 59, 12:10-12. The Company already admitted it does not sell buttons/pins or mugs. Dkt. 43, 5:17-21. The "coffee cups" are disposable paper sample cups that Plaintiff does not sell. *Id.* at 33.



The T-shirts are employee uniforms which the Company does not sell, and the Opposition fails to present any supposedly similar T-shirts. Dkt. 60, *compare* employee uniform at 27 (third party selling uniform); TJU T-shirt with fist and boxcutter at 57. These are more frivolous, untrue allegations with which to waste the Court's and the Union's time and resources to gain an advantage in this ongoing labor dispute.

---

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Reply to Opposition to Defendant Trader Joe's United's Motion for Attorneys' Fees – 5

1   Then, Trader Joe's Company spills much ink claiming that the Union's supposed
2   use of the mark on any good, including "*different goods and services,*" is "likely to cause
3   confusion with the owner's use of the mark in connection with its registered goods," that
4   is, groceries. Dkt. 59, 12: 12-16. Not only is it totally implausible that the union tote bag
5   or mugs would confuse a consumer regarding the Company's groceries, but the
6   Company also previously expressly "disclaimed" this theory.

> "[This Complaint] does not concern all merchandise sold by Defendants. Indeed, Trader Joe's has disclaimed seeking any such remedies. Rather, Trader Joe's seeks remedies solely for the sale of certain goods that make use of Trader Joe's trademarks and stylizations that are likely to confuse consumers." Dkt. 35, Plaintiff's Opposition to Motion to Dismiss, 7:8-12.

Trader Joe's Company is free to enforce its trademark where reasonable and in good faith. It cited to *Applied Underwriters, Inc. v. Lichtenegger,* WL 5107627, at *4 (E.D. Cal. 2020)'s holding that where defendant used the trademark, even weak claims are justifiable. The Company stated that the Union "used [its] trademarks" (as Trader Joe's United did here)." Dkt. 59, 13:24-14:4. This Court expressly held that TJU did not use the Company's trademark.

The Company also belied its unreasonableness and improper motivation procedurally. It did not seek leave to amend its Complaint after the Court's ruling by a motion for reconsideration. Instead, it appealed at the Ninth Circuit Court of Appeals which will only consider the "the record before the trial judge *when his decision was made,*" not this new, disclaimed theory and unsupported, contradictory allegations. *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988), *emphasis in original*. Nevertheless, the Union will have to combat this frivolous filing in the appellate court. Plaintiff's action now represents the work of at least six highly paid and experienced trademark litigators who all know they are advancing frivolous arguments.

### C. It is the law of the case that Plaintiff acted with improper motivation.

In its Opposition, Trader Joe's Company fails to recognize the *Court's* holding that,

---

"[T]he potential chilling effect and other collateral impacts on union members resulting from these lawsuits can be significant. In addition, the Court concludes based on the parties' recent history of collective-bargaining disputes nationwide, the actions of the NLRB, and the ***timing*** of the present action that this lawsuit undoubtedly arises out of a labor dispute. Indeed, following a tide of contentious organizing efforts and mere days after the issuance of a consolidated NLRB complaint was issued against it, Trader Joe's filed this suit. This history combined with the weakness of Plaintiff's claims leads the Court to the conclusion that this case is an attempt to weaponize the legal system to gain advantage in an ongoing labor dispute between Trader Joe's and the Union representing its workers." Dkt. 45:8:4-6, *footnotes omitted, emphasis in original*.

The Company reduces the evidence of timing as improper motivation to only the July 2023 NLRB Complaint against it. It pretends to ignore what the Court easily saw, and what brave workers are up against every day from this employer that continuously violates federal labor law: a long history from 2022 on of the Company interfering with and obstructing union efforts, including firing organizing workers, frivolously objecting to election and NLRB decisions, and stalling bargaining for *years*, including simply refusing to bargain. Dkt. 20, Motion to Dismiss, 6:7-9:2.

Only months before June 27, 2023, when the Company first claimed its customers were concerned about the Union's pins and mugs, Plaintiff had refused to negotiate with the duly elected Oakland, Hadley, and Minneapolis bargaining units and opposed an NLRB union election Certification. *Id*. It filed this Complaint only six days after the NLRB issued multiple unfair labor practice complaints against it. *Id*.

