UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADER JOE'S COMPANY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRADER JOE'S UNITED,<br><br>Defendant. | Case No. 2:23-cv-05664-HDV-MARx<br><br>**ORDER GRANTING IN PART DEFENDANT TRADER JOE'S UNITED'S MOTION FOR ATTORNEYS' FEES [46]** |

## I. INTRODUCTION

Plaintiff Trader Joe's Company ("Trader Joe's") filed the present suit against Defendant Trader Joe's United ("the Union" or "TJU") alleging trademark infringement and related claims for designs on union merchandise including buttons, mugs, t-shirts, and tote bags sold on the Union's organizing website. The Union filed a Motion to Dismiss the Complaint, [Dkt. No. 20], which this Court granted on January 12, 2024, [Dkt. No. 45]. The Union now moves for attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a). ("Motion") [Dkt. No. 46].

The Motion is granted. In dismissing Trader Joe's Complaint, the Court concluded that the present action related to an existing labor dispute and lacked merit because no reasonable consumer could plausibly be confused as to the source of the Union's labor-themed and visually distinct merchandise. For those reasons, the present action is considered exceptional under the Lanham Act because it "stands out" in terms of its lack of substantive merit and the manner in which the case was litigated. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The Court therefore awards attorneys' fees to the Union in the amount of $112,622.12.

## II. BACKGROUND

The factual background of this case is discussed in the Court's Order Granting Defendant's Motion to Dismiss Plaintiff's Complaint. ("Dismissal Order") [Dkt. No. 45], at 2-5. The Court will not repeat all those details here, except to summarize the basics of the dispute. Plaintiff Trader Joe's operates a national chain of grocery stores and owns multiple registered trademarks in connection with its brand. Complaint ("Compl.") [Dkt. No. 1] ¶¶ 1-2, 14. Defendant Trader Joe's United is a labor union that represents certain Trader Joe's employees. *Id.* ¶ 3. The Union sells on its website campaign-related merchandise including buttons, mugs, apparel, and tote bags bearing the Union name and designs related to its mission. *Id.* ¶¶ 4, 26-28. Trader Joe's brought claims for trademark infringement, trademark dilution, and unfair competition relating to this Union merchandise.

Trader Joe's, of course, maintains that the present case is a purely commercial dispute and that the Union's designs are causing consumer confusion and diluting the Trader Joe's family of trademarks. However, as the Court recognized in its Order, the parties are engaged in ongoing labor

2

disputes related to TJU's recent unionization efforts. *See* Dismissal Order at 7-8. Shortly before Trader Joe's filed this case, the National Labor Relations Board (NLRB) issued a complaint against Trader Joe's for unfair labor practices including retaliation, interrogation, threats, and misrepresentations allegedly made during the recent Union elections. *See id*. at 3, n.2.

### III. LEGAL STANDARD

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179, 1181 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 572 U.S. 545, 554 (2014)) (extending the Supreme Court's directives in *Octane* to the attorneys fee analysis under the Lanham Act).

In determining whether a case is "exceptional," the Court, using a preponderance of the evidence standard, considers a "'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness, LLC*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 n.19 (1994)); *see also SunEarth, Inc.*, 839 F.3d at 1181.

### IV. DISCUSSION

#### A. Eligibility for Fees Under the Lanham Act

"[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness, LLC*, 572 U.S. at 555. Both are presented here. In its Dismissal Order, the Court found Trader Joe's' allegations of likelihood of confusion to be exceptionally weak. Additionally, the Court—in the context of considering whether the Norris-LaGuardia Act's allowed the Court to issue injunctive relief—found the case to be related to an ongoing labor dispute. These findings set this case apart.

The Dismissal Order evaluates more comprehensively the myriad reasons supporting the

3

Court's finding that there can be no likelihood of confusion, even assuming as true all the allegations in the Complaint. But the Court reiterates two important considerations here. First, the similarities between Trader Joe's marks and the Union's designs are negligible. Setting aside the Union's use of the name "Trader Joe's," which Trader Joe's does not challenge, all that remains are two red concentric circles. *See* Dismissal Order at 11-12. And even those concentric circles are of different ratios. *Id*. That simply cannot be enough to show similarity of the marks—a salient factor in the *Sleekcraft* analysis. Moreover, as explained more thoroughly in the Dismissal Order, the Union's merchandise is sold on the Trader Joe's United .org website which openly communicates the Union's identity, mission, and adversarial relationship to Trader Joe's. *See id*. at 10-11, 13, 14-15. The Court also found Trader Joe's trademark dilution by blurring claim was predicated on nominative uses and therefore failed as a matter of law. *Id*. at 16-17. For these reasons and others, Trader Joe's claims were found to be deficient even under a Rule 12(b)(6) standard.

