SONYA Z. MEHTA, SBN 294411
SIEGEL, YEE, BRUNNER & MEHTA
1300 Clay Street, Suite 600
Oakland, California 94612
Tel: 510-839-1200
sonyamehta@siegelyee.com

DAT TOMMY PHAN, SBN 316813
TONI JARAMILLA,
A PROFESSIONAL LAW CORP.
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: 310-551-3020
Fax: 310-551-3019
Dat@tjjlaw.com

RETU R. SINGLA, SBN 4162822
Tel: 646-228-4719
rsingla@workingpeopleslaw.com
SETH L. GOLDSTEIN, SBN 2160182
Tel: 646-460-1309
Fax: 251-319-2955
sgoldstein@workingpeopleslaw.com
GOLDSTEIN & SINGLA PLLC
11 Broadway, Suite 601
New York, NY 10004
ADMITTED PRO HAC VICE

Attorneys for Defendant
TRADER JOE'S UNITED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TRADER JOE'S COMPANY, a California corporation,

Plaintiff,

vs.

TRADER JOE'S UNITED,

Defendant.

Case No. 2:23-cv-05664-HDV-MAR

**TRADER JOE'S UNITED NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Hon. Hernán D. Vera
Date: December 3, 2026
Ctrm: 5B
Time: 10:00 a.m.

Complaint Filed: July 13, 2023

# TABLE OF CONTENTS


**Page**

MOTION FOR JUDGMENT ON THE PLEADINGS ........ 1

INTRODUCTION ........ 1

BACKGROUND ........ 1

STANDARD OF LAW ........ 2

ARGUMENT ........ 2

I. TJU's material falls outside the Lanham Act and unfair competition because it is nominative, noncommercial, and expressive ........ 3

A. TJU's alleged use of the mark is nominative and thus protected ........ 3

B. Trademark infringement and unfair competition law claims fail because TJU's goods are noncommercial ........ 6

C. TJU's materials are outside of the Lanham Act because they are expressive works ........ 9

II. Dilution ........ 11

CONCLUSION ........ 12

## TABLE OF CONTENTS

**Page**

### Federal Cases

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) .......... 2, 3, 4

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019) .......... 3

*Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005) .......... 8

*Brown v. Elec. Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) .......... 9, 10

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) .......... 3, 4

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) .......... 3

*E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008) .......... 3, 9

*Gaudiya Vaishnava Soc. v. City & Cty. of San Francisco*, 952 F.2d 1059 (9th Cir. 1990) .......... 7, 8

*Green v. Miss U.S. of Am., LLC*, 52 F.4th 773 (9th Cir. 2022) .......... 3

*Hara v. Netflix, Inc.*, 146 F.4th 872 (9th Cir. 2025) .......... 9, 10

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) .......... 6, 10

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848 (9th Cir. 2002) .......... 7

*Mattel, Inc. v. MCA Records*, 296 F.3d 894 (2002) .......... 9, 10, 11, 12

*Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792 (9th Cir. 2003) .......... 3

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) .......... 3, 4, 5

*Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024) .......... 9

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) .......... 7

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) .......... 9, 10, 11

*ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706 (9th Cir. 2021) .......... 3

*Think Rubix, LLC v. Be Woke. Vote*, No. 2:21-CV-00559-KJM-AC, 2022 WL 1750969, at *4 (E.D. Cal. May 31, 2022) .......... 2, 7, 8

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) .......... 2, 4

*Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) .......... 11

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918) .......... 8

*Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) .......... 7

*Yuga Labs,Inc. v. Ripps*, 144 F.4th 1137 (9th Cir. 2025) .......... 4

**Federal Statutes and Rules**

Federal Rules of Civil Procedure 12(c). A 12(c) .......... 2

**Other Authorities**

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-E, Motion for Judgment on the Pleadings, 9.316, 9.316.1. .......... 2

## MOTION FOR JUDGMENT ON THE PLEADINGS

## INTRODUCTION

Plaintiff Trader Joe's Company, a California corporation that runs grocery stores nationally, sued Defendant Trader Joe's United ("TJU" or "the Union"), a rank and file union made up of Plaintiff's employees. Defendant created this logo:

Plaintiff has given Defendant express permission to use its logo to identify itself as a union made up of Plaintiff's employees. However, Plaintiff brought the instant claims under the Lanham Act for trademark infringement and dilution alleging the Union's commercial use of its logo. The claim fails on its face because the merchandise conveys non-commercial speech, is expressive in nature, and constitutes nominative fair use. As such, the Union's speech here is excluded from liability under the Lanham Act.

## BACKGROUND

In its Complaint, Trader Joe's, or "the Company," admitted that Defendant Trader Joe's United is an independent labor union comprised of Trader Joe's employees. Docket ("Dkt.") 1, Complaint, ¶ 10. Under 501(c)(5) of the IRS Code, such labor organizations, including unions, that were created for the purpose of improving conditions of work and products of efficiency, are tax exempt nonprofits.

Specifically, Trader Joe's noted that Trader Joe's has not taken issue with Defendant's reference to Trader Joe's for the purpose of identifying the union or discussing the union's cause; rather, Trader Joe's demand is directed solely at

Defendant's commercial use of Trader Joe's trademarks on merchandise sold to consumers on Defendant's commercial website." Dkt. 1, ¶ 35. In a 501(c)(5), any income derived from any trade or business must be substantially related to Plaintiff's organization's exempt purpose or purposes. Reg. § 1.501(c)(3)-1(e).

There is no allegation in the pleadings that Defendant has lost its exemption status. Thus, Defendant's express permission to use the name "Trader Joe's United" for identifying Defendant and its intact nonprofit status supports that Defendant only uses its logo to identify itself and communicate for the purpose of improving conditions of work.

"Trader Joe's demand is directed solely at Defendant's commercial use of Trader Joe's trademarks on merchandise sold to consumers on Defendant's commercial website." Dkt. 1, ¶ 35.

## STANDARD OF LAW

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Federal Rules of Civil Procedure 12(c). A 12(c) motion challenges the legal sufficiency of the opposing party's pleadings, and may resolve an affirmative defense. Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 9-E, Motion for Judgment on the Pleadings, 9.316, 9.316.1. The Court may deny leave to amend where amendment is futile. *Think Rubix, LLC v. Be Woke. Vote*, No. 2:21-CV-00559-KJM-AC, 2022 WL 1750969, at *4 (E.D. Cal. May 31, 2022).

## ARGUMENT

The Court need not consider *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979) if a party's use of the mark is nominative fair use or protected by the First Amendment. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010) (stating that when nominative fair use is raised, the court "must eschew

application of *Sleekcraft* and analyze the case solely under the rubric of nominative fair use"); *Green v. Miss U.S. of Am., LLC*, 52 F.4th 773, 801 (9th Cir. 2022) (stating that when a defendant "makes the threshold legal showing that the supposed trademark infringement is protected by the First Amendment, it eliminates the need to reach the fact-bound consumer confusion issue at all").

Here, TJU's alleged use of the Company's mark is nominative and protected by the First Amendment and thus this Complaint must be dismissed.

## I. TJU's material falls outside the Lanham Act and unfair competition[1] because it is nominative, noncommercial, and expressive.

### A. TJU's alleged use of the mark is nominative and thus protected.

Nominative fair use applies when a Defendant uses Plaintiff's mark to refer to Plaintiff, even if the Defendant's ultimate purpose is to describe its own goods or services. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002). "Where use of the trade dress or mark is grounded in the defendant's desire to refer to the plaintiff's product as a point of reference for defendant's own work, a use is nominative." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 810 (9th Cir. 2003). A common example of nominative fair use is where one "deliberately uses another's trademark or trade dress for the purposes of comparison, criticism, or point of reference." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098 (9th Cir. 2008) (citation modified).

Where a mark is "the only word reasonably available to describe a particular thing," use of that mark "lies outside . . . of trademark law." *Applied Underwriters, Inc.*

[1] "[S]tate common law claims of unfair competition are 'substantially congruent' to claims made under the Lanham Act, and thus share the same analysis." competition are 'substantially congruent' to claims made under the Lanham Act, and thus share the same analysis." *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 709 (9th Cir. 2021) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994)). Plaintiff's Complaint includes false association and false designation of origin under its Unfair Competition claim. Dkt. 1, Second Cause of Action, p. 14.

*v. Lichtenegger*, 913 F.3d 884, 893 (9th Cir. 2019) (quoting *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)).

In the trademark context, nominative use becomes nominative *fair use* when a defendant proves three elements: 1) Plaintiff's product or service in question must be one not readily identifiable without use of the trademark; 2) only so much of the mark or marks may be used as is reasonably necessary to identify the plaintiff's product or service; and 3) Defendant must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (quoting *New Kids on the Block*, *supra,* at 308).

Here, the pleadings agree that Plaintiff's products and services are not readily identifiable without use of its trademark. Dkt. 1, ¶¶ 19-25. Next, Plaintiff's pleadings do not disagree that Defendant uses only so much of its mark to identify itself for the purpose of identifying itself. Dkt. 1, ¶ 36. Finally, Plaintiff's Pleadings fail to allege that Defendant has done anything that would suggest sponsorship or endorsement. Dkt. 1, ¶¶ 5, 27-29, 62; Dkt. 2, ¶¶ 26, 62.

Defendant need only show that it used the mark to refer to the trademark owner or its goods or services. Once that showing is made, the *New Kids* test replaces *Sleekcraft*, and Plaintiff retains the burden of proving likely confusion. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182–83 (9th Cir. 2010); *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1162–63 (9th Cir. 2025).

Plaintiff's pleadings agree that Defendant used its mark only to refer to the trademark owner or its goods or services. Dkt. 1, ¶ 35. Indeed the Complaint also permits Defendant to use "Trader Joe's United" to refer to itself as the union representing its members. Dkt. 1, ¶ 36. Plaintiff does not allege that TJU used its mark to identify Plaintiff as the source of any goods. Rather, Plaintiff simply reiterates, in a

conclusory fashion, elements under *Sleekcraft* that unauthorized use of the mark is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendant's goods. Dkt. 1, ¶¶ 40, 49, 62, 68. There is a built in assumption in the pleadings that Defendant is alleged to have used Plaintiff's mark to refer to Plaintiff.

The first *New Kids* factor strongly favors TJU. Plaintiff gives Defendant permission to use it. TJU cannot identify the workers, their employer, or their dispute without naming Trader Joe's. Trader Joe's is an essential part of the name Trader Joe's United. Trademark law does not require awkward substitutes when the mark is the clearest way to identify the subject. *New Kids*, 971 F.2d at 306–08. Here, Defendant's labor organizing services in question cannot be readily identifiable without use of Plaintiff's trademark. Trader Joe's cannot give Defendant permission to identify the Union using its mark to communicate its labor organizing message, and simultaneously maintain that Defendant's logo is a source identifier.

As to the second factor, Defendant uses only so much of the mark as is reasonably necessary to identify its labor organizing services. TJU uses only the words Trader Joe's as part of Trader Joe's United. The raised fist and box cutter is not a part of Plaintiff's mark. The concentric circles are widely used.

Third, there is no allegation in the Complaint that Trader Joe's United has done anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. For instance, Defendant's merchandise is about supporting workers ("A Union Lifts Us All"). Dkt. 1, ¶ 28. Defendant is critical of Plaintiff's union busting and uses certain mark elements merely to describe or otherwise reference Plaintiff as an employer with whom it has a labor dispute.

Moreover, Plaintiff has given Defendant express permission to use the mark to identify itself.

The Supreme Court has made clear that this First Amendment exception to trademark enforcement does not apply where "an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023), 153; *see also id.* at 144, 162 (concluding use of the phrases "Bad Spaniels" and "The Old No. 2 On Your Tennessee Carpet" on a dog toy to parody the Jack Daniel's whiskey brand was not protected use).

Defendant's sale of its merchandise bearing elements of Plaintiff's logo is a component of a broader expressive project and public protest of Plaintiff's "union busting" and to communicate the labor organizing project. It is not for source identification purposes to identify the Company, but rather to identify the Union through use of its own logo which Plaintiff admits is permissible use. Plaintiff has given Defendant the express permission to use its name to identify the Union. Finally, Defendant also publicly identifies the nonprofit labor union as the source of the goods.

Notably, it is against federal labor law for an employer to sponsor or endorse a Union organizing its employees. The Taft-Hartley Act of 1947 outlawed collusive labor agreements and banned employers from creating, dominating, or financially supporting company-sponsored unions and prohibited employers from establishing company-sponsored labor organizations.

**B. Trademark infringement and unfair competition law claims fail because TJU's goods are noncommercial.**

To prevail on a trademark infringement claim under the Lanham Act, Plaintiff must prove that Defendant used the Trader Joe's validly registered trademark "in

commerce," and that the use is "likely to cause confusion, or to cause mistake, or to deceive consumers" as to the source or origin of the product because of the similarities between the two marks. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006); *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 853-54 (9th Cir. 2002).

Noncommercial speech is protected even when confusingly similar to a corporation's mark. *Think Rubix, LLC v. Be Woke. Vote*, No. 2:21-CV-00559-KJM-AC, 2022 WL 1750969, at *3 (E.D. Cal. May 31, 2022), "Even if there is a risk of public confusion regarding the two marks, the defendants' speech is nonetheless protected."

> "The Supreme Court has long held that when a communication, such as a 'charitable solicitation does more than inform private economic decisions and is not primarily concerned with providing information about the characteristics and costs of goods and services, it [is] not [ ] dealt with . . . as a variety of purely commercial speech.'" *Id.* at *3, *citing Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980).

Moreover, when speech is "characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues," *Schaumburg* at 632, "it must be treated as a fully protected activity under the First Amendment." *Gaudiya Vaishnava Soc. v. City & Cty. of San Francisco*, 952 F.2d 1059, 1063-64 (9th Cir. 1990), *as amended on denial of reh'g* (Dec. 26, 1991).

Nor does sale of an item mean that it loses its Constitutional protection and exclusion from the Lanham Act. In *Gaudiya Vaishnava Society*, the Ninth Circuit reviewed a challenge to a city ordinance purporting to restrict only commercial speech. *See* 952 F.2d at 1063. Five nonprofit organizations challenged San Francisco's ordinance "which regulate[d] the sale of merchandise on public sidewalks by nonprofit groups[.]" *Id.* at 1060. In discussing categories of speech, the court rejected the

argument that "sale of merchandise is nothing more than a commercial transaction and therefore is afforded no constitutional protection." *Id.* at 1063. Instead, it held that "an expressive item does not lose its constitutional protections because it is sold rather than given away," citing Supreme Court precedent. *Id.*

The Lanham Act's protection is limited to cases "where a defendant is trying to profit from a plaintiff's trademark." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)). This practice "is consistent with the Supreme Court's view that '[a trademark's] function is simply to designate the goods as the product of a particular trader and to protect his [goodwill] against the sale of another's product as his.'" *Id.* "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction … ." *Id.* at 676.

In *Think Rubix*, the Court held that even though Defendant BE WOKE.VOTE used a mark similar to consultancy group Plaintiff, Think Rubix, and even sold clothing and other items with the mark, it was not liable under the Lanham Act. *Rubix* at *1. This was because

> "the fundamentally noncommercial nature of the services places the defendants' actions within the exception to the Lanham Act. Even if there is a risk of public confusion regarding the two marks, the defendants' speech is nonetheless protected." *Id.* at *3.

Here, on the face of the complaint, Defendant's use of "Trader Joe's' United", its red type face and concentric circle design, which is Defendant's logo, is inherently intertwined with Defendant's efforts to inform and persuade the public to support it in its labor dispute with Plaintiff. This conclusion is not altered by defendants' sale of merchandise with the Trader Joe's United logo on it. The fundamentally

noncommercial nature of Defendant's services as a tax exempt union organizing Trader Joe's workers places the Defendant's actions within this exception to the Lanham Act.

**C. TJU's materials are outside of the Lanham Act because they are expressive works.**

Where a defendant "make[s] a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment," the plaintiff must satisfy the *Rogers* test to prove infringement. *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). Here, TJU must show that its offerings on its website are part of an expressive work protected by the First Amendment. *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1028, 1031 (9th Cir. 2024); *Hara v. Netflix, Inc.*, 146 F.4th 872, 878–82 (9th Cir. 2025).

Under Ninth Circuit law, the application of the *Rogers* test does not require the presence of state action for protection under the First Amendment. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095, 1100 (9th Cir. 2008), *Punchbowl, Inc. v. Aj Press, LLC,* 90 F.4th 1022, 1028, 1031 (9th Cir. 2024), *Mattel, Inc. v. MCA Records,* 296 F.3d 894 (2002).

The *Rogers* test requires Defendant to first "make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Punchbowl*, 90 F.4th at 1028 (internal quotation marks and citation omitted). The artistic-relevance requirement is a low bar. The use need only have relevance "above zero." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).

The second prong under *Rogers* requires an "'explicit indication,' 'overt claim,' or 'explicit misstatement'" about the source or content of the work. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013). "[T]he mere use of a trademark alone cannot

suffice to make such use explicitly misleading." *E.S.S.*, 547 F.3d at 1100. Unless the plaintiff establishes at least one *Rogers* prong, the court does not reach the ordinary likelihood-of-confusion factors. The Lanham Act claim fails. *Brown* at 884.

Recently in *Jack Daniel's*, the Supreme Court held that *Rogers* does not apply when the challenged "use of the mark is as a mark." 599 U.S. at 163. Here, Defendant does not use the mark as a source identifier. Defendant publicly and plainly identifies the nonprofit labor union as the source of the goods as its name "Trader Joe's United" is on all material. To be clear, *Jack Daniel's* did not overrule *Rogers*. In *Mattel, Rogers* is properly applied because "the band's use of the Barbie name was 'not [as] a source identifier': The use did not 'speak[] to [the song's] origin.'" *Rogers* at 145, *quoting Mattel*, 296 F.3d at 900, 902).

Also, in *Hara*, Netflix used Vox's likeness in *Q-Force*, not to identify the source of the show. *Rogers* therefore applied. 146 F.4th 872,878–82 (9th Cir. 2025). Here, too, Defendant's alleged use of aspects of the Trader Joe's trademark is to identify the labor union as the source of the expressive commentary critical of Plaintiff.

Here Defendant meets the low *Rogers* threshold because all of Defendant's offerings are expressive as they each communicate ideas connected to a social and political message entrenched in the labor dispute between the parties. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013)(internal quotation marks and citation omitted). Dkt. 1, ¶ 28. Defendant's materials convey a message of labor dispute and not as a source identifier for any products sold. If a labor union in an active labor dispute that sells political swag critical of the employer does not trigger the *Rogers* test, then it is hard to imagine when the *Rogers* test would ever apply. There can be no question that *Rogers* and its progeny apply.

As to the second prong, the Complaint is devoid of any allegations purporting to

show an "overt claim" or "explicit misstatement" that Trader Joe's is the source of Trader Joe's United's website merchandise. This is unlikely to exist considering that Defendant publicly identifies the nonprofit labor union as the source of the goods.

Any argument that Defendant's use of Plaintiff's mark extends beyond the permission Plaintiff has expressly given it also fails. As the ninth circuit has already noted, "[t]he balance of First Amendment interests struck in *Rogers* and *Mattel* could be destabilized if the titles of expressive works were protected but could not be used to promote those works." *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1197 (9th Cir. 2017). The Court held that promotional activities, even those that produce revenue, are auxiliary to the work itself. *Id.*

TJU used its materials to identify the workers' employer and communicate its ongoing labor dispute with that employer. That use was expressive, and because Trader Joe's cannot satisfy either *Rogers* prong, it falls outside the Lanham Act.

## II. Dilution.

Dilution may occur where use of a trademark "whittles away . . . the value of a trademark" by "blurring their uniqueness and singularity" or by "tarnishing them with negative associations." *Mattel, Inc. v. MCA Records,* 296 F.3d 894, 903 (2002) (internal citations omitted). However, tarnishment caused merely by an artistic parody that satirizes and criticizes Plaintiff's product or its image is not actionable under an anti-dilution statute because of the free speech protections of the First Amendment. A dilution action only applies to purely commercial speech. *Id.* at 904. Parody is a form of noncommercial expression if it does more than propose a commercial transaction. *See Id.* at 906.

Dilution may occur where use of a trademark "whittles away . . . the value of a trademark" by "blurring their uniqueness and singularity" or by "tarnishing them with

negative associations." *Mattel, Inc. v. MCA Records,* 296 F.3d 894, 903 (2002) (internal citations omitted). However, tarnishment caused merely by an artistic parody that satirizes and criticizes Plaintiff's product or its image is not actionable under an anti-dilution statute because of the free speech protections of the First Amendment. A dilution action only applies to purely commercial speech. *Id.* at 904. Parody is a form of noncommercial expression if it does more than propose a commercial transaction. *See Id.* at 906.

Here, Defendant's merchandise for instance parodies Plaintiff's grocery store items like canned corn that it sells as a political button by parodying Plaintiff's label to state: "Union: Naturally Sweet No Added Nonsense" or Defendant's logo design is also a parody as it replaces the bread wine and cheese board with a black fist holding a box cutter  or a parody of Plaintiff's use of a pallet jack in the workplace with a commissioned artists design showing all of Defendant's members on the pallet jack accompanied by the statement: "A Union Lifts Us All." Dkt. 1, ¶ 28.

Under *MCA*, Defendant's artistic and parodic work is considered noncommercial speech and, therefore, not subject to a trademark dilution claim.

**CONCLUSION**

For the reasons above, Defendant requests that the Court grant this motion.

Dated: October 2, 2026

/s/ Retu Singla

By: Retu Singla
*Attorney for Defendant*
GOLDSTEIN & SINGLA PLLC