The Company failed entirely to address the Union's argument regarding the improper political motivation of its Complaint. *Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1151 (N.D. Cal. 2017). Its anti-union animus motivated its legal actions here.

Remarkably, Plaintiff now claims its narrow allegations, ultimately about a tote bag, are evidence of its good faith, while it now attempts to extra-procedurally amend a claim in the appellate court to claim that all of the Union's "goods," i.e. union buttons, T-shirts, mugs, and tote bags infringe on the Company's trademark. Plaintiff claims "discovery would have shown those products' relationship to past and future Trader

1  Joe's branded materials." Dkt. 59, 15:2-8, citing cases which do not address nor support
2  this contention. Rather, in *Applied Underwriters, Inc. v. Lichtenegger,* WL 5107627, at
3  *4 (E.D. Cal. 2020), the court held there was a reasonable belief in infringement because
4  the plaintiff "presented evidence showing actual confusion from one of its customers in
5  support of its claims." The Company will never find someone who bought union
6  merchandise, on the union website, amidst the Union's claims of poor working
7  conditions, because they were confused and thought it was the Company's goods. Here,
8  there was no allegation of actual confusion because it is totally improbable on its face
9  and in the union context.

10     Plaintiff's citation to *Trader Joes Co. v. T-Shirt AT Fashion LLC,* WL 9420440, at
11 *1 (C.D. Cal. 2023) makes even less sense. In that case, the Company won on default at
12 the pleading stage, so that the court must enter judgement for plaintiff and take its
13 allegations as true. *Id*. It is irrelevant here.

14     The Company fails to address this Court's finding that *Medieval Times U.S.A.,*
15 *Inc. v. Medieval Times Performers United*, No. 2:22-CV-6050 (WJM), 2023 WL
16 6307464, at *5 (D.N.J. Sept. 28, 2023) was persuasive here because in both cases,
17 "given the union context and the criticism of the employer on the Union's website,
18 'consumers are not likely to be confused as to similarity of function.'" Dkt. 45, 11:11-21.
19 Although *Medieval Times* was issued after the instant Complaint was filed, the Union
20 noticed the Company about it, and the Company failed to withdraw its Complaint.
21 Indeed, it is now appealing this Court's dismissal of its baseless pleading.

22     Plaintiff attempts to rely on the hearing transcript. This Court was clear that it
23 was not ruling from the bench (Dkt. 43, 8:21-9:17), and its issued decision is that the
24 Complaint's allegations were not plausible, the suit was likely to chill workers, and "an
25 attempt to weaponize the legal system to gain advantage in an ongoing labor dispute
26 between Trader Joe's and the Union representing its workers."Dkt. 45, 8:4-6.

27     While the Court expressed being "torn" about why the Union chose tote bags,
28 Defendant's attorney Retu Singla compellingly summarized why the tote bags were

---

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Reply to Opposition to Defendant Trader Joe's United's Motion for Attorneys' Fees – 8

about the labor dispute and could not lead to customer confusion. "Tote bags – used by consumers when they're shopping at Trader Joe's stores that are in support of the union are a way for the union to be able to not only communicate its labor dispute but elicit support for its labor dispute with the Plaintiff." Dkt. 43, 7:9-25. It appears this resolved the concern because this Court issued a powerful and decisive Order dismissing the Complaint based on lack of merit and improper motivation.

There is overwhelming evidence of improper motive here, which unfortunately continues in Plaintiff's Opposition. The Union met the preponderance standard here.

### D. Deterrence is necessary and compensation is warranted here.

This Complaint was objectively baseless and improperly motivated and such conduct should be deterred. District courts are more than capable of determining when trademark allegations are not plausible and improperly motivated, as this Court did here. The Union has met the Lanham Act requirements and engaged in a great deal of legal work to fight Plaintiff's meritless allegations, and thus fees are appropriate.

## II. Fees were reasonable and Defendant reduces them by 20%.

The Company does not dispute Defendant's attorneys' rates. Rather, it unartfully argued that since the Complaint was frivolous, it should have been simple to defeat. It complains that Defendant did not need three partners, could have used junior attorneys, "ambiguous block billing," fees for clerical work, and charges for motions not filed.

In the spirit of compromise, Defendant reduces its original request of $150,162.83 by 20%, or $30,032.57, for a total of $120,130.26.

As to Plaintiff's arguments, Defendant reasonably calculated and sought fees. First, it is axiomatic that frivolous endeavors still require significant time and resources to fight. While baseless and in bad faith, the Complaint alleged trademark infringement on multiple items and included five causes of action. Even in replying to this Opposition, Plaintiff cited around 30 cases that Defendant spent time distinguishing. As the saying goes, "A lie travels around the globe while the truth is putting on its shoes." It took many hours to untangle Plaintiff's frivolous claims.

Next, three partners[1] were required because this case required expertise in federal law and procedure, labor law, civil litigation, and to become familiar with trademark law. Each attorney brought specialized skills in these areas. "I find that it is reasonable to retain both a longtime law firm that is familiar with a client and a specialist in the litigation at hand." *Wynn v. Chanos,* WL 3832561, at *3 (N.D. Cal. 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017).

Plaintiff identified checking the docket, cite checking, and the *pro hac vice* process as less skilled work. Defendant found about 6.5 hours of such work. This too is addressed by the 20% reduction.

"'Block billing' is the time-keeping method [of entering] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). "[B]lock-billing is not inappropriate *per se,* if the party seeking fees provides enough information to reveal whether the amount of time spent performing tasks was reasonable." *Wynn* at *4.

In *Welch,* the court did not approve block billing 8.75-hours for discovery and an intra-office conference and reduced it to four hours finding it was not clear that discovery was appropriate. *Id.* at 949. In *Arcona*, attorneys billed "14.5 to 16.5 hours in a single time entry for work performed on several tasks." *Arcona, Inc. v. Farmacy Beauty, LLC*, WL 2414856, at *4 (C.D. Cal. 2021), *aff'd*, WL 1486822 (9th Cir. 2022).

Here, most of the so-called block billing is for less than an hour and the tasks are sufficiently described. The largest block billing is four hours by Mehta to "[r]eview rules for filing MTD, legal research, edit motion, cite checking," and six hours for "[e]dits to motion, additional research, RJN, proposed order, filing." These tasks are reasonably described and related, and took reasonable time.

Again, the 20% reduction addresses any concern.

---

[1] The Union is poor, but rates are determined by "reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

1  Finally, Plaintiff argued, without authority, that fees should only be for the
2  motion to dismiss. The Union should receive its fees defending against this case in its
3  entirety. Fees awarded are at the court's discretion and the standard of review is abuse
4  of discretion. *SunEarth, Inc. v. Sun Earth Solar Power Co.,* 839 F.3d 1179, 1181 (9th Cir.
5  2016). "The number of hours reasonably expended on a matter includes time spent
6  drafting and revising pleadings, meeting with clients, preparing the case for trial and
7  handling an appeal (if any)." Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 19-B,
8  Recovery of Attorney Fees. Time spent on claims intertwined with the Lanham Act, as
9  here, is recoverable. *Jackson v. Gaspar,* WL 2155975, at *4 (C.D. Cal. 2022); Dkt. 45,
10 8:16-9:11, claims were "substantially congruent."

11  Thus, the focus is on the claims that Plaintiff brought, and encompasses all
12 reasonable labor expended to defeat it. Defendant researched anti-SLAPP (2.5 hours)
13 and 24 USC 1927 (0.25) to determine what motions for sanctions or fees would be
14 available. Rule 11, which took almost 18 hours, included research, drafting, meeting and
15 conferring, and limited discussion (one hour for which Mehta did not bill). This is a
16 reasonable amount of time, reasonably described, and reasonably related to the Lanham
17 Act claims as it was fair notice to Plaintiff to withdraw its claims. Defendant reasonably
18 expended the hours requested, and agreed to a 20% reduction.

19  In sum, Plaintiff's action was frivolous and improperly motivated. Defendant's
20 fees are reasonable, and it would serve deterrence to award them.

Dated: March 27, 2024

SIEGEL, YEE, BRUNNER & MEHTA
By: ___/s/ Sonya Z. Mehta___
  Sonya Z. Mehta

JULIEN MIRER SINGLA & GOLDSTEIN PLLC
By: ___/s/ Retu Singla_____
  Retu Singla
By: ___/s/ Seth Goldstein_____
  Seth Goldstein

Attorneys for Defendant
TRADER JOE'S UNITED

*Trader Joe's Company v. Trader Joe's United*, Case No. 2:23-cv-05664-HDV-MAR
Reply to Opposition to Defendant Trader Joe's United's Motion for Attorneys' Fees – 11