As to Trader Joe's motivation in bringing the suit, the Court cannot ignore the obvious connection to the underlying labor dispute. *See id*. at 3, n.1-2; *id*. at 7-8. Recognizing the extensive and ongoing legal battles over the Union's organizing efforts at multiple stores, Trader Joe's claim that it was genuinely concerned about the dilution of its brand resulting from these trivial campaign mugs and buttons cannot be taken seriously. Indeed, courts have inferred improper motivation where weak claims were brought during an "unrelated" ongoing conflict between the parties. *See Elem Indian Colony of Pomo Indians of the Sulphur Bank Rancheria v. Ceiba Legal, LLP*, 230 F. Supp. 3d 1146, 1151 (N.D. Cal. 2017) (finding Plaintiff's meritless trademark claims against competing tribal faction more troubling "in light of the possibility, given the timing of the complaint, that plaintiff brought this action to suppress political opposition").

Relatedly, this request for fees presents squarely the need for deterrence—a policy consideration that the law allows in this context. *See SunEarth, Inc.*, 839 F.3d at 1181. As the Court recognized in its Dismissal Order, suits against unions arising out of labor disputes have a significant chilling effect and other collateral impacts on union members. Dismissal Order at 7. Employers should be discouraged from bringing meritless claims against unions they are challenging at the ballot box.

4

1  Considering the totality of the circumstances and applying a preponderance of the evidence
2  standard, the Court finds that this case is exceptional due to the inherent weakness of the claims, the
3  obvious motivation behind the suit, and the need for compensation and deterrence. For these
4  reasons, the Union is entitled to reasonable attorneys' fees as the prevailing parties under the
5  Lanham Act's fee-shifting provision. 15 U.S.C. § 1117(a).

**B.  Calculation of Attorneys' Fees**

A determination of an attorneys' fee award begins by calculating the "lodestar." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000). To do so, a court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). District courts "may exclude from the fee requests any hours that are 'excessive, redundant, or otherwise unnecessary,'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), and may rely "on their own knowledge of customary rates and their experience concerning reasonable and proper fees," *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

In its Motion, the Union requests recovery of 160 hours at an hourly rate of hourly rate of $1,056 for attorneys Singla and Goldstein, and $777 for attorney Mehta. Motion at 11-12. The Court finds these rates reasonable given the years of experience and qualifications of counsel. Singla has 23 years of experience, Singla Decl. ¶ 4, Goldstein has over 30 years, Goldstein Decl. ¶ 4, and Mehta has ten years of experience, Mehta Decl. ¶ 36. And each brings significant relevant experience, which is reflected in the requested hourly rates.

However, the Court finds that the fee request includes some entries for tasks that could have been accomplished more efficiently by non-lawyers or less experienced associates. Tasks such as proofing and cite checking motions, reviewing filing rules, checking the docket, and preparing and submitting pro hac vice applications need not be completed by partners with decades of experience. After reviewing each of the time entries submitted, the Court finds based on its own calculations that a reduction of 25% is appropriate to address this deficiency—a common reduction applied by district courts in this district and elsewhere for this type of issue. *See, e.g., Arcona, Inc. v. Farmacy*

5

*Beauty, LLC*, No. 2:17-CV-7058-ODW-JPRx, 2021 WL 2414856, at *5 (C.D. Cal. June 14, 2021), *aff'd*, No. 21-55678, 2022 WL 1486822 (9th Cir. May 11, 2022) (applying a 25 percent reduction across-the-board of hours worked where certain tasks handled by experienced partners could have been handled by a junior associate billing at a lower rate); *Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *6 (N.D. Cal. June 19, 2015), *aff'd*, 685 F. App'x 578 (9th Cir. 2017) (reducing fees sought by 25% given the staffing of multiple partners for work that could have been completed by less costly associates).[1]  Applying this reduction, the Union is awarded $112,622.12 in fees pursuant to 15 U.S.C. § 1117(a).

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion for Attorneys' Fees is granted.

Dated: April 30, 2024

Hernán D. Vera
United States District Judge

---

[1] This reduction is not arbitrary.  The Court has reviewed all of the time entries and finds that a 25% reduction reasonably approximates the time spent on tasks that could have been completed by more junior litigators.